## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| McNEIL NUTRITIONALS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:05-CV-00069-GMS |
| THE SUGAR ASSOCIATION, THE | ) |
| AMALGAMATED SUGAR COMPANY, et al. | ) |
| | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

POTTER ANDERSON & CORROON LLP

Richard L. Horwitz (No. 2264)
Sarah E. DiLuzio (No. 4085)
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
E-mail: rhorwitz@potteranderson.com
        sdiluzio@potteranderson.com
Attorneys for Defendants

OF COUNSEL:
James P. Murphy
SQUIRE, SANDERS & DEMPSEY LLP
1201 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20004
Telephone: (202) 626-6600
Facsimile: (202) 626-6780

Adam R. Fox
SQUIRE, SANDERS & DEMPSEY LLP
801 So. Figueroa Street, Suite 1400
Los Angeles, CA 90017
Telephone: (213)624.2500
Facsimile: (213) 623-4581
Attorneys for Defendants

Date: March 25, 2005

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................... ii

I.    INTRODUCTION ........................................................................................... 1

II.   PRELIMINARY STATEMENT OF FCTS AND ALLEGATIONS OF THE
      COMPLAINT .................................................................................................3

III.  LEGAL STANDARDS ...................................................................................6

IV.   ARGUMENT....................................................................................................9

      A.   McNeil's Claims Should Be Dismissed for Improper Venue Because They
           Were Required to Have Been Asserted to the California Complaint ..................9

      B.   McNeil's Claims Should be Barred Because the Defendants are
           Entitled to the Immunity of the Noerr-Pennington Doctrine ..............................11

      C.   This Court Lacks Subject Matter Jurisdiction over McNeil's Lanham
           Act Claim Against Each of the Defendants ....................................................... 13

           1.  McNeil Lacks Standing to Sue Parties with Which it Does Not
               Compete Pursuant to the Lanham Act ......................................................... 13

           2.  McNeil Also Lacks Standing to Sue Parties About Which it is
               Unable to Establish Any Casual Relationship to the Alleged Injury........... 15

      D.   Because This Court Lacks Subject Matter Jurisdiction over McNeil's
           Lanham Act Claim, the State Law Claims Should Also Be Dismissed............. 17

      E.   Several of the Named Defendants Lack Sufficient Contacts With This
           Forum to Endow This Court With the Power to Exercise Personal
           Jurisdiction Over Them in a Manner That Comports with the
           Constitution ........................................................................................................ 17

      F.   McNeil Both Lacks Standing and Fails to Set Forth Facts Sufficient to
           Establish Claims for Relief Under Delaware State Law.................................... 20

V.    CONCLUSION................................................................................................22

i

## **TABLE OF AUTHORITIES**

**PAGE**

*Aircapital Cablevision, Inc. v. Starlink Communications Group, Inc.*
  634 F. Supp. 316 (D. Kan. 1986) ................................................................................... 13

*Albright v. Gates,*
  362 F.2d 928 (9th Cir. 1966) ........................................................................................ 10

*Barnes Found. v. Township of Lower Merion,*
  242 F.3d 151 (3d Cir. 2001) ......................................................................................... 11

*Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.,*
  295 F. Supp. 2d 400 (D. Del. 2002) ............................................................................. 18

*Brownsville Golden Age Nursing Home, Inc. v. Wells,*
  839 F.2d 155 (3d Cir. 1988) ............................................................................... 2, 11, 12

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ................................................................................................. 7, 20

*California Motor Transp. Co. v. Trucking Unlimited,*
  404 U.S. 508 (1972) ...................................................................................................... 11

*Clontech Labs., Inc. v. Invitrogen Corp.,*
  263 F. Supp. 2d 780 (D. Del. 2003) ............................................................................. 21

*Commisseriat A L'Energie Alomique v. Chi Mei Optoelectronics,*
  293 F. Supp. 2d 423 (D. Del. 2003) ............................................................................. 19

*C.R. Bard, Inc. v. Guidant Corp.,*
  997 F. Supp. 556 (D. Del. 1998); ............................................................................. 7, 19

*Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.,*
  165 F.3d 221 (3d Cir. 1998) ............................................................................... 2, 13, 14

*Crosley Corp. v. Hazeltine Corp.,*
  122 F.2d 925 (3d Cir. 1941) .................................................................................... 8, 11

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*
  954 F.2d 869 (3d Cir. 1992) ......................................................................................... 15

*Grand Ventures, Inc. v. Whaley,*
  632 A.2d 63 (Del. 1993) ............................................................................................... 20

*Granite State Ins. Co. v. Aamco Transmissions, Inc.*
  57 F.3d 316 (3d Cir. 1995)................................................................................................ 14, 15

*Great Lakes Corp. v. Herbert Cooper Co.*,
  286 F.2d 631 (3d Cir. 1961)............................................................................................. 2, 8, 9, 11

*Heliocopteros Nacionales de Columbia v. Hall*,
  466 U.S. 408 (1984)......................................................................................................... 7

*Jeffrey Y. v. St. Marys Area Sch. Dist.*,
  967 F. Supp. 852 (W.D. Pa. 1997).................................................................................... 8

*Jurgens v. McKasy*,
  927 F.2d 1552 (Fed. Cir. 1991)....................................................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)......................................................................................................... 7

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945)......................................................................................................... 7, 20

*L.A. Gear, Inc. v. Tom McAn Shoe Co.*,
  988 F.2d 1117 (Fed. Cir. 1993)....................................................................................... 13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555(1992)........................................................................................................... 6, 16

*Martino v. McDonald's Sys., Inc.*,
  598 F.2d 1079 (7th Cir. 1979) .......................................................................................... 8

*Neitzke v. Williams*,
  490 U.S. 319 (1989)........................................................................................................... 6

*Nesbit v. Gears Unlimited, Inc.*,
  347 F.3d 72 (3d Cir. 2003)................................................................................................ 3, 6

*Perkins v. Benguet Mining Co.*,
  342 U.S. 437 (1952).......................................................................................................... 7, 20

*Railroad Presidents Conference v. Noerr Motor Freight*,
  365 U.S. 127 (1961).......................................................................................................... 11

*Richardson v. Pennsylvania Dep't of Health*,
  561 F.2d 489 (3d Cir. 1977).............................................................................................. 8

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001)............................................................................................... 19

*Rohm and Haas Co. v. Brotech Corp.*,
  770 F. Supp. 928 (D. Del. 1991)................................................................................... 9, 10

*Serbin v. Ziebart Int'l Corp., Inc.*,
  11 F.3d 1163 (3d Cir. 1993).......................................................................................... 14, 15

*Southern Constr. Co. v. Pickard*,
  371 U.S. 57 (1962)............................................................................................................ 8

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*,
  181 F.3d 410 (3d Cir. 1999)............................................................................................... 1

*Storino v. Borough of Point Pleasant Beach*,
  322 F.3d 293 (3d Cir. 2003).............................................................................................. 17

*Tone Bros., Inc. v. Sysco Corp.*,
  28 F.3d 1192 (Fed. Cir. 1994).......................................................................................... 13

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*,
  292 F.3d 384 (3d Cir. 2002).......................................................................................... 9, 10

*Transportes Aereos De Angola v. Ronair, Inc.*,
  544 F. Supp. 858 (D. Del. 1982)........................................................................................ 7

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*,
  517 U.S. 544 (1996)........................................................................................................ 16

*United Mine Workers v. Pennington*,
  381 U.S. 657 (1965)................................................................................................... 11, 17

*World-Wide Volkswagen v. Woodson*,
  444 U.S. 286 (1980)......................................................................................................... 7

*Xerox Corp. v. SCM Corp.*,
  576 F.2d 1057 (3d Cir. 1978)............................................................................................ 9

## RULES AND STATUTES

Fed. R. Civ. P. 12(b) ........................................................................................................ 6

Fed. R. Civ. P. 13(a) .................................................................................................... 8, 10

iv

6 Del. C. § 2533(a)............................................................................................................ 21

10 Del. C. § 3104(c)........................................................................................................ 7, 19

10 Del. C. § 3104(c)(1)-(3) ................................................................................................ 7

2 Moore's Federal Practice § 12.34[1][b], at 12-61 - 12-63 (2004) ........................................... 9

## I.    INTRODUCTION

Only rarely does the filing of a single complaint present so many dispositive procedural flaws. This is one of those unusual instances.

Late last year, the Sugar Association, Inc. ("Sugar Association") filed in the United States District Court for Central District of California a lawsuit against McNeil Nutritionals, LLC ("McNeil") and its affiliate McNeil-PPC, Inc. (*See* Declaration of Sarah DiLuzio ("DiLuzio Decl."), Exh. A).[1] The Sugar Association's complaint (the "California Complaint")—which remains pending—generally charges that McNeil has (and is) engaged in false advertising and unfair competition by promoting a group of products sold under the Splenda® brand ("Splenda") in a manner that is literally false, deceptive and/or misleading. Although McNeil filed an answer to the California Complaint it did not file a counterclaim. Instead, just days after submitting its answer, McNeil sought to invoke the jurisdiction of this Court by filing a separate lawsuit, naming as defendants the Sugar Association, its members, an unrelated trade association, and a public relations firm. McNeil's complaint in this Court (the "Delaware Complaint") asserts claims that address the central issue presented in the California Complaint—the accuracy of Splenda advertising—although it is couched as an attack on press statements and websites that have offered the California Complaint attendant publicity.

The law in this Circuit instructs that the claims asserted by McNeil in the Delaware Complaint should have been asserted as compulsory counterclaims to the

---

[1] It is proper for a court to take judicial notice of an item on a motion to dismiss. *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

California Complaint because they "involve many of the same . . . factual and legal issues" and are "offshoots of the same basic controversy" as the claims asserted by the Sugar Association in its first-filed action. *Great Lakes Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961). Because the law directs that such claims are "barred if asserted separately, subsequently," *id.*, the Delaware Complaint should be dismissed.

McNeil's claims should also be barred because they are anchored in the Sugar Association's effort to elicit public opinion and interest about charges of McNeil's misconduct that were first expressed in the California Complaint. Once again, the law in this Circuit mandates the result. The Sugar Association's actions in calling McNeil's false advertising to the attention of "federal authorities and eliciting public interest cannot serve as the basis of tort liability." *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988). The well established *Noerr-Pennington* doctrine provides immunity for such conduct based on "the firmly rooted principle, endemic to a democratic government, that enactment of and adherence to law is the responsibility of all." *Id.*

Subject matter jurisdiction is lacking in any event. Based again on the law of this Circuit, and underscored by admissions of McNeil in response to the California Complaint, "to bring a false advertising claim under the Lanham Act, plaintiff must be a competitor of defendant." (DiLuzio Decl., Exh. B at 6:9-11); *see also Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 235 (3d Cir. 1998). The Sugar Association does not compete with McNeil. Neither does the American Sugarbeet Growers Association. Both are trade associations that sell no products and provide no services in competition with McNeil. Qorvis Communications, LLC ("Qorvis"), a public

relations firm, similarly does not compete with McNeil. Accordingly McNeil lacks standing to sue these organizations.

In addition, although the *members* of the Sugar Association do compete collectively with McNeil in the broad market of consumers that desire sweeteners in their food, an examination of the relevant jurisdictional facts discloses that McNeil cannot show its alleged injury is fairly traceable to their actions. Because this is an element of standing, and one's standing is an issue of subject matter jurisdiction, it is entirely proper to go outside the pleadings to consider such facts. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003) ("If an aspect of a claim concerns jurisdiction, and when jurisdiction turns on whether a particular fact is true as here (as opposed to whether the complaint sufficiently alleges jurisdiction on its face), a court may inquire into the jurisdictional facts without viewing the evidence in a light favorable to either party."). The jurisdictional facts show the members of the Sugar Association had no direct involvement with the conduct about which McNeil complains.

This Court even lacks personal jurisdiction over many of the Defendants, most of them having no connection with Delaware, let alone contacts with this forum that arise from or relate to the conduct asserted in the Delaware Complaint.

All this to say that the Delaware Complaint does not belong in this Court. It should be dismissed, with prejudice, as further elaborated below.

## II.    PRELIMINARY STATEMENT OF FACTS AND ALLEGATIONS OF THE COMPLAINT

The defendant Sugar Association is a corporation with a mission of promoting the consumption of sugar as part of a healthy diet and lifestyle through the use of sound

3

science and research. (Compl. ¶ 4). The Sugar Association is a discrete non-stock, non-profit corporate entity which is comprised of the seventeen (17) member companies that have also been named as defendants in this suit: The Amalgamated Sugar Company, American Crystal Sugar Company, American Sugar Cane League, American Sugar Refining, Inc., Atlantic Sugar Association, Hawaiian Sugar & Transportation Cooperative, Imperial Sugar Company, Michigan Sugar Company, Minn-Dak Farmers Cooperative, Okeelanta Corporation, Osceola Farms Company, Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Cooperative, Sugar Cane Growers Cooperative of Florida, United States Sugar Corporation, Western Sugar Cooperative, and Wyoming Sugar LLC (collectively, the "Member Companies").[2] (Compl. ¶¶ 4-21). The Board of Directors of the Sugar Association is comprised of decision-making representatives from each of these Member Companies. (Compl. ¶ 4).

The American Sugarbeet Growers Association is a corporation with the purpose of uniting sugarbeet growers—much like the Sugar Association unites members of the broader sugar industry—to promote the common interests of its own members. (Compl. ¶ 22). Defendant Qorvis is a Washington, D.C. based public relations firm that performs marketing services and reputation management for its clients. (Compl. ¶ 23).

On December 10, 2004, the Sugar Association filed the California Complaint against McNeil. (*See* DiLuzio Decl., Exh. A). The California Complaint alleges that McNeil markets Splenda in a manner that is literally false, deceptive and/or misleading.

---

[2] Three of the named Defendants are incompletely named in the Delaware Complaint and should appear as: The Amalgamated Sugar Company LLC, Atlantic Sugar Association, Inc., and Wyoming Sugar Company, LLC.

(*Id.* ¶ 11). In particular, the California Complaint identifies as false or misleading McNeil's activities that promote the consumer belief that Splenda (a) contains real sugar, (b) is a natural, no-calorie form of sugar, (c) is healthy to consume because it carries with it no calories, as its key sweetening ingredient purportedly passes though the body without being broken down, and (d) genuinely tastes like sugar. (*Id.*).

After filing the lawsuit, the Sugar Association worked with Qorvis, an outside public relations firm, to design and create a website entitled "The Truth About Splenda." (Compl. ¶ 47). Like many plaintiffs litigating issues of widespread concern, the Sugar Association sought to communicate to the public what it had learned. The website thus includes much of the same information on which the California Complaint is based. It identifies statements made by McNeil regarding Splenda that the California Complaint alleges to be false or misleading. (Compl. ¶ 50). The website also educates the public about sucralose—the key sweetening ingredient in Splenda—advising the public that it is chemically engineered to include chlorine atoms to create a compound that was unknown to the world until 1976. (Compl. ¶¶ 48-53). The website also offers opinions based on these disclosed and truthful facts, for instance that "[u]ntil long-term human studies are conducted, no one will know for sure whether Splenda is really safe or unsafe for humans to eat." (Compl. ¶ 51).

Although on February 2, 2005, McNeil answered the California Complaint and asserted no counterclaim, McNeil elected to travel nearly 3,000 miles east to find an alternative forum in which to retaliate. Less than a week after filing its answer, on February 8, 2005, McNeil filed in this Court the Delaware Complaint, naming as defendants the Sugar Association, the Member Companies, the American Sugarbeet

Growers Association, and Qorvis (collectively, "Defendants"). Cribbing allegations from

the California Complaint, the Delaware Complaint alleges claims against Defendants that

are essentially the same: false advertising under section 43(a) of the Lanham Act and

state statutory and common law unfair competition and deceptive trade practices claims.

### III.    LEGAL STANDARDS

The Federal Rules of Civil Procedure provide that:

> Every defense, in law or in fact, to a claim for relief . . .
> shall be asserted in the responsive pleading thereto if one is
> required, except that the following defenses may at the
> option of the pleader be made by motion: (1) lack of
> jurisdiction over the subject matter, (2) lack of jurisdiction
> over the person, (3) improper venue, . . . [and] (6) failure to
> state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b). If it is clear as a matter of law that no relief can be granted under

any set of facts consistent with the allegations, a claim must be dismissed. *See Neitzke v.*

*Williams*, 490 U.S. 319, 327 (1989).

For purposes of Rule 12(b)(1), the jurisdiction of each federal court over a subject

matter is constitutionally limited by Article III, which includes a "case-or-controversy"

requirement that has been interpreted to demand that each plaintiff have standing to sue.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Third Circuit has held that

courts that decide Rule 12(b)(1) motions are not bound to determine subject matter

jurisdiction solely based on the facts alleged in a plaintiff's complaint, and may inquire

into the truth of the jurisdictional facts. *See Nesbit,* 347 F.3d at 77.

For purposes of Rule 12(b)(2), a federal court sitting in Delaware may exercise

personal jurisdiction over a non-resident defendant only if both of the following are true:

(1) Delaware's long-arm statute permits the court to exercise personal jurisdiction over

the defendant; and (2) the assertion of personal jurisdiction over that defendant comports with constitutional due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985); *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 558 (D. Del. 1998); *Transportes Aereos De Angola v. Ronair, Inc.*, 544 F. Supp. 858, 864 (D. Del. 1982). The Constitution requires that the defendant present certain minimum contacts with the forum such that the maintenance of the suit will not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Transportes,* 433 F. Supp. at 865.

Personal jurisdiction under Delaware's long-arm statute may be either general or specific. *See generally* 10 Del. C. § 3104(c). General jurisdiction exists only if the defendant's contacts with the forum are "substantial, continuous and systematic." *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 446 (1952); *see also* 10 Del. C. § 3104(c)(4). If a nonresident defendant lacks such pervasive ties to the forum state, specific jurisdiction may nevertheless exist if the defendant has acted purposefully to avail itself of forum benefits *and* the controversy is related to or "arises out of" the defendant's contacts with the forum. *Burger King Corp.*, 471 U.S. at 472-73; *Heliocopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984); *see also* 10 Del. C. § 3104(c)(1)-(3). In either case, a plaintiff must demonstrate that exercising jurisdiction over the defendant is reasonable. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 295 (1980).

For purposes of Rule 12(b)(3), a plaintiff ordinarily enjoys the luxury of selecting the forum in which to resolve its claims, but also bears the burden of demonstrating the propriety of its chosen venue. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 377 (1994). The Third Circuit long ago adopted a "first-filed rule" such that "in all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) (quoting *Smith v. M'Iver*, 22 U.S. (9 Wheat.) 532 (1824)).

This rule applies with equal force even to a claim distinct from that asserted by one's opposing party in a pending action, so long as "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). The policy underlying this rule is judicial economy. *See Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962). Indeed, adoption of "[t]he rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." *Id.* The rule thus "forces parties to raise certain claims at the time and place chosen by their opponents, or to lose them." *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1082 (7th Cir. 1979); *see also Great Lakes*, 286 F.2d at 634 (explaining that a claim that should properly be asserted as a counterclaim is "barred if asserted separately, subsequently").

For purposes of Rule 12(b)(6), a motion to dismiss should be granted if it appears that "the plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim." *Richardson v. Pennsylvania Dep't of Health*, 561 F.2d 489, 492 (3d Cir. 1977). Although the allegations in a pleading are ordinarily construed in the light most favorable to the non-moving party, the Court should accept as true neither conclusory allegations of law or fact, nor unreasonable inferences. *See Jeffrey Y. v. St.*

*Marys Area Sch. Dist.*, 967 F. Supp. 852, 854 (W.D. Pa. 1997) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also* 2 Moore's Federal Practice § 12.34[1][b], at 12-61 - 12-63 (2004).

## IV.    ARGUMENT

### A.    McNeil's Claims Should Be Dismissed for Improper Venue Because They Were Required to Have Been Asserted in Response to the California Complaint

This Circuit teaches that a claim qualifies as a compulsory counterclaim so long as it "bears a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978); *see also Rohm and Haas Co. v. Brotech Corp.*, 770 F. Supp. 928, 931 (D. Del. 1991). The concept of a "logical relationship" is liberally construed to promote judicial economy and avoid a multiplicity of suits. *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002).

It is well settled by the Third Circuit that such a relationship exists

> where separate trials on each . . . respective claim[] would involve a substantial duplication of effort and time by the parties and the courts. *Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of res judicata compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.*

*Great Lakes*, 286 F.2d at 634 (emphases added). Whether opposing parties' claims involve "the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties," *id.*, governs whether those

claims arise "out of the [same] transaction or occurrence." Fed. R. Civ. P. 13(a). "[T]he term 'transaction or occurrence' is construed generously to further" judicial economy. *Transamerica Occidental Life Ins.*, 292 F.3d at 389-90.

The California Complaint alleges a Lanham Act false advertising claim, and related state law claims, arising from McNeil's promotion of Splenda. The Delaware Complaint likewise alleges a Lanham Act false advertising claim, and related state law claims, arising from the Defendants' purported comments (published in newspapers and websites) *regarding* McNeil's promotion of Splenda. Both complaints are thus rooted in the exact same factual and legal issues. Indeed, the only way to determine whether Defendants have falsely "advertised" or engaged in product disparagement (the issues presented by the Delaware Complaint) is to determine whether McNeil's advertising of Splenda is literally false, deceptive and/or misleading (the issues presented by the California Complaint). McNeil's suit in this Court thus will necessarily address much of the same evidence, require the same discovery, and involve the same witnesses as that required to resolve the California Complaint. Because the issues are so intertwined, these actions are precisely the type that Rule 13(a) is designed to keep together.

The fact that additional parties have been added as defendants in this action is of no legal consequence. "Rule 13(a) is not limited in its application to original parties." *Rohm*, 770 F. Supp. at 934. It works in tandem with Rule 13(h), which addresses joinder of additional parties for counterclaims, and thereby "contemplates the situation where additional parties are required for the granting of complete relief." *Id.*; *see also Albright v. Gates*, 362 F.2d 928, 929 (9th Cir. 1966) (holding that a counterclaim involving new parties was nevertheless "a compulsory one both as to [the plaintiff] and as to the new

parties" pursuant to Rule 13(a)). McNeil accordingly should have sued the additional parties in a counterclaim by which they would have been "made parties to the original action" arising from the California Complaint. Fed R. Civ. P. 13(h). Instead, McNeil chose to file its answer without a counterclaim and then "asserted separately, subsequently" the Delaware Complaint. *Great Lakes*, 286 F.2d at 634. McNeil's actions violate Rule 13 and Third Circuit precedent. *See id.* (directing that such claims "be barred"); *see also Crosley*, 122 F.2d at 929 (embracing the "first-filed rule"). The Delaware Complaint should accordingly be dismissed.

**B.  McNeil's Claims Should be Barred Because the Defendants are Entitled to the Immunity of the Noerr-Pennington Doctrine**

The *Noerr-Pennington* doctrine, rooted in the "First Amendment right to petition the government," historically shields a party from liability for attempting to obtain governmental action. *Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 159 (3d Cir. 2001). It derives its name and operation from a trilogy of United States Supreme Court cases. *See California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508 (1972); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Railroad Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127 (1961). In recent years, courts in the Third Circuit and nationwide have applied the *Noerr-Pennington* doctrine in a variety of contexts that extend beyond pure petitioning activity.

For example, the Third Circuit has explained that one who elicits public opinion and interest about another's violations of law, and simultaneously calls these violations to the attention of governmental authorities even without formally petitioning them, cannot be held liable in tort. *See Brownsville*, 839 F.2d at 160. In *Brownsville*, the plaintiff sued

two individuals who had visited a nursing home and, "appalled by the conditions they observed," subsequently embarked on a "publicity and letter writing 'campaign of Herculian [sic] dimension.'" *Id.* at 158. The lawsuit failed. The Third Circuit explained that the defendants were immune from liability in tort even though their actions were not specifically directed to induce legislative, administrative, or judicial action.

> The conduct on which this suit is based is protected by the firmly rooted principle, endemic to a democratic government, that enactment of and adherence to law is the responsibility of all. The problem is not too much citizen involvement but too little.

*Id.* at 160. The court held that the defendants' publicity campaign was "not improper," and instead enjoyed the privilege of the *Noerr-Pennington* doctrine, because it "foster[ed] a 'social interest of greater public import than . . . the social interest invaded.'" *Id.* at 159.

The Defendants' conduct about which McNeil complains in the present controversy should similarly enjoy *Noerr-Pennington* immunity. In this case, McNeil accuses the Defendants only of making statements in the press and on internet websites attendant to the Sugar Association's lawsuit. (Compl. ¶ 2). Like the statements made by the defendants in *Brownsville*, Defendants' alleged statements are patently informational, and serve a social interest of great public import. For instance, McNeil observes that "The Truth About Splenda" website identifies as "FICTION" the assertion that "[o]nce eaten, Splenda simply passes through the body." (Compl. ¶ 50). Yet McNeil admits "in point of fact" that "a small amount (roughly 15 percent) is . . . absorbed by the gastrointestinal system." (Compl. ¶ 50). The statement on the website is therefore true, and it educates the public and serves to elicit public opinion and interest in the Sugar Association's claims of false advertising asserted in the California Complaint.

12

This is a far cry from the significant adverse publicity disseminated to newspapers, radio, and television by the plaintiff/counter-defendant in *Aircapital Cablevision, Inc. v. Starlink Communications Group, Inc.* 634 F. Supp. 316 (D. Kan. 1986), which accused the defendant/counter-claimant of "stealing," "pira[ting]" and simply "viola[ting] the damn law." *Id.* at 324. Yet even in that case, even though the court observed that the plaintiff/counter-defendant had acted like a "bully," the court resolved that the negative public remarks were simply "attendant publicity" related to the lawsuit and thus could not give rise to liability under state or federal law. *Id.* This Court should likewise find that Defendants are immune from the liability sought by McNeil's claims because all identified statements purportedly made by Defendants are protected by the *Noerr-Pennington* doctrine.

## C. This Court Lacks Subject Matter Jurisdiction Over McNeil's Lanham Act Claim Against Each of the Defendants

### 1. McNeil Lacks Standing to Sue Parties with Which it Does Not Compete Pursuant to the Lanham Act

Although the text governing a Lanham Act false advertising claim states that "*any person* who believes that he or she is or is likely to be damaged" may bring a civil action, the Third Circuit has explained that Congress did not intend "to confer standing as broadly as the statute's language suggests." *Conte Bros.*, 165 F.3d at 228, 230.[3] "The

---

[3] Because a claim under Section 43(a) is one over which the Federal Circuit's jurisdiction is not exclusive, the law of the regional circuit court of appeals, in this case the Third Circuit, applies. *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1200-01 (Fed. Cir. 1994); *see also L.A. Gear, Inc. v. Tom McAn Shoe Co.*, 988 F.2d 1117, 1129 n.5, (Fed. Cir. 1993) ("Since unfair competition issues are not within the Federal Circuit's exclusive jurisdiction, we apply the discernable precedent of the regional circuit."); *Jurgens v. McKasy*, 927 F.2d 1552, 1554 (Fed. Cir. 1991) ("[O]n issues of unfair competition, our precedent requires us to defer to the views of the regional circuit in which the district court sits.").

traditional plaintiff under section 43(a) has been a *competitor* who was injured in his line of business as a result of the false advertising." *Serbin v. Ziebart Int'l Corp., Inc.*, 11 F.3d 1163, 1174 (3d Cir. 1993) (emphasis added). A commercial plaintiff may sue to assert only that "its commercial interests have been harmed by a *competitor's* false advertising." *Serbin*, 11 F.3d at 1175 (emphasis added); *accord Granite State Ins. Co. v. Aamco Transmissions, Inc.* 57 F.3d 316, 321 (3d Cir. 1995) ("[S]ection 43(a) of the [Lanham Act] provides a private remedy to a *commercial* plaintiff who meets the burden of proving that its *commercial* interests have been harmed by a *competitor's* false advertising.") (emphases added).

Because the Lanham Act was "designed primarily to resurrect the federal tort of unfair competition," courts have acted to prevent "an enormous number of relatively insignificant cases being litigated in the federal courts" by restricting the parties who may invoke Section 43(a) of the Lanham Act to those who can demonstrate a significant impact on their "ability to compete" or their surrogates. *Conte Bros.*, 165 F.3d at 235. Even McNeil concedes, in its papers filed in response to the California Complaint, that "to bring a false advertising claim under the Lanham Act, plaintiff must be a competitor of defendant." (DiLuzio Decl., Exh. B at 6:9-11).

In the Delaware Complaint, McNeil alleges that: (1) the Sugar Association is a distinct corporate entity whose mission is "to promote the consumption of sugar as part of a healthy diet and lifestyle through the use of sound science and research," (Compl. ¶ 4); (2) the American Sugarbeet Growers Association is another discrete organization that performs essentially the same types of functions as does the Sugar Association on behalf of a different group: "unite the sugarbeet growers of the United States and promote the

14

common interest of its members, which include legislative and international representation and public relation," (Compl. ¶ 22); and (3) Qorvis "is a public relations firm that specializes, *inter alia*, in designing so-called 'Grass Roots' marketing or 'reputational management' campaigns," (Compl. ¶ 23).

McNeil's allegations about its own activities relate that it sells "innovative nutritional products" including "products that contain the no-calorie sweetener sucralose, which McNeil markets under the brand name Splenda." (Compl. ¶ 3). McNeil alleges neither that the Sugar Association, the American Sugarbeet Growers Association or Qorvis sell sugar or artificial sweeteners (or *any* type of consumer product), nor that any of them vie for the same dollars as McNeil. McNeil is therefore not a competitor of the Sugar Association, the American Sugarbeet Growers Association, or Qorvis. Accordingly, McNeil cannot properly assert that "its commercial interests have been harmed by a *competitor's* false advertising" with regard to these three defendants. It therefore lacks standing to bring a Lanham Act false advertising claim against them and this Court should dismiss that claim as to these defendants.[4] *See Serbin*, 11 F.3d at 1175; *Granite State Ins. Co.*, 57 F.3d. at 321.

### 2. McNeil Also Lacks Standing to Sue Parties About Which it is Unable to Establish Any Causal Relationship to the Alleged Injury

For a Lanham Act claim to be jurisdictionally supportable, a plaintiff must present an Article III case or controversy to the Court. *See Ditri v. Coldwell Banker Residential*

---

[4] This is not to say that the Sugar Association lacks standing to sue McNeil on behalf of the Member Companies, as it has done in the California Complaint. To the contrary, the Sugar Association enjoys this right pursuant to the doctrine of associational standing, which states that "an organization may sue to redress its members' injuries,

*Affiliates, Inc.* 954 F.2d 869, 873-874 (3d Cir. 1992). To meet this threshold jurisdictional requirement, the plaintiff must establish: (1) injury in fact; (2) a causal connection between the injury and an action of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan,* 504 U.S. at 560-561. McNeil alleges "upon information and belief" that each of the Defendants—including the Member Companies—"contributed, approved, funded, or otherwise participated in the advertising campaign that is the subject of this Complaint." (Compl. ¶ 24). But the jurisdictional facts disclose that McNeil cannot establish the requisite causal connection between its alleged injury and any conduct by the Member Companies.

The Declaration submitted by the president and CEO of the Sugar Association, Andrew C. Briscoe III, makes clear that none of the Member Companies played any role in the planning and execution related to the "Truth About Splenda" website or any other conduct that is the subject of the Delaware Complaint. (DiLuzio Decl., Exh. C ¶¶ 8-12). The absence of a genuine causal connection between the charges in the Delaware Complaint and the Member Companies should counsel this Court to find a lack of an Article III "case or controversy" regarding them. Without this critical element, this Court lacks jurisdiction over the subject matter of the Lanham Act claim asserted against the Member Companies. Accordingly, this claim should be dismissed as to the Member Companies as well.

---

even without a showing of injury to the association itself." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 552 (1996).

**D. Because This Court Lacks Subject Matter Jurisdiction over McNeil's Lanham Act Claim, the State Law Claims Should Also Be Dismissed**

Once this Court ordains that it lacks subject matter jurisdiction over the single federal claim asserted in the Delaware Complaint, there is no alternative basis for federal jurisdiction over the subject matter, and all supplemental state claims should be dismissed along with it. *See Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 299 (3d Cir. 2003) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) (explaining that "because [plaintiffs] lack standing, the District Court lacked original jurisdiction over the federal claim, and it therefore could not exercise supplemental jurisdiction"). The state law claims in this matter should be dismissed because this Court lacks original jurisdiction over McNeil's Lanham Act claim as noted above. Regardless, as discussed below, the state claims should also be dismissed on the independent basis that they fail to allege facts sufficient to set forth valid claims as a matter of law.

**E. Several of the Named Defendants Lack Sufficient Contacts With This Forum to Endow This Court With the Power to Exercise Personal Jurisdiction Over Them in a Manner That Comports With the Constitution**

Personal jurisdiction does not exist with regard to defendants American Crystal Sugar Company, American Sugar Cane League, Atlantic Sugar Association, Inc., Hawaiian Sugar & Transportation Cooperative, Imperial Sugar Company, Michigan Sugar Company, Minn-Dak Farmers Cooperative, Osceola Farms Company, Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Cooperative, Sugar Cane Growers Cooperative of Florida, Western Sugar Cooperative, Wyoming Sugar Company, LLC, American Sugarbeet Growers Association, and Qorvis. None of these defendants is incorporated in or maintains its principal place of business in Delaware. (DiLuzio Decl.,

Exhs. D-R, ¶¶ 1 and 2).  None maintains any offices in Delaware.  (*Id.* ¶ 3).  None of them is licensed or registered to do business in Delaware.  (*Id.* ¶ 4).  None maintains a registered agent for service of process in Delaware.  (*Id.* ¶ 5).  Other than Imperial Sugar Company ("Imperial") and perhaps Qorvis, none of them conducts business in Delaware. (*Id.* ¶ 6).  In at least the past five years, all but Imperial have not sold or shipped any products directly to customers in Delaware.[5]  (*Id.* ¶ 7).  None but Qorvis offers any services in Delaware.  (*Id.* ¶ 8).  Furthermore, none of these entities owns or leases any real estate in Delaware.  (*Id.* ¶ 9).  Nor does any own or lease any personal property in Delaware.  (*Id.* ¶ 9).

They likewise uniformly do not maintain bank accounts in Delaware.  (*Id.* ¶ 10). They pay no Delaware taxes.  (*Id.* ¶ 11).  They do not maintain any telephone listings in Delaware.  (*Id.* ¶ 12).  They have neither employees nor agents in Delaware.  (*Id.* ¶ 13). They have never commenced any lawsuits in Delaware.  (*Id.* ¶ 14).[6]  Nor have they been named as a defendant in any other lawsuit in Delaware.  (*Id.* ¶ 15).  They have also not advertised in any Delaware-based publications, or directed any marketing efforts at

---

[5] Imperial "derives less than one-tenth of one percent of its total annual sales revenue from sales of sugar and other products to customers in Delaware." (DiLuzio Decl., Exh. H ¶ 6).  Regardless, this is a distinction without a legal difference.  The law is clear that a defendant's revenue from sales to customers in Delaware that "compris[es] less than 1% of total revenue, is not substantial enough to warrant an exercise of general jurisdiction." *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.,* 295 F. Supp. 2d 400, 405 (D. Del. 2002).  With regard to Qorvis, on just three occasions, a single employee accompanied a client on trips to Delaware to meet with Delaware's Insurance Commissioner regarding a matter completely unrelated to the present litigation. (DiLuzio Decl., Exh. R ¶ 6).

[6] A singular exception to this observation is Imperial, which filed for Chapter 11 protection in 2001 with the matter being resolved that same year.  (*See* DiLuzio Decl., Exh. H ¶ 14).

Delaware specifically. (*Id.* ¶ 16). Other than Imperial, none even maintains an "active" internet website accessible from Delaware. (*See id.* ¶ 17); *see also C.R. Bard, Inc.*, 997 F. Supp. at 561 (explaining that a defendant's maintenance of a website that merely makes information accessible to the entire nation does not justify the exercise of personal jurisdiction).

With regard to this last observation, it appears that McNeil may also be attempting to justify the exercise of personal jurisdiction over certain defendants, for example Qorvis, regarding their alleged role in "The Truth About Splenda" website, from which some of the claims arise. Delaware courts have explained that its long-arm statute, 10 Del. C. § 3104(c), does not permit the exercise of either general or *specific* personal jurisdiction over a defendant merely on the basis of its ownership or maintenance of a passive website, even if that website forms a basis of the claims. *See Commisseriat A L'Energie Alomique v. Chi Mei Optoelectronics*, 293 F. Supp. 2d 423, 428 (D. Del. 2003) (holding the defendant's maintenance of an internationally-accessible website from which products could not be purchased, failed to evidence an intent or purpose to serve the Delaware market, and thus did not authorize the exercise of personal jurisdiction pursuant to Delaware's long-arm statute); *see also Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (rejecting specific personal jurisdiction based solely on the fact that the defendant had a passive informational website).

Based on the foregoing facts and law, it is clear that these defendants are not subject to the exercise of personal jurisdiction by this Court. Their lack of contacts with the forum demonstrates that none of these defendants has "substantial, continuous and systematic" contacts with it sufficient to support the exercise of general jurisdiction over

19

any of them. *Perkins*, 342 U.S. at 446. The above facts also show that none of these defendants has purposefully availed itself of the forum's benefits such that the claims alleged in the Delaware Complaint can be said to have arisen out of their contact with the forum. *See Burger King Corp.*, 471 U.S. at 472-73.

Even were McNeil able to establish some constitutionally minimum contact with Delaware and any one of these defendants—which it cannot and does not do—McNeil still would be unable to show that the exercise of jurisdiction over that defendant is reasonable such that maintenance of the suit would not offend traditional notions of fair play and substantial justice. *See International Shoe Co.*, 326 U.S. at 316. Any contact between the identified defendants and this forum is practically nonexistent and, thus, haling them into this Court to defend themselves against McNeil's claims would be so costly, burdensome, and so unreasonable as to be inconsistent with the constitutional guarantee of due process.

## F.  McNeil Both Lacks Standing and Fails to Set Forth Facts Sufficient to Establish Claims for Relief Under Delaware State Law

Similar to the standing requirements of Lanham Act false advertising claims, the Delaware Uniform Deceptive Trade Practices Act ("Deceptive Trade Practices Act") provides relief only for "unreasonable or unfair interference with the *'horizontal'* relationships between various business interests." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993) (emphasis added). The Deceptive Trade Practices Act thereby limits standing to those who have a "horizontal business or trade interest at stake." *Id.* This Court has accordingly recognized standing only if the plaintiff and defendant "were both competitors in the [same] market and plaintiff could reasonably expect to be

damaged by defendant's false representations as required by 6 Del. C. § 2533(a)."
*Clontech Labs., Inc. v. Invitrogen Corp.*, 263 F. Supp. 2d 780, 795 (D. Del. 2003). As
detailed above, McNeil's admissions demonstrate it is unable to establish competitive
injury as a result of any alleged conduct of the Sugar Association, the American
Sugarbeet Growers Association, and Qorvis. Therefore, the Court should dismiss
McNeil's Deceptive Trade Practices Act claim as to these three defendants.[7]

McNeil's claim for unfair competition and product disparagement is also deficient,
albeit for a different reason. To assert such a claim in a legally sufficient manner, a
plaintiff must allege that it has a "reasonable expectancy of entering a valid business
relationship with which the defendant wrongfully interferes, thereby defeating the
plaintiff's legitimate expectancy and causing the plaintiff harm." *Delaware Solid Waste
Auth. v. Eastern Shore Envtl., Inc.*, C.A. No. 1472-K, 2002 Del. Ch. LEXIS 34, at *6
(Del. Ch. March 28, 2002) (Exh. 1). To achieve this objective a plaintiff must further
allege with particularity facts showing the defendant's conduct is "wrongful" or
"malicious." *Id.* (dismissing a plaintiff's claim for unfair competition, explaining that
although it had asserted the defendant's conduct "generally was willful and malicious, . . .
this conclusory assertion is not supported by any specific pled facts").

The allegations in the Delaware Complaint do not meet these exacting standards.
McNeil alleges only generally that the Defendants had an "intent to influence potential
purchasers not to buy products." (Compl. ¶ 71). Moreover, the existence of *potential*
purchasers of a product does not mean there exists a *reasonable expectancy* of a valid

---

[7] For the same reasons addressed by the jurisdictional facts discussed above,
McNeil also lacks standing to sue the Member Companies. *See*, *supra*, Part IV.C.2.

business relationship. McNeil's generalized charges that Defendants acted with "reckless disregard" or "actual knowledge," without pleading specific facts to support the grounds for these allegations, is similarly deficient. For these reasons, McNeil has failed to plead sufficiently a cause of action upon which relief may be granted under Delaware law.

## V.    **CONCLUSION**

Defendants respectfully request that this Court treat McNeil's Delaware Complaint for what it is: a forum-shopping device that flouts the procedural requirements set forth in the Federal Rules of Civil Procedure. Rule 13(a) required that McNeil assert any claims logically related to the California Complaint as counterclaims in that first-filed action. Because McNeil instead filed the Delaware Complaint asserting such claims in this Court, the mandates of Rule 13(a) and the Third Circuit require its dismissal. Regardless, several independent reasons should also direct this result. The websites, press statements and other publicity attendant to the California Complaint cannot give rise to liability under the *Noerr-Pennington* doctrine, which affords the Defendants immunity. Additionally, McNeil lacks standing to sue on its only federal claim and the supplemental state law claims cannot stand on their own. Even personal jurisdiction is lacking for most of the Defendants.

These reasons provide ample bases for dismissing the Delaware Complaint with prejudice. Such a dismissal will uphold principles of judicial economy, reinforce the authority of the federal rules, and prevent McNeil from gaining an unacceptable tactical advantage that will otherwise only inflate the parties' costs and burdens imposed on this Court.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

*Sarah E. DiLuzio*

Richard L. Horwitz (No. 2264)
Sarah E. DiLuzio (No. 4085)
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
E-mail: rhorwitz@potteranderson.com
        sdiluzio@potteranderson.com
Attorneys for Defendants

OF COUNSEL:
James P. Murphy (*pro hac vice* pending)
SQUIRE, SANDERS & DEMPSEY LLP
1201 Pennsylvania Avenue, N.W., Suite 500
Washington, DC  20004
Telephone:  (202) 626-6600
Facsimile:  (202) 626-6780

Adam R. Fox (*pro hac vice* pending)
SQUIRE, SANDERS & DEMPSEY LLP
801 So. Figueroa Street, Suite 1400
Los Angeles, CA  90017
Telephone:  (213)624.2500
Facsimile:  (213) 623-4581

Attorneys for Defendants


Charles D. Tobin (*pro hac vice* to be filed)
Leo G. Rydzewski (*pro hac vice* to be filed)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: 202-955-3000
Facsimile: 202-955-5564

Attorneys for Defendant Qorvis
Communications, LLC

Dated: March 25, 2005

23

## CERTIFICATE OF SERVICE

I, Sarah E. Diluzio, hereby certify that on March 25, 2005, I electronically filed true and correct copies of the foregoing BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court using CM/ECF which will send notification of such filing, which is available for viewing and downloading from CM/ECF, to the following counsel of record:

> Steven J. Balick (No.2114)
> ASHBY & GEDDES
> 222 Delaware Avenue
> 17th floor
> Wilmington, DE 19801
> Telephone: (302) 654-1888
> sbalick@ashby-geddes.com

Additionally, copies of the foregoing document have been sent to the following counsel in the manner indicated:

> BY FEDERAL EXPRESS
>
> Steven A. Zalesin, Esquire
> Patterson, Belknap, Webb & Tyler LLP
> 1133 Avenue of the Americas
> New York, NY 10036-6710
>
> Donna Malin, Esquire
> Johnson & Johnson
> One Johnson & Johnson Plaza
> New Brunswick, NJ 08543

> Sarah E. DiLuzio (DSB ID No. 4085)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Post Office Box 951
> Wilmington, Delaware 19899-0951
> Tel: (302) 984-6000
> E-mail: sdiluzio@potteranderson.com

675614