## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| McNEIL NUTRITIONALS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C. A. No. 05-69 (GMS) |
| | ) |
| THE SUGAR ASSOCIATION, et. al. | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF SARAH E. DILUZIO
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

I, Sarah E. DiLuzio, declare as follows:

1.      I am an attorney duly licensed to practice before this Court and an

associate at the law firm of Potter Anderson & Corroon LLP, counsel to defendants in this

action.  I submit this declaration in support of Defendants' Motion to Dismiss.  I have

personal knowledge of the facts set forth herein and, if called as a witness, could and

would competently testify thereto.

2.      Attached hereto are true and correct copies of the following documents:

Exhibit A – Complaint for Damages and Injunctive Relief in the lawsuit
captioned, *The Sugar Association, Inc. v. McNeil-PPC, Inc.*, Civil
Action No. 04-CV-10077 DSF (RZX), filed by The Sugar
Association, Inc. in the United States District Court for the Central
District of California on December 10, 2004.

Exhibit B – Answer to Plaintiff's Complaint in the lawsuit captioned, *The Sugar
Association, Inc. v. McNeil-PPC, Inc.*, Civil Action No. 04-CV-
10077 DSF (RZX), filed by McNeil-PPC, Inc. and McNeil
Nutritionals, LLC in the United States District Court for the Central
District of California on February 2, 2005.

Exhibit C -- Declaration of Andrew C. Briscoe III on behalf of
Defendant Sugar Cane Association, Inc.

Exhibit D -- Declaration of Lisa M. Maloy on behalf of
     Defendant American Crystal Sugar Company

Exhibit E -- Declaration of James H. Simon on behalf of
     Defendant American Sugar Cane League

Exhibit F -- Declaration of Oscar R. Hernandez on behalf of
     Defendant Atlantic Sugar Association, Inc.

Exhibit G -- Declaration of E. Alan Kennett on behalf of
     Defendant Hawaiian Sugar & Transportation Cooperative

Exhibit H -- Declaration of William Schwer on behalf of
     Defendant Imperial Sugar Company

Exhibit I -- Declaration of Mark S. Flegenheimer on behalf of
     Defendant Michigan Sugar Company

Exhibit J -- Declaration of David H. Roche on behalf of
     Defendant Minn-Dak Farmers Cooperative

Exhibit K -- Declaration of William F. Tarr on behalf of
     Defendant Osceola Farms Company

Exhibit L -- Declaration of Steve Bearden on behalf of
     Defendant Rio Grande Valley Sugar Growers, Inc.

Exhibit M -- Declaration of John A. Richmond on behalf of
     Defendant Southern Minnesota Beet Sugar Cooperative

Exhibit N -- Declaration of Jeffrey J. Ward on behalf of
     Defendant Sugar Cane Growers Cooperative of Florida

Exhibit O -- Declaration of Inder K. Mathur on behalf of
     Defendant Western Sugar Cooperative

Exhibit P -- Declaration of Richard McKamey on behalf of
     Defendant Wyoming Sugar Company, LLC

Exhibit Q -- Declaration of Luther Markwart on behalf of
     Defendant American Sugarbeet Growers Association

Exhibit R -- Declaration of Michael J. Petruzzello on behalf of
     Defendant Qorvis Communications, LLC

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 25th day of March, 2005, at Wilmington, Delaware.

Sarah E. DiLuzio
Sarah E. DiLuzio

# EXHIBIT A

FILED

1  Adam R. Fox (State Bar No. 220584)
   Mark Hurvitz (State Bar No. 222981)
2  SQUIRE, SANDERS & DEMPSEY L.L.P.
   801 South Figueroa Street, 14th Floor
3  Los Angeles, CA 90017-5554
   Telephone:  (213) 624-2500
4  Facsimile:  (213) 623-4581

2004 DEC 10 PM 12: 27

5  Attorneys for Plaintiff
   THE SUGAR ASSOCIATION, INC.

6

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  THE SUGAR ASSOCIATION,         Case No. CV 04 10077 DSF (RZx)
    INC., a Delaware corporation,
12                                 **COMPLAINT FOR DAMAGES AND**
        Plaintiff,                 **INJUNCTIVE RELIEF ARISING OUT**
13                                 **OF:**

        vs.
14                                 1.  **False Advertising – 15 U.S.C. § 1125(a);**
    McNEIL-PPC, INC., a New            **and**
15  Jersey corporation, McNEIL
    NUTRITIONALS, LLC, a         2.  **Unfair Competition – Cal. Bus. & Prof.**
16  Delaware Limited Liability        **Code §§ 17200 and 17500 et seq. and**
    Company, and DOES 1 through       **California Common Law**
17  10,

18        Defendants.              **DEMAND FOR JURY TRIAL**

19        Plaintiff, The Sugar Association, Inc. (the "Sugar Association") hereby

20  complains and alleges as follows:

21                                 **I.**

22               **JURISDICTION AND VENUE**

23        1.      This Court enjoys jurisdiction over the subject matter presented by this

24  Complaint because it includes a claim of false advertising that arises under the

25  Lanham Act, 15 U.S.C. §§ 1051, et seq., which explicitly provides for the

26  jurisdiction of the federal courts pursuant to 15 U.S.C. § 1121, an authority that is

27  also endowed pursuant to 28 U.S.C. §§ 1331 and 1338.  The Court's jurisdiction

28  extends beyond the Lanham Act claim to the additional state law claims asserted in

LosAngeles/1664221                  COPY          COMPLAINT

1  this Complaint because they arise from the same nucleus of operative facts as the
2  federal claim, and 28 U.S.C. § 1367 authorizes the exercise of supplemental
3  jurisdiction over all other claims that are so related.

4      2.        Venue in this district is proper pursuant to 28 U.S.C. § 1391(a)
5  because a substantial part of the events or omissions giving rise to the Sugar
6  Association's claims occurred in this district and because defendants are subject to
7  personal jurisdiction in this district.

8  ## II.

9  ## PARTIES

10      3.        The Sugar Association is a corporation that is organized under the laws
11  of the State of Delaware, having a principal place of business at 1101 15th Street,
12  NW, Suite 600, Washington, DC 20005. The Sugar Association was founded by
13  members of the United States sugar industry in 1943, when it was then called the
14  Sugar Research Foundation. It assumed its current name in 1947. The mission of
15  the Sugar Association is to promote the consumption of sugar as part of a healthy
16  diet and lifestyle through the use of sound science and research. The Sugar
17  Association's seventeen (17) member companies are producers and growers of
18  sugar in the United States. Its Board of Directors is comprised of decision-making
19  representatives from each of those companies or organizations. The Sugar
20  Association's members include The Amalgamated Sugar Company, 3184 Elder
21  Street, Boise, ID 83705, Minn-Dak Farmers Cooperative, 7525 Red River Road,
22  Wahpeton, ND 58075, American Crystal Sugar Company, 101 North Third Street,
23  Moorhead, MN 56560, Okeelanta Corporation, 1 North Clematis Street, Suite 200,
24  West Palm Beach, FL 33402, American Sugar Cane League, 206 East Bayou Road,
25  Thibodaux, LA 70302, Osceola Farms Company, PO Box 1059, Palm Beach, FL
26  33480, American Sugar Refining, Inc., 1 Federal Street, Yonkers, NY 10702, Rio
27  Grande Valley Sugar Growers, Inc., 2 1/2 Miles West Highway 107, Santa Rosa,
28  TX 78593, Atlantic Sugar Association, 1 North Clematis Street, Suite 200, West

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

-2-

COMPLAINT

1   Palm Beach, FL 33402, Southern Minnesota Beet Sugar Cooperative, 83550

2   County Road 21 - Box 500, Renville, MN 56284, Hawaiian Sugar & Transportation

3   Cooperative, c/o Gay & Robinson, Inc., 1 Kaumakani Avenue, Kaumakani, Kauai

4   HI 96747, Sugar Cane Growers Cooperative of Florida, 1500 Sugarhouse Road,

5   Belle Glade, FL 33430, Imperial Sugar Company, 8016 Hwy 90A, Sugar Land, TX

6   77482, United States Sugar Corporation, 111 Ponce de Leon Avenue, Clewiston,

7   FL 33440, Michigan Sugar Company, 4800 Fashion Square Boulevard, Suite 300,

8   Saginaw, MI 48604, Western Sugar Cooperative, 7555 East Hampden Avenue,

9   Suite 600, Denver, CO 80231, and Wyoming Sugar, 500 Hillcrest Drive, Worland,

10  WY 82401 (collectively the "Members").

11       4.       Defendant McNeil-PPC, Inc., is a corporation that is organized under

12  the laws of the State of New Jersey, having a principal place of business at 199

13  Grandview Road, Skillman, NJ 08558.

14       5.       Defendant McNeil Nutritionals, LLC, is a limited liability company

15  organized under the laws of the State of Delaware, having its principal place of

16  business at 7050 Camp Hill Road, Fort Washington, PA 19034.

17       6.       Defendants McNeil-PPC, Inc., acting through its operating divisions

18  McNeil Nutritionals and McNeil Specialty Products Company, as well as McNeil

19  Nutritionals, LLC (collectively "McNeil"), among other things, have been engaged

20  in the business of manufacturing, distributing and selling an artificial food additive

21  used as a sweetener and marketed under the brand name Splenda® in a variety of

22  products that employ the identical brand name (collectively "Splenda").

23       7.       The Sugar Association does not know the true names and capacities of

24  the defendants sued as DOES 1 through 10, inclusive, and, therefore, sues these

25  defendants by such fictitious names. The Sugar Association will amend this

26  Complaint to allege the true names and capacities of DOES 1 through 10, inclusive,

27  when ascertained. For purposes of this Complaint, wherever McNeil is mentioned

28  it is intended that DOES 1 through 10 be mentioned as well.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 3 -

COMPLAINT

## II.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.    Introduction

8.    This case concerns the false, deceptive and/or misleading representations made by McNeil about Splenda in order to attract customers to purchase and consume that product, and to divert those customers away from their purchase and consumption of sugar.

9.    This is a recent development for the producer of Splenda. McNeil had initially positioned its product as a competitor only in the market for artificial, purportedly no-calorie, sweeteners ("Artificial Sweetener Market"). In the Artificial Sweetener Market, the products against which Splenda principally competes are Sweet'N Low® ("Sweet'N Low"), a brand that employs the sweetening ingredient saccharin, and Equal® ("Equal"), a brand that employs the sweetening ingredient aspartame. Only recently, after gaining a significant foothold in the Artificial Sweetener Market—on information and belief, more than Sweet'N Low and Equal combined—has McNeil positioned Splenda to compete in the market for wholesome, natural sweeteners, like sugar, molasses and honey ("Natural Sweetener Market").

10.    McNeil has entered Splenda into the Natural Sweetener Market by overtly changing the character of its representations to consumers so that it is no longer perceived as a mere "packet" sweetener, and is now regarded as a "pantry staple food." To achieve this objective, McNeil has, among other things, acted just in the last year to introduce a new Splenda-branded product that its president, Colin Watts ("McNeil's President"), publicly proclaimed this September, is "really changing the way people think about sugar" and that "offer[s] a true sugar baking replacement." Splenda's website even openly touts that as of August 2004, it "is growing at the expense of sugar" with sales now "ahead of both Domino and C&H Sugar." This comparison is significant, as one of the Sugar Association's

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 4 -

COMPLAINT

1  Members, American Sugar Refining, Inc., owns the Domino® sugar brand, and
2  another Member, Hawaiian Sugar & Transportation Cooperative, which is
3  comprised by all the major sugarcane growers in Hawaii, recently ended a ten-year
4  supply contract that required C&H Sugar Company, Inc. to purchase substantially
5  all the raw sugar produced in Hawaii.

6      11.    The problem with Splenda's entry into the Natural Sweetener Market
7  and its growth at the expense of sugar and the Members of the Sugar Association in
8  particular is that Splenda is *not* a natural sweetener.  Splenda instead attributes its
9  sweet taste to a manufactured, synthetic compound that was not even known to the
10  world scientific community until 1976.  This fact has not stopped McNeil from
11  engaging in an advertising campaign that includes both literally false claims as well
12  as misleading statements that falsely imply that Splenda (a) contains real sugar, (b)
13  is some sort of natural, no-calorie, form of sugar, (c) is healthy to consume simply
14  because it carries with it no calories, as the sucralose purportedly passes through the
15  body without being broken down and (d) genuinely tastes like sugar.  Because
16  McNeil's literally false, deceptive and/or misleading statements in these regards are
17  being aimed directly at natural sugar producers who compete in the Natural
18  Sweetener Market—in contradistinction to those companies that compete in the
19  Artificial Sweetener Market—the Sugar Association has filed this action for
20  judicial relief.

21  **B.    Splenda Unfairly Competes In The Artificial Sweetener Market**

22      12.    Since at least September 2000, when McNeil first offered Splenda for
23  sale in retail stores in the United States, Splenda has attempted to gain a
24  competitive advantage in the Artificial Sweetener Market by explicitly and
25  implicitly distinguishing itself from its competitors by representing to the public
26  that Splenda is a *natural* food product.  Among other things, it has described its
27  product with the following tag line: "Made from sugar, so it tastes like sugar."  In
28  addition, McNeil has employed a variety of techniques to persuade consumers in

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 5 -

COMPLAINT

1    the Artificial Sweetener Market that it is inherently different from the other
2    artificial sweeteners by, among other things, running television advertisements
3    falsely implying that Splenda is wholesome and pure.  For example, one Splenda
4    advertisement answers the question "What are little girls made of?" with the
5    misleading associational phrase, "Splenda and spice and everything nice."  More
6    directly, through its spokesperson, Monica Neufang ("McNeil's Spokesperson"),
7    McNeil has publicly characterized its representation that Splenda is made from
8    sugar so it tastes like sugar as "a declarative fact."

9        13.    The truth is that Splenda is actually manufactured by synthesizing a
10   small amount of a man-made compound called 4,1',6'-trichloro-4,1',6'-
11   trideoxygalactosucrose, misleadingly named sucralose.  Sucralose is chemically
12   achieved through a multi-step patented process that dramatically alters the
13   molecular structure of sucrose by substituting its naturally occurring hydroxyl
14   groups with chlorine, and then combining this artificial substance with large
15   amounts of dextrose, maltodextrin or both, to bulk up the amalgamation and dilute
16   the unnatural, high-intensity sweetness exhibited by sucralose.  Additionally, the
17   molecular structure of sucralose so differs from sucrose that the two compounds
18   interact differently with the taste buds on the human tongue.  Studies indicate that
19   the potency of sucralose—although high at low levels of concentration—diminishes
20   as its concentration increases such that it can never even achieve the sweetness
21   potency of sugar beyond certain concentration levels.  The temporal profile of
22   sucralose also differs from sugar such that the taste effect of sucralose has a longer
23   onset and slower rate of sweetness decay than sugar.  Even the "mouth feel" of
24   sucralose differs from sugar due to the dissimilar viscosity of each in the
25   concentrations actually used in their food applications.  These factors, among
26   others, render literally false, deceptive and/or misleading the assertion that
27   Splenda's purported relationship to sugar makes it taste like sugar.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 6 -

COMPLAINT

14.    McNeil has also employed its marketing campaign to explicitly and implicitly represent to the public that Splenda is a *healthy* food product, which among other things, "the body does not recognize . . . as a carbohydrate," and its key sweetening ingredient sucralose "passes through the body without being broken down," so it has "no calories."

15.    The truth, according to the "Final Rule" report of the United States Food and Drug Administration ("FDA") that served as the basis for the FDA's 1999 authorization of Splenda's use as a general purpose sweetener, and which collects data reported to the FDA by McNeil itself, is that between 11 and 27 percent of sucralose is actually absorbed in humans following ingestion, and between 20 and 30 percent of that absorbed sucralose is then metabolized. The FDA reported that what remains unabsorbed and unmetabolized is excreted in the feces and urine.  Moreover, the bulking and dilutive ingredients of dextrose and maltodextrin are both carbohydrates that are also metabolized. The consequences of the metabolized sucralose have not been adequately tested, rendering its notions of healthfulness uncertain and dubious, at best.

16.    As the direct and proximate result of McNeil's false, deceptive and/or misleading misrepresentations, McNeil has publicly proclaimed that within one year of its introduction of Splenda into the Artificial Sweetener Market, it captured nearly 14 percent of that market share.  McNeil has also asserted that by January 2004, Splenda's share of the Artificial Sweetener Market had risen to more than 45 percent—more than Sweet'N Low and Equal combined.

C.    **McNeil Leverages Splenda's Growth In The Artificial Sweetener Market To Compete Unfairly In The Natural Sweetener Market Against The Members Of The Sugar Association**

17.    On information and belief, based upon its dramatic success at employing literally false, misleading and/or deceptive statements about the inherent qualities and effects of Splenda to compete and succeed in the Artificial Sweetener Market, McNeil hatched a plan to enter into the Natural Sweetener Market and

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 7 -

COMPLAINT

1    compete against sugar directly. Thus, in or about September 2003, Splenda
2    introduced its "Granular Baker's Bag"—a 9.7 ounce re-sealable plastic pouch that
3    purported to be equivalent in sweetness to the standard five-pound bag of sugar,
4    which Johnson & Johnson, McNeil's ultimate parent company, called
5    "conventional sugar" in its press release of the new product—deceptively implying
6    that Splenda, while not "conventional" sugar, was sugar nonetheless.

7        18.      Additionally, in June 2004, McNeil announced its plans to introduce a
8    new product that McNeil's President touted as "offer[ing] a true sugar baking
9    replacement" called the Splenda "Sugar Blend for Baking." This new product
10    became available at retail stores in August 2004, and prompted McNeil to issue a
11    press release this September touting the evolution of its Splenda-branded products
12    from the days when Splenda was available in "packets" to United States consumers
13    only over the Internet in 1999 (when Splenda was vying for a place in the Artificial
14    Sweetener Market), to its 2004 release of the "Sugar Blend for Baking" and
15    ostensible position among "pantry staple food brands" (when Splenda had made
16    clear that it would audaciously promote its artificial product to compete for a place
17    in the Natural Sweetener Market).

18        19.      As a result of McNeil's literally false, misleading and/or deceptive
19    representations about Splenda, it has obtained windfall profits that it would not
20    otherwise have obtained. McNeil's misrepresentations have caused and continue to
21    cause a diversion of business and customers from the members of the Sugar
22    Association, each of which is a direct competitor of McNeil in the sweetener
23    industry. Evidence of the diversion of business exists on McNeil's own website for
24    Splenda, where it proclaims that between August 2003 and August 2004 Splenda's
25    sales were "ahead of both Domino and C&H Sugar," that Splenda "[wa]s growing
26    at the expense of sugar," and that "[f]ifty-one percent of the brand's volume growth
27    [wa]s from the sugar category which declined 4 percent."

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

COMPLAINT

**D.    Background Facts**

20.    The Sugar Association was founded in 1943 by members of the United States sugar industry, including both beet and cane growers and sugar producers throughout the United States. The mission of the Sugar Association is to promote the consumption of sugar as part of a healthy diet and lifestyle through the use of sound science and research. The Sugar Association's Members produce and grow a product that is all natural and refined through a purification process that separates 99.95 percent pure sucrose from the plant matter of sugarcanes and/or sugar beets.

21.    Historically, sugar was the predominantly consumed sweetener in the United States and throughout the world, although honey and molasses were also used with some degree of frequency. Over the past two decades, many new sweeteners have been developed including corn syrup, fructose, glucose, high fructose corn syrup, and maltose, as well as artificial sweeteners such as saccharin, aspartame, and sucralose—the sweetening ingredient of Splenda.

22.    Some of these new sweeteners replaced sugar as the sweetener used in foods and beverages, especially processed and convenience foods. For example, since the early 1980s most soft drinks have been manufactured with high fructose corn syrup rather than sugar. High fructose corn syrup is also used in fruit juices, drinks and ades. Concurrent with the introduction and increased availability and production of the sweeteners other than sugar, during the past twenty years, obesity has risen dramatically throughout the United States.

23.    Since approximately September 2003, when McNeil released its Granular Baker's Bag to compete against the standard five-pound bag of sugar, McNeil's product Splenda has been a principal competitor with the growers and producers of natural sugar represented by the Sugar Association for consumers in the Natural Sweetener Market. Indeed, McNeil's Spokesperson publicly declared this year that Splenda is the chief competitor of sugar, proclaiming, "Splenda is the No. 1 branded sweetener in the U.S. based on dollar sales, which means that the

1   sales are ahead of both Domino and C&H Sugar." Moreover, McNeil has touted on
2   its website for Splenda its assertion that this artificial product is "growing at the
3   expense of sugar" and that "[f]ifty-one percent of the brand's volume growth is
4   from the sugar category which declined 4 percent in the most recent year."

5       24.    The Members of the Sugar Association now compete daily with
6   McNeil to attract new and retain existing customers, including both entities within
7   the food and beverage industry that employ naturally occurring sugars and added
8   sugars or other natural sweeteners in their products, and the end-users who consume
9   those products or who purchase sugar or one of its natural substitutes for use in
10  their own recipes. This competition extends beyond food quality and taste to such
11  attributes as healthfulness and wholesomeness.

12      25.    The Members of the Sugar Association devote substantial resources to
13  advertising and promoting their respective brands. Such advertising appears in
14  virtually every form of media, including television, radio and print. Additionally,
15  the Sugar Association indirectly expends substantial resources of the Members to
16  educate both consumer and professional audiences about the consumption of pure,
17  natural sugar, the health threat of obesity and the health benefits of physical
18  activity.

19      **E.      The Scope Of McNeil's Deceptive Advertising**

20      26.    Although McNeil has since at least September 2000 offered consumers
21  in the Artificial Sweetener Market in the United States with Splenda, an artificial
22  sweetener that alone among artificial sweeteners, as described above, falsely
23  advertises itself in a manner designed to imply that it is natural, healthy and shares
24  sugar's sweet taste, since approximately September 2003, McNeil has also touted
25  Splenda as a true alternative to sugar—a "pantry staple food" that is healthy, tastes
26  like sugar and is made from "conventional" sugar.

27      27.    Upon information and belief, McNeil has made these literally false,
28  misleading and/or deceptive statements with the aim of diverting customers away

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 10 -

COMPLAINT

1    from real sugar and to encourage the purchase and use of Splenda instead, thereby

2    generating for McNeil greater sales, customer loyalty and market share.

3       28.    The promotion of Splenda as a natural product that is "[m]ade from

4    sugar, so it tastes like sugar" and a healthy product that has "no calories," among

5    other things, has been an important and material part of McNeil's advertising

6    strategy.  Because customers desire the opportunity to eat natural, healthy foods

7    without increasing their daily caloric intake, McNeil's promotions of Splenda have

8    produced a substantial amount of revenue to McNeil over and above the normal

9    expected revenue stream.

10       29.    Exemplary of the effect of McNeil's tactics are their influence on the

11    rapidly growing California retail chain Jamba Juice, which now uses Splenda in

12    certain of its drinks.  Jamba Juice has a stated "commitment to providing nutritious,

13    vibrant foods," and an "environmentally conscious" orientation.  Although Jamba

14    Juice now uses Splenda in some of its drinks, it still proclaims that its "blends are

15    100% natural" and that it does "not add any processed sugar or flavor-enhancing

16    additives to [its] juices."  Jamba Juice has explained on its website its decision to

17    use Splenda by repeating McNeil's two favorite deceptions about the product:

18    (1) "it doesn't act like sugar because the body does not recognize it as a

19    carbohydrate," and (2) "[t]he difference between Splenda (sucralose), Sweet 'N

20    Low (saccharin), Equal® (aspartame) and other sweeteners on the market is that

21    Splenda is the only sweetener that is made from sugar so it tastes like sugar."

22    **F.    The Willfulness Of McNeil's Misrepresentations**

23       30.    The key sweetening ingredient of Splenda, sucralose, was first

24    discovered in 1976.  Johnson & Johnson later formed McNeil in order to, among

25    other things, commercialize sucralose.  By 1991, Canada had become the first

26    nation to approve the use of sucralose.  In April 1998, the FDA first approved the

27    limited use of sucralose in the United States, and expanded that approval in 1999.

28    Sucralose received approval in the European Union in January 2004, and has also

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422 1

- 11 -

COMPLAINT

1    been approved for use in Brazil, China, Japan and in various Latin American,
2    Asian, Caribbean, and Middle Eastern countries.

3       31.    In order to gain from the FDA approval to sell sucralose for human
4    consumption in the United States, McNeil petitioned the FDA in the late 1980s to
5    propose an amendment to the federal food additive regulations.  The submission to
6    the FDA made by McNeil included data and information garnered from toxicity
7    studies in several animal species, other tests in animals and information gained
8    from clinical tests in human volunteers.  The human clinical testing addressed the
9    pharmacokinetics and metabolism of sucralose as well as its potential effects on
10   carbohydrate metabolism.    These studies specifically disclosed and McNeil
11   reported to the FDA that humans absorbed between 11 and 27 percent of ingested
12   sucralose, and that between 20 and 30 percent of the absorbed sucralose would be
13   metabolized.

14      32.    Despite knowledge of these facts, and of the synthetic molecular
15   structure of sucralose that makes it differ from sugar, and interact with taste buds on
16   the human tongue differently from sugar, McNeil has advertised and promoted
17   Splenda in the Natural Sweetener Market as though its consumers would not
18   metabolize the product and as though it was a natural product that tastes like sugar.
19   Such representations are all literally false, misleading and/or deceptive.

**III.**

**THE SUGAR ASSOCIATION'S CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**(Violations of Section 43(a) of the Lanham Act – False Advertising)**

24      33.    The Sugar Association realleges and incorporates herein by this
25   reference each and every allegation contained in Paragraphs 1 through 32,
26   inclusive, of this Complaint as though set forth in full.

27      34.    McNeil has used and continues to use false, deceptive and/or
28   misleading descriptions of fact and/or misrepresentations of fact in commercial

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 12 -

COMPLAINT

1 | advertising and/or promotion regarding the nature, taste and healthfulness of
2 | Splenda and its constituent parts. These advertisements have actually deceived,
3 | continue to deceive and/or have the tendency to deceive a substantial part of the
4 | audience for McNeil's messages in the Natural Sweetener Market.

5 | 35. McNeil is engaged in making these false, deceptive and/or misleading
6 | descriptions of fact and/or misrepresentations of fact in commercial advertising
7 | and/or promotion in California and in this district, and the effects of McNeil's acts
8 | throughout the United States are intended to and do fall upon Members of the Sugar
9 | Association in California and in this district.

10 | 36. McNeil's misrepresentations concern and have concerned McNeil's
11 | products, services and/or commercial activities, specifically its products sold under
12 | the brand Splenda.

13 | 37. The misrepresentations are and were material to McNeil's customers'
14 | decisions to purchase Splenda branded products and/or products in which Splenda
15 | is used as an ingredient or additive.

16 | 38. McNeil's knowledge about the synthetic manner in which sucralose is
17 | manufactured, the fact that hydrolysis occurs at low pH in products that include
18 | Splenda, and its absorption and metabolic processing after ingestion by humans, all
19 | of which McNeil investigated and reported to the FDA, render its decisions to
20 | market and promote Splenda as described above conscious and/or willful and/or
21 | knowingly reckless with regard to the truth. This misconduct, above and beyond
22 | the conduct required for liability under § 43(a) of the Lanham Act, should subject
23 | McNeil to treble damages.

24 | 39. All such misrepresentations took place in interstate commerce.

25 | 40. McNeil has earned a substantial windfall and unnatural profits as the
26 | direct and proximate result of falsely, misleadingly, and/or deceptively advertising
27 | and promoting the nature, taste and healthfulness of Splenda. An appropriate share
28 | of such profits to be demonstrated at trial should be returned to, and are lawfully

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 13 -

COMPLAINT

1    due to the Members of the Sugar Association, as competitors of McNeil in the

2    Natural Sweetener Market.

3        41.    The Sugar Association has been damaged as a result of McNeil's acts,

4    in an amount to be demonstrated at trial.   Specifically, McNeil's actions have

5    caused, *inter alia*, a diversion of trade from the Members of the Sugar Association

6    to McNeil, causing the Sugar Association to expend additional resources on

7    advertising and education to inform the consuming public of the truth.

8

9                  **SECOND CLAIM FOR RELIEF**

10    **(Violations of Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*, and**

11              **California Common Law - Misleading Advertising)**

12        42.    The Sugar Association realleges and incorporates herein by this

13    reference each and every allegation contained in Paragraphs 1 through 41,

14    inclusive, of this Complaint as though set forth in full.

15        43.    McNeil has used and continues to use false, deceptive and/or

16    misleading descriptions of fact and/or misrepresentations of fact in commercial

17    advertising and/or promotion regarding the nature, taste and healthfulness of

18    Splenda and its constituent parts.   These advertisements have actually deceived,

19    continue to deceive and/or have the tendency to deceive a substantial part of the

20    audience for McNeil's messages.

21        44.    McNeil is engaged in these unfair, unlawful and deceptive activities in

22    California and in this district, and that the effects of McNeil's acts throughout the

23    United States are intended to and do fall upon Members of the Sugar Association in

24    California and in this district.

25        45.    The Sugar Association has been damaged as a result of McNeil's acts,

26    in an amount to be demonstrated at trial.   Specifically, McNeil's actions have

27    caused, *inter alia*, a diversion of trade from the Members of the Sugar Association

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 14 -

COMPLAINT

1    to McNeil, causing the Sugar Association to expend additional resources on

2    advertising and education to inform the consuming public of the truth.

3        46.     McNeil's wrongful acts described herein have also caused great harm

4    to the general public and the marketplace. No legal remedy for the resulting injury

5    is adequate compensation; only an injunctive order directing McNeil to stop the

6    unfair conduct will suffice.

7        47.     McNeil's knowledge about the synthetic manner in which sucralose is

8    manufactured, and its absorption and metabolic processing after ingestion by

9    humans, all of which McNeil investigated and reported to the FDA, render its

10    decisions to market and promote Splenda as described above conscious and/or

11    willful and/or knowingly reckless with regard to the truth.

12                                **IV.**

13                            **PRAYER**

14        WHEREFORE, the Sugar Association prays for judgment against

15    defendants, and each of them, as follows for all claims:

16          a.     That this Court enjoin McNeil from advertising, promoting

17        and/or marketing Splenda in any manner for the purpose of acquiring,

18        benefiting from or trading on the commercial reputation, success and

19        goodwill of sugar;

20          b.     That this Court order McNeil to pay damages to the Sugar

21        Association, for the harms associated with McNeil's sales through false

22        advertising, promotion and/or marketing;

23          c.     That this Court award the Sugar Association treble the damages

24        award pursuant to 15 U.S.C. § 35;

25          d.     That this case be found to be exceptional within the meaning of

26        15 U.S.C. § 1117;

27          e.     That this Court award the Sugar Association the costs and

28        expenses, including all reasonable attorneys' fees, incurred by it;

1           f.     That this Court award the Sugar Association pre-judgment and

2    post-judgment interest; and

3           g.     That this Court grant the Sugar Association, such other and

4    further relief as the Court deems just and proper.

5

6    Dated:  December 10, 2004           SQUIRE, SANDERS & DEMPSEY L.L.P.

7

8                                  By: _____

9                                       Adam R. Fox

10                                      Mark N. Hurvitz
                                       Attorneys for Plaintiff
                                       THE SUGAR ASSOCIATION, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 16 -

COMPLAINT

1

## DEMAND FOR JURY TRIAL

2      The Sugar Association, Inc. hereby demands a trial by jury as to all issues so

3   triable.

4

5   Dated:  December 10, 2004                SQUIRE, SANDERS & DEMPSEY L.L.P.

6

7                                           By: _____

8                                                      Adam R. Fox
                                                       Mark N. Hurvitz
9                                           Attorneys for Plaintiff
                                            THE SUGAR ASSOCIATION, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
801 South Figueroa, 14th Floor
Los Angeles, CA 90017-5554

LosAngeles/166422.1

- 17 -                                    COMPLAINT

# EXHIBIT B

1   RICHARD B. GOETZ (S.B. #115666)
    DIANA M. TORRES (S.B. #162284)
2   CARLOS M. LAZATIN (S.B. #229650)
    O'MELVENY & MYERS, LLP
3   400 South Hope Street
    Los Angeles, California 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5
    STEVEN A. ZALESIN
6   JEFFREY D. ROTENBERG
    JENNIFER L. HIGGINS
7   (applying for admission *pro hac vice*)
    PATTERSON, BELKNAP, WEBB & TYLER LLP
8   1133 Avenue of the Americas
    New York, New York 10036-6710
9   Telephone: (212) 336-2000
    Facsimile: (212) 336-2222
10
    Attorneys for Defendants,
11  McNeil-PPC, Inc. and McNeil Nutritionals, LLC

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15

16  THE SUGAR ASSOCIATION, INC., a        Case No. 04 CV 10077 DSF (RZX)
    Delaware corporation,
17                                         **DEFENDANTS MCNEIL-PPC, INC.
                 Plaintiff,                AND MCNEIL NUTRITIONALS,**
18                                         **LLC'S ANSWER TO PLAINTIFF'S**
                 v.                        **COMPLAINT**
19
    McNEIL-PPC, INC., a New Jersey
20  corporation, McNEIL NUTRITIONALS,      **DEMAND FOR JURY TRIAL**
    LLC, a Delaware Limited Liability
21  Company, and DOES 1 through 10,        Date:   None set
                                           Time:   None set
22               Defendants.
23
                                           Judge:  Hon. Dale S. Fischer
24

25

26

27

28

                                           **ANSWER TO COMPLAINT**

1        Defendants McNeil-PPC, Inc. and McNeil Nutritionals, LLC (collectively

2  "McNeil") hereby answer, for themselves alone, the Complaint of Plaintiff the Sugar

3  Association as follows:

### JURISDICTION AND VENUE

4

5

6        1.    McNeil admits the allegations contained in ¶ 1.

7        2.    McNeil admits that venue is proper in this district, but denies that

8  venue is proper pursuant to 28 U.S.C. §1391(a).  Except as expressly admitted above,

9  McNeil denies the allegations contained in ¶ 2.

### PARTIES

10

11

12       3.    McNeil lacks knowledge or information sufficient to admit or deny

13  the allegations of ¶ 3, and, on that basis, denies each and every allegation contained

14  therein.

15       4.    McNeil admits that McNeil-PPC, Inc. is a New Jersey corporation

16  that maintains its principal place of business in New Jersey.

17       5.    McNeil admits that McNeil Nutritionals, LLC is a Delaware

18  corporation that maintains its principal place of business in Fort Washington,

19  Pennsylvania.

20       6.    McNeil admits that McNeil Nutritionals, LLC manufactures an

21  artificial sweetener and markets it under the brand name Splenda.  Except as expressly

22  admitted above, McNeil denies the allegations contained in ¶ 6.

23       7.    McNeil avers that ¶ 7 does not allege facts that McNeil is required to

24  admit or deny.

25

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

26

27       8.    McNeil denies each and every allegation contained in ¶ 8.

28

-2-           **ANSWER TO COMPLAINT**

1    9.    McNeil admits that Equal and Sweet'N Low are Splenda's principal

2    competitors and that Splenda's share of the market is more than that of Equal and

3    Sweet'N Low combined.  Except as expressly admitted above, McNeil denies the

4    allegations contained in ¶ 9.

5    10.    McNeil denies that it has recently changed its marketing emphasis or

6    the character of its representations to consumers concerning Splenda.  McNeil admits that

7    the president of McNeil Nutritionals, LLC made the statements attributed to him in ¶ 10.

8    McNeil admits that the quoted statement regarding Domino and C&H appears on the

9    Splenda website.  McNeil lacks knowledge or information sufficient to admit or deny the

10    remaining allegations of ¶ 10, and, on that basis, denies each and every allegation

11    contained therein except as expressly admitted above.

12

13    11.    McNeil denies each and every allegation contained in ¶ 11.

14    12.    McNeil admits that McNeil and its spokespeople have used the

15    tagline "made from sugar so it tastes like sugar" in the marketing of Splenda.  McNeil

16    admits that one of the television ads for Splenda features the question "What are little girls

17    made of?" and answers that question "Splenda and spice and everything nice."  Except as

18    expressly admitted above, McNeil denies the allegations contained in ¶ 12.

19    13.    McNeil admits that the sweetening ingredient in Splenda – sucralose

20    – is made by a multi-step process that starts with cane sugar.  McNeil admits that Splenda

21    contains not only sucralose but the bulking ingredients dextrose and maltodextrin.

22    McNeil lacks knowledge or information sufficient to admit or deny the remaining

23    allegations of ¶ 13, and, on that basis, denies each and every allegation contained therein

24    except as expressly admitted above.

25    14.    McNeil admits that it has made the quoted representations in its

26    marketing materials for Splenda.  Except as expressly admitted above, McNeil denies the

27    allegations and characterizations contained in ¶ 14.

28

- 3 -                    **ANSWER TO COMPLAINT**

1    15.    McNeil admits that the FDA Final Rule (published in the Federal
2    Register on April 3, 1998) states that, in studies of human male volunteers, between 11
3    and 27 percent of sucralose ingested is absorbed, and that between 20 and 30 percent of
4    the absorbed sucralose is metabolized by humans.  McNeil denies that this finding is at
5    odds with any representation that McNeil has made, in its marketing materials or
6    elsewhere.  McNeil lacks knowledge or information sufficient to admit or deny the
7    allegation regarding metabolization of dextrose and maltodextrin, and, on that basis,
8    denies each and every allegation made in connection therewith.  Except as expressly
9    admitted above, McNeil denies the allegations contained in ¶ 15.

10    16.    McNeil admits that it has stated publicly that within one year of its
11    introduction, Splenda captured nearly 14 percent of the U.S. market (measured in dollars)
12    for no-calorie sweeteners.  McNeil admits that by January 2004, Splenda's dollar share of
13    the U.S. market had risen to 45.2 percent  –  more than that of Equal and Sweet'N Low
14    combined.  Except as expressly admitted above, McNeil denies the allegations contained
15    in ¶ 16.

16
17    17.    McNeil admits that it introduced the 9.7 ounce Granular Baker's Bag,
"the equivalent in sweetness of a five-pound bag of conventional sugar," in September
18
19    2003.  Except as expressly admitted above, McNeil denies the allegations contained in ¶
17.
20

21    18.    McNeil admits that it announced plans to introduce Splenda Sugar
22    Blend for Baking in June 2004, and that the president of McNeil Nutritionals, LLC
23    referred to that product as "a true sugar baking replacement option."  Except as expressly
24    admitted above, McNeil denies the allegations and characterizations contained in ¶ 18.

25    19.    McNeil admits that it made the quoted statement on its website.
26    Except as expressly admitted above, McNeil denies the allegations contained in ¶ 19.

27·    20.    McNeil lacks knowledge or information sufficient to admit or deny

28

1    the allegations of ¶ 20, and, on that basis, denies each and every allegation contained

2    therein.

3          21.    McNeil admits that sucralose is the sweetening ingredient in Splenda.

4    McNeil denies that saccharin and aspartame were developed over the past two decades.

5    McNeil lacks knowledge or information sufficient to admit or deny the remaining

6    allegations of ¶ 21, and, on that basis, denies each and every allegation contained therein

7    except as expressly admitted above.

8          22.    McNeil lacks knowledge or information sufficient to admit or deny

9    the allegations of ¶ 22, and, on that basis, denies each and every allegation contained

10   therein.

11

12         23.    McNeil admits that it has made the quoted statements.  Except as

13   expressly admitted above, McNeil denies the allegations contained in ¶ 23.

14         24.    McNeil lacks knowledge or information sufficient to admit or deny

15   the allegations of ¶ 24, and, on that basis, denies each and every allegation contained

16   therein.

17         25.    McNeil lacks knowledge or information sufficient to admit or deny

18   the allegations of ¶ 25, and, on that basis, denies each and every allegation contained

19   therein.

20         26.    McNeil denies each and every allegation in ¶ 26.

21

22         27.    McNeil admits that it advertises in order to encourage consumers to

23   purchase its product.  Except as expressly admitted above, McNeil denies the allegations

24   contained in ¶ 27.

25         28.    McNeil admits that the "made from sugar so it tastes like sugar"

26   tagline has been a part of McNeil's advertising for Splenda, and that McNeil has touted

27   the fact that Splenda has no calories.  Except as expressly admitted above, McNeil denies

28   the allegations and characterizations contained in ¶ 28.

                              - 5 -              **ANSWER TO COMPLAINT**

1    29.    McNeil admits that the quoted statements appear on the website for

2   Jamba Juice, and that Jamba Juice uses Splenda in certain of its drinks.  Except as

3   expressly admitted above, McNeil denies the allegations contained in ¶ 29.

4    30.    McNeil admits the allegations contained in ¶ 30, except that McNeil

5   denies that Johnson & Johnson formed "McNeil," as that term is defined in the Complaint,

6   for the purpose alleged.

7    31.    McNeil admits that it filed a food additive petition proposing that the

8   food additive regulations be amended to provide for the safe use of sucralose as a

9   nonnutritive sweetener in food where standards of identity do not preclude such

10   use.  McNeil admits that, according to the Final Rule, in support of this petition McNeil

11   submitted to the FDA data and information from toxicity studies in several animal species,

12   other specific tests in animals, information from clinical tests in human volunteers, and

13   supplemental materials.  Except as expressly admitted above, McNeil denies the

14   allegations contained in ¶ 31.

15

16    32.    McNeil denies each and every allegation in ¶ 32.

17    **FIRST CLAIM FOR RELIEF**

18    33.    With respect to ¶ 33, McNeil hereby incorporates its responses as set

19   forth in Paragraphs 1 through 32 above as if fully set forth herein.

20

21    34.    McNeil denies each and every allegation in ¶ 34.

22    35.    McNeil denies each and every allegation in ¶ 35.

23    36.    McNeil denies each and every allegation in ¶ 36.

24    37.    McNeil denies each and every allegation in ¶ 37.

25

26    38.    McNeil denies each and every allegation in ¶ 38.

27    39.    McNeil denies each and every allegation in ¶ 39.

28

-6-                          ANSWER TO COMPLAINT

1    40.    McNeil denies each and every allegation in ¶ 40.

2    41.    McNeil denies each and every allegation in ¶ 41.

3
### SECOND CLAIM FOR RELIEF
4

5    42.    With respect to ¶ 42, McNeil hereby incorporates its responses as set

6    forth in Paragraphs 1 through 41 above as if fully set forth herein.

7    43.    McNeil denies each and every allegation in ¶ 43.

8
9    44.    McNeil denies each and every allegation in ¶ 44.

10    45.    McNeil denies each and every allegation in ¶ 45.

11    46.    McNeil denies each and every allegation in ¶ 46.

12

13    McNeil asserts the following as affirmative defenses:

14

15    **FIRST AFFIRMATIVE DEFENSE**

16    **(Failure to State a Claim)**

17    47.    The Complaint fails, in whole or in part, to state a claim upon which

18    relief can be granted.

19    **SECOND AFFIRMATIVE DEFENSE**

20    **(Laches)**

21    48.    The claims in the Complaint are barred, in whole or in part, by the

22    doctrine of laches.

23    **THIRD AFFIRMATIVE DEFENSE**

24    **(Waiver)**
25

26    49.    The claims in the Complaint are barred, in whole or in part, by the

27    doctrine of waiver.

28

- 7 -                                    **ANSWER TO COMPLAINT**

1

## FOURTH AFFIRMATIVE DEFENSE

2

### (Estoppel)

3

4          50.    The claims in the Complaint are barred, in whole or in part, by the

doctrine of estoppel.

5

6

## FIFTH AFFIRMATIVE DEFENSE

7

### (Unclean Hands)

8

9          51.    The claims in the Complaint are barred, in whole or in part, by the

doctrine of unclean hands.

10

11

## SIXTH AFFIRMATIVE DEFENSE

12

### (Statute of Limitations)

13          52.    The claims in the Complaint are barred, in whole or in part, by the

14    applicable statutes of limitation.

15

## SEVENTH AFFIRMATIVE DEFENSE

16

### (First Amendment)

17          53.    The claims in the Complaint are barred, in whole or in part, by the

18    First Amendment of the United States Constitution.

19

## EIGHTH AFFIRMATIVE DEFENSE

20

### (Lack of Standing)

21          54.    Plaintiff lacks standing to assert the claims of the Complaint.

22

## NINTH AFFIRMATIVE DEFENSE

23

### (Not Real Party in Interest)

24

25          55.    Plaintiff is not the real party in interest in this litigation.

26

## TENTH AFFIRMATIVE DEFENSE

27

### (Nonjoinder of Parties)

28          56.    The claims of the Complaint are barred, in whole or in part, by reason

- 8 -                                  ANSWER TO COMPLAINT

1    of Plaintiff's failure to join one or more indispensable parties.

2                    **ELEVENTH AFFIRMATIVE DEFENSE**

3                          **(Not Entitled to Relief)**

4            57.    The claims of the Complaint are barred, in whole or in part, because

5    Plaintiff seeks relief to which it is not entitled.

6                    **TWELFTH AFFIRMATIVE DEFENSE**

7                            **(No Damages)**

8            58.    The claims of the Complaint are barred, in whole or in part, because

9    Plaintiff has not suffered any damages.

10

11                  **THIRTEENTH AFFIRMATIVE DEFENSE**

12                          **(No Causation)**

13           59.    The claims of the Complaint are barred, in whole or in part, because

14   any alleged injury to Plaintiff was not caused by McNeil's conduct.

15                  **FOURTEENTH AFFIRMATIVE DEFENSE**

16                      **(Failure to Mitigate Damages)**

17           60.    Plaintiff's demands must be reduced or offset to the extent Plaintiff

18   has failed to mitigate or avoid its purported harm or damages.

19

20
            WHEREFORE, McNeil respectfully prays for judgment in its favor as
21
     follows:
22

23           a.    That Plaintiff take nothing by its Complaint, and that the same be

24                 dismissed in its entirety with prejudice;

25           b.    That McNeil be awarded its costs and attorneys' fees; and

26

27

28

                                    - 9 -              **ANSWER TO COMPLAINT**

1       c.   That the Court order such other and further relief as it deems just and

2         proper.

3

4       Dated: February ___2___, 2005

5                                 PATTERSON, BELKNAP, WEBB & TYLER LLP

6                                 STEVEN A. ZALESIN
                             JEFFREY D. ROTENBERG
                             JENNIFER L. HIGGINS

7

8                                 O'MELVENY & MYERS LLP
                             RICHARD B. GOETZ

9                                 DIANA M. TORRES
                             CARLOS M. LAZATIN

10

11                              By_____

12                                  Carlos M. Lazatin
                             Attorneys for Defendants McNeil-PPC, Inc. and McNeil Nutritionals LLC

13

14

15    LA2:749777 1

16

17

18

19

20

21

22

23

24

25

26

27

28

                           - 10 -              **ANSWER TO COMPLAINT**

**PROOF OF SERVICE**

1

2          I, Deresa Gade, declare:

3          I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, CA 90071-2899. On February 2, 2005, I served the within documents:

4

5          **DEFENDANTS MCNEIL-PPC, INC. AND MCNEIL NUTRITIONALS, LLC'S ANSWER TO PLAINTIFFS COMPLAINT; DEMAND FOR JURY TRIAL**

6

7    ☐    **BY FACSIMILE:** I communicated such document via facsimile to the addressee as indicated on the attached service list.

8

9    ☒    **BY MAIL:** By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

10

11

12

13

14    ☐    **BY PERSONAL SERVICE:** By delivering a copy thereof to the office of the following, and either handing the copy to the person named below or leaving it with the receptionist or other person having charge of the office thereof:

15

16

17          Adam R. Fox, Esq.
            Mark Hurvitz, Esq.
            Squire, Sanders & Dempsey LLP
            801 South Figueroa Street, 14th Floor
            Los Angeles, CA 90017-5554
            (213) 624-2500
            (213) 623-4581 FAX

18

19

20

21          I declare under penalty of perjury under the laws of the United States that the above is true and correct.

22

23          Executed on February 2, 2005, at Los Angeles, California.

24                         _Deresa Gade_
                          _____
25                         Deresa Gade

26

27

28

NAME, ADDRESS & TELEPHONE NUMBER OF ATTORNEY FOR, OR, PLAINTIFF OR
DEFENDANT IF PLAINTIFF OR DEFENDANT IS PRO PER
CARLOS M. LAZATIN (SBN 229650)
O'MELVENY & MYERS LLP
400 SOUTH HOPE STREET
LOS ANGELES, CA 90071
213-430-6000

ATTORNEYS FOR: DEFENDANTS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THE SUGAR ASSOCIATION | CASE NUMBER | |
| | | 04 CV 10077 DSF (RZX) |
| Plaintiff(s) | | |
| v. | | |
| MCNEIL-PPC, INC. | **CERTIFICATION AND NOTICE OF INTERESTED PARTIES** (Local Rule 7.1-1) | |
| Defendant(s) | | |

TO: THE COURT AND ALL PARTIES APPEARING OF RECORD:

The undersigned, counsel of record for McNeil-PPC, Inc. and McNeil Nutritionals, LLC
(or party appearing in pro per), certifies that the following listed party (or parties) has (have) a direct, pecuniary
interest in the outcome of this case. These representations are made to enable the Court to evaluate possible
disqualification or recusal. (Use additional sheet if necessary.)

|                    PARTY                    |                    CONNECTION                    |
|---------------------------------------------|--------------------------------------------------|
| (List the names of all such parties and identify their connection and interest.) | |
| McNeil-PPC, Inc. | Defendant |
| McNeil Nutritionals, LLC | Defendant |

Date  ∂ Feb. 2005

Sign

Carlos M. Lazatin
Attorney of record for or party appearing in pro per

NOTICE OF INTERESTED PARTIES

CV-30 (12/03)

American LegalNet, Inc.
www.USCourtForms.com

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,                          )
                                                    )
      Plaintiff,                              )
                                                    )
     v.                                        )   Case No. 1:05-CV-00069-GMS
                                                    )
THE SUGAR ASSOCIATION, *et al.*,                    )
                                                    )
      Defendants.                             )

## DECLARATION OF ANDREW C. BRISCOE III

I, Andrew C. Briscoe III, declare as follows:

1.    I am over eighteen (18) years of age and am authorized by the Sugar Association, Inc. ("Sugar Association"), a discrete non-stock, 501(c)(6) non-profit corporate entity organized under the General Corporation Law of Delaware, in my capacity as President and Chief Executive Officer of the Sugar Association, to make this declaration on behalf of the Sugar Association. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.    The Sugar Association's principal place of business is in Washington, D.C.

3.    The Sugar Association has seventeen (17) dues-paying members, all of whom are sugar cane and sugar beet growers and processors of sugar in the United States: The Amalgamated Sugar Company LLC, American Crystal Sugar Company, American Sugar Cane League, American Sugar Refining, Inc., Atlantic Sugar Association, Inc., Hawaiian Sugar & Transportation Cooperative, Imperial Sugar Company, Michigan Sugar Company, Minn-Dak Farmers Cooperative, Okeelanta Corporation, Osceola Farms

Company, Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Cooperative, Sugar Cane Growers Cooperative of Florida, United States Sugar Corporation, Western Sugar Cooperative, and Wyoming Sugar Company, LLC ("Member Companies").

4.      The Sugar Association has a Board of Directors comprised of twenty-two (22) directors. Each of the Member Companies is entitled to designate a single member of the Board of Directors. Other than the seats reserved for the Member Companies, there are four (4) advisory director positions reserved for four (4) sugarbeet growers, as further elaborated below, and one (1) reserved for me in my capacity as President and Chief Executive Officer of the Sugar Association.

5.      I have reviewed a copy of Plaintiff's Complaint and I am familiar with its contents.

6.      I am aware that, in addition to the Sugar Association, each of the Member Companies and the American Sugarbeet Growers Association have been named as defendants in this lawsuit.

7.      The American Sugarbeet Growers Association is not a member of the Sugar Association. Each year the American Sugarbeet Growers Association facilitates the selection of four (4) sugarbeet growers who represent different regions of the United States to sit on the Sugar Association's Board of Directors for the purposes of communication and education of the American Sugarbeet Growers Association's Board of Directors. The votes of these four (4) sugarbeet growers on the Sugar Association's Board of Directors are only advisory. Moreover, the growers' votes represent their own

views and positions, and not necessarily those of the American Sugarbeet Growers Association.

8.    The Sugar Association acted in its corporate capacity in issuing the following statement, currently appearing on the home page of the Sugar Association's website, www.sugar.org, regarding the Dietary Guidelines for Americans (the "Guidelines") released by the United States Departments of Agriculture and Health and Human Services in 2005:  "We stand firm in our assertion that every major scientific review . . . has concluded that there is not a direct link between added sugars intake and any lifestyle disease, including obesity . . . .  For the Guidelines to infer any type of limit on added sugars is not science-based."  (Compl. ¶ 41).  The Sugar Association did not obtain the approval of either the Board of Directors or the Member Companies in issuing this statement.

9.    The Sugar Association acted in its corporate capacity in issuing the following statement by the Sugar Association's Vice-President of Scientific Affairs regarding the Guidelines:  "Embedded within the report is the recommendation to limit added sugars.  That's not supported by the [preponderance] of science."  (Compl. ¶ 42) (insert supplied).  The Sugar Association did not obtain the approval of either the Board of Directors or the Member Companies in issuing this statement.

10.    The Sugar Association acted in its corporate capacity in issuing the following statements in late 2004:  "that it would commence a significant advertising campaign 'to promote the benefits of real sugar' following 'nine years of a sabbatical from advertising'"; and "that, from 1986 to 1995, the industry invested $5 million per year in a generic sugar campaign and '[w]e were able to increase sugar consumption by

19 percent over that period of time . . . . [and] . . . [o]ur objective [here] is to do the same.'" (Compl. ¶ 45). The Sugar Association did not obtain the approval of either the Board of Directors or the Member Companies in issuing these statements.

11.    Plaintiff's Complaint alleges that I stated in late 2004 that "each Member company of the Association committed $3.5 million per year to this multi-year 'public-education' project." (Compl. ¶ 45). To the contrary, the Sugar Association, acting in its corporate capacity, explained that only five (5) of the Member Companies chose to participate and commit a total of $3.5 million per year for a total of three (3) years to this voluntary sugar-promotion program. The Sugar Association did not obtain the approval of either the Board of Directors or the Member Companies in issuing the foregoing clarified statement.

12.    The Sugar Association acted in its corporate capacity in planning, funding, and executing the "Truth About Splenda" website, www.truthaboutsplenda.com. (Compl. ¶¶ 47-53). The Sugar Association did not obtain the specific approval of either the Board of Directors or the Member Companies for any statement made on this website.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 24, 2005.

_____
Andrew C. Briscoe, III

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,        )
                                        )
        Plaintiff,              )
                                          )
     v.                         )   Case No. 1:05-CV-00069-GMS
                                          )
THE SUGAR ASSOCIATION, *et al.*,    )
                                          )
        Defendants.           )

## DECLARATION OF LISA M. MALOY

I, Lisa M. Maloy, declare as follows:

1.     I am over eighteen (18) years of age and am authorized by American Crystal Sugar Company ("American Crystal"), a Minnesota corporation, in my capacity as Assistant Secretary of American Crystal, to make this declaration on behalf of American Crystal. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.     American Crystal's principal place of business is in Minnesota.

3.     American Crystal has no offices in Delaware.

4.     American Crystal is not licensed or registered to do business in Delaware.

5.     American Crystal does not maintain a registered agent for service of process in Delaware.

6.     American Crystal does not now conduct, nor has it ever conducted, any business in Delaware.

7.     American Crystal does not sell any products to Delaware customers. American Crystal is a member in a Minnesota cooperative corporation that sells products,

including American Crystal sugar, nationwide, including in Delaware. At no time during the past five years has American Crystal been the exclusive member of this Minnesota cooperative corporation. During that period, other members have included Minn-Dak Farmers Cooperative, United States Sugar Corporation, and Southern Minnesota Beet Sugar Cooperative.

8. American Crystal does not offer any services in Delaware.

9. American Crystal does not own or lease any real estate or personal property in Delaware.

10. American Crystal does not maintain any bank accounts in Delaware.

11. American Crystal does not pay any Delaware taxes.

12. American Crystal maintains no telephone listing in Delaware.

13. American Crystal has no employees or agents in Delaware.

14. American Crystal has not commenced any lawsuits in Delaware.

15. American Crystal has not been named as a defendant in any other lawsuit in Delaware.

16. American Crystal does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17. American Crystal maintains an informational internet website. This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18. American Crystal has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has American Crystal waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 23 , 2005.

Lisa M. Maloy

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,                )
                                         )
            Plaintiff,                   )
                                         )
        v.                               )   Case No. 1:05-CV-00069-GMS
                                         )
THE SUGAR ASSOCIATION, *et al.*,         )
                                         )
            Defendants.                  )

## DECLARATION OF JAMES H. SIMON

I, James H. Simon, declare as follows:

1.      I am over eighteen (18) years of age and am authorized by the American Sugar Cane League ("ASCL"), a Louisiana corporation, in my capacity as General Manager of ASCL, to make this declaration on behalf of ASCL. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.      ASCL's principal place of business is in Louisiana.

3.      ASCL has no offices in Delaware.

4.      ASCL is not licensed or registered to do business in Delaware.

5.      ASCL does not maintain a registered agent for service of process in Delaware.

6.      ASCL does not now conduct, nor has it ever conducted, any business in Delaware.

7.      ASCL does not sell or ship any products to Delaware customers.

8.      ASCL does not offer any services in Delaware.

9.    ASCL does not own or lease any real estate or personal property in Delaware.

10.    ASCL does not maintain any bank accounts in Delaware.

11.    ASCL does not pay any Delaware taxes.

12.    ASCL maintains no telephone listing in Delaware.

13.    ASCL has no employees or agents in Delaware.

14.    ASCL has never commenced any lawsuits in Delaware.

15.    ASCL has never been named as a defendant in any other lawsuit in Delaware.

16.    ASCL does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.    ASCL maintains an informational internet website.  This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18.    ASCL has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has ASCL waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 23, 2005.

James H. Simon

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,                )
                                         )
                 Plaintiff,              )
                                         )
        v.                               )  Case No. 1:05-CV-00069-GMS
                                         )
THE SUGAR ASSOCIATION, *et al.*,         )
                                         )
                 Defendants.             )

## DECLARATION OF OSCAR R. HERNANDEZ

I, Oscar R. Hernandez, declare as follows:

1.      I am over eighteen (18) years of age and am authorized by Atlantic Sugar
Association, Inc. ("Atlantic Sugar"), a Florida corporation, in my capacity as Treasurer
for Atlantic Sugar, to make this declaration on behalf of Atlantic Sugar.  I have personal
knowledge of the facts stated herein and, if called as a witness, I could and would
competently testify to the truth of those facts.

2.      Atlantic Sugar's principal place of business is in Florida.

3.      Atlantic Sugar has no offices in Delaware.

4.      Atlantic Sugar is not licensed or registered to do business in Delaware.

5.      Atlantic Sugar does not maintain a registered agent for service of process
in Delaware.

6.      Atlantic Sugar does not now conduct, nor has it ever conducted, any
business in Delaware.

7.      Atlantic Sugar does not sell or ship any products to Delaware customers.

8.      Atlantic Sugar does not offer any services in Delaware.

9.     Atlantic Sugar does not own or lease any real estate or personal property in Delaware.

10.     Atlantic Sugar does not maintain any bank accounts in Delaware.

11.     Atlantic Sugar does not pay any Delaware taxes.

12.     Atlantic Sugar maintains no telephone listing in Delaware.

13.     Atlantic Sugar has no employees or agents in Delaware.

14.     Atlantic Sugar has not commenced any lawsuits in Delaware since at least 1986.

15.     Atlantic Sugar has not been named as a defendant in any other lawsuit in Delaware since at least 1986.

16.     Atlantic Sugar does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.     Atlantic Sugar does not maintain an internet website.

18.     Atlantic Sugar has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has Atlantic Sugar waived any defense to jurisdiction since at least 1986.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 24, 2005.

Oscar R. Hernandez

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,       )
                                     )

          Plaintiff,         )
                                     )

        v.                   )  Case No. 1:05-CV-00069-GMS
                                     )

THE SUGAR ASSOCIATION, *et al.*,   )
                                     )

          Defendants.       )

## DECLARATION OF E. ALAN KENNETT

I, E. Alan Kennett, declare as follows:

1.     I am over eighteen (18) years of age and am authorized by Hawaiian Sugar & Transportation Cooperative ("HS&TC"), a Hawaiian corporation, in my capacity as Vice Chairman of HS&TC, to make this declaration on behalf of HS&TC. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.     HS&TC's principal place of business is in Hawaii.

3.     HS&TC has no offices in Delaware.

4.     HS&TC is not licensed or registered to do business in Delaware.

5.     HS&TC does not maintain a registered agent for service of process in Delaware.

6.     HS&TC does not now conduct, nor has it ever conducted, any business in Delaware.

7.     HS&TC does not sell or ship any products to Delaware customers.

8.     HS&TC does not offer any services in Delaware.

9.    HS&TC does not own or lease any real estate or personal property in Delaware.

10.    HS&TC does not maintain any bank accounts in Delaware.

11.    HS&TC does not pay any Delaware taxes.

12.    HS&TC maintains no telephone listing in Delaware.

13.    HS&TC has no employees or agents in Delaware.

14.    HS&TC has never commenced any lawsuits in Delaware.

15.    HS&TC has never been named as a defendant in any other lawsuit in Delaware.

16.    HS&TC does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.    HS&TC does not maintain an internet website.

18.    HS&TC has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has HS&TC waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 23 , 2005.

E. Alan Kennett

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,               )
                                        )
      Plaintiff,                        )
                                        )
    v.                                  )    Case No. 1:05-CV-00069-GMS
                                        )
THE SUGAR ASSOCIATION, *et al.*,        )
                                        )
      Defendants.                       )

## DECLARATION OF WILLIAM SCHWER

I, William Schwer, declare as follows:

1.    I am over eighteen (18) years of age and am authorized by Imperial Sugar Company ("Imperial"), a Texas corporation, in my capacity as General Counsel of Imperial, to make this declaration on behalf of Imperial. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.    Imperial's principal place of business is in Texas.

3.    Imperial has no offices in Delaware.

4.    Imperial is not licensed or registered to do business in Delaware.

5.    Imperial does not maintain a registered agent for service of process in Delaware.

6.    Imperial derives less than one-tenth of one percent of its total annual sales revenue from sales of sugar and other products to customers in Delaware.

7.    Imperial's sales to customers in Delaware include sales made over Imperial's internet website.

8.    Imperial does not offer any services in Delaware.

9.    Imperial does not own or lease any real estate or personal property in Delaware.

10.    Imperial does not maintain any bank accounts in Delaware.

11    Imperial does not pay any Delaware taxes.

12.    Imperial maintains no telephone listing in Delaware.

13.    Imperial has no employees or agents in Delaware.

14.    In 2001, Imperial filed for Chapter 11 protection in Delaware. The matter was resolved in that same year. This was the only time that Imperial has ever filed a lawsuit in federal or state court in Delaware.

15.    Imperial has not been named as a defendant in any other lawsuit in Delaware.

16.    Imperial does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.    Since its Chapter 11 reorganization, Imperial has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has Imperial waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 24, 2005.

William Schwer

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,      )
                               )
         Plaintiff,         )
                               )
      v.               )   Case No. 1:05-CV-00069-GMS
                               )
THE SUGAR ASSOCIATION, *et al.*,   )
                               )
        Defendants.     )

## DECLARATION OF MARK S. FLEGENHEIMER

I, Mark S. Flegenheimer, declare as follows:

1.     I am over eighteen (18) years of age and am authorized by Michigan Sugar Company ("Michigan Sugar"), a Michigan cooperative corporation, in my capacity as President and Chief Executive Officer of Michigan Sugar, to make this declaration on behalf of Michigan Sugar. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.     Michigan Sugar's principal place of business is in Michigan.

3.     Michigan Sugar has no offices in Delaware.

4.     Michigan Sugar is not licensed or registered to do business in Delaware.

5.     Michigan Sugar does not maintain a registered agent for service of process in Delaware.

6.     Michigan Sugar does not now conduct, nor has it ever conducted, any business in Delaware.

7.     Michigan Sugar does not sell or ship any products to Delaware customers.

8.     Michigan Sugar does not offer any services in Delaware.

9.    Michigan Sugar does not own or lease any real estate or personal property in Delaware.

10.    Michigan Sugar does not maintain any bank accounts in Delaware.

11.    Michigan Sugar does not pay any Delaware taxes.

12.    Michigan Sugar maintains no telephone listing in Delaware.

13.    Michigan Sugar has no employees or agents in Delaware.

14.    Michigan Sugar has not commenced any lawsuits in Delaware.

15.    Michigan Sugar has not been named as a defendant in any other lawsuit in Delaware.

16.    Michigan Sugar does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.    Michigan Sugar maintains an informational internet website.  This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18.    Michigan Sugar has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has Michigan Sugar waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 23, 2005.

_____
Mark S. Flegenheimer

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,    )
                            )
            Plaintiff,       )
                            )
    v.                       )   Case No. 1:05-CV-00069-GMS
                            )
THE SUGAR ASSOCIATION, *et al.*,   )
                            )
            Defendants.      )

## DECLARATION OF DAVID H. ROCHE

I, David H. Roche, declare as follows:

1.    I am over eighteen (18) years of age and am authorized by Minn-Dak Farmers Cooperative ("Minn-Dak"), a North Dakota corporation, in my capacity as President and Chief Executive Officer of Minn-Dak, to make this declaration on behalf of Minn-Dak. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.    Minn-Dak's principal place of business is in North Dakota.

3.    Minn-Dak has no offices in Delaware.

4.    Minn-Dak is not licensed or registered to do business in Delaware.

5.    Minn-Dak does not maintain a registered agent for service of process in Delaware.

6.    Minn-Dak does not now conduct, nor has it ever conducted, any business in Delaware.

7.    Minn-Dak does not sell any products to Delaware customers. Minn-Dak is a member in a Minnesota cooperative corporation that sells products, including Minn-

Dak sugar, nationwide, including in Delaware. At no time during the past five years has Minn-Dak been the exclusive member of this Minnesota cooperative corporation. During that period, other members have included American Crystal Sugar Company, United States Sugar Corporation, and Southern Minnesota Beet Sugar Cooperative.

8. Minn-Dak does not offer any services in Delaware.

9. Minn-Dak does not own or lease any real estate or personal property in Delaware.

10. Minn-Dak does not maintain any bank accounts in Delaware.

11. Minn-Dak does not pay any Delaware taxes.

12. Minn-Dak maintains no telephone listing in Delaware.

13. Minn-Dak has no employees or agents in Delaware.

14. Minn-Dak has not commenced any lawsuits in Delaware.

15. Minn-Dak has not been named as a defendant in any other lawsuit in Delaware.

16. Minn-Dak does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17. Minn-Dak maintains an informational internet website. This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18. Minn-Dak has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has Minn-Dak waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct. Executed on March 24, 2005.

David H. Roche

# EXHIBIT K

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,        )
          )
        Plaintiff,        )
          )
        v.          )  **Case No. 1:05-CV-00069-GMS**
          )
THE SUGAR ASSOCIATION, *et al.*,      )
          )
        Defendants.       )

## DECLARATION OF WILLIAM F. TARR

I, William F. Tarr, declare as follows:

1.    I am over eighteen (18) years of age and am authorized by Osceola Farms Company ("Osceola Farms"), a Florida corporation, in my capacity as Vice President and Legal Counsel for Osceola Farms, to make this declaration on behalf of Osceola Farms. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.    Osceola Farms' principal place of business is in Florida.

3.    Osceola Farms has no offices in Delaware.

4.    Osceola Farms is not licensed or registered to do business in Delaware.

5.    Osceola Farms does not maintain a registered agent for service of process in Delaware.

6.    Osceola Farms does not now conduct, nor has it ever conducted, any business in Delaware.

7.    Osceola Farms does not sell or ship any products to Delaware customers.

8.    Osceola Farms does not offer any services in Delaware.

9. Osceola Farms does not own or lease any real estate or personal property in Delaware.

10. Osceola Farms does not maintain any bank accounts in Delaware.

11. Osceola Farms does not pay any Delaware taxes.

12. Osceola Farms maintains no telephone listing in Delaware.

13. Osceola Farms has no employees or agents in Delaware.

14. Osceola Farms has not commenced any lawsuits in Delaware since at least 1986.

15. Osceola Farms has not been named as a defendant in any other lawsuit in Delaware since at least 1986.

16. Osceola Farms does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17. Osceola Farms does not maintain an internet website.

18. Osceola Farms has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has Osceola Farms waived any defense to jurisdiction since at least 1986.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 24, 2005.

William F. Tarr

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,                   )
                                            )
              Plaintiff,                     )
                                            )
       v.                                    )   Case No. 1:05-CV-00069-GMS
                                            )
THE SUGAR ASSOCIATION, et al.,              )
                                            )
              Defendants.                    )

## DECLARATION OF STEVE BEARDEN

I, Steve Bearden, declare as follows:

1.      I am over eighteen (18) years of age and am authorized by Rio Grande

Valley Sugar Growers, Inc. ("Rio Grande"), a Texas corporation, in my capacity as

President and Chief Executive Officer of Rio Grande, to make this declaration on behalf

of Rio Grande. I have personal knowledge of the facts stated herein and, if called as a

witness, I could and would competently testify to the truth of those facts.

2.      Rio Grande's principal place of business is in Texas.

3.      Rio Grande has no offices in Delaware.

4.      Rio Grande is not licensed or registered to do business in Delaware.

5.      Rio Grande does not maintain a registered agent for service of process in

Delaware.

6.      Rio Grande does not now conduct, nor has it ever conducted, any business

in Delaware.

7.      Rio Grande does not sell or ship any products to Delaware customers.

8.      Rio Grande does not offer any services in Delaware.

9.    Rio Grande does not own or lease any real estate or personal property in Delaware.

10.    Rio Grande does not maintain any bank accounts in Delaware.

11.    Rio Grande does not pay any Delaware taxes.

12.    Rio Grande maintains no telephone listing in Delaware.

13.    Rio Grande has no employees or agents in Delaware.

14.    Rio Grande has not commenced any lawsuits in Delaware.

15.    Rio Grande has not been named as a defendant in any other lawsuit in Delaware.

16.    Rio Grande does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.    Rio Grande maintains an informational internet website. This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18.    Rio Grande has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has Rio Grande waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 23, 2005.

Steve Bearden

# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

McNEIL NUTRITIONALS, LLC,                    )
                                             )
      Plaintiff,                           )
                                             )
      v.                                   )    Case No. 1:05-CV-00069-GMS
                                             )
THE SUGAR ASSOCIATION, *et al.*,             )
                                             )
      Defendants.                          )

## DECLARATION OF JOHN A. RICHMOND

I, John A. Richmond, declare as follows:

1.     I am over eighteen (18) years of age and am authorized by Southern Minnesota Beet Sugar Cooperative ("SMBSC"), a Minnesota corporation, in my capacity as President and Chief Executive Officer of SMBSC, to make this declaration on behalf of SMBSC.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.     SMBSC's principal place of business is in Minnesota.

3.     SMBSC has no offices in Delaware.

4.     SMBSC is not licensed or registered to do business in Delaware.

5.     SMBSC does not maintain a registered agent for service of process in Delaware.

6.     SMBSC does not now conduct, nor has it ever conducted, any business in Delaware.

7.     SMBSC does not sell or ship any products to Delaware customers.  Prior to 2005, it did have an interest in a Minnesota cooperative corporation that sold products,

including SMBSC sugar, nationwide, including in Delaware. At no time during the past five years was SMBSC the exclusive member of this Minnesota cooperative corporation. During that period, other members included American Crystal Sugar Company, United States Sugar Corporation, and Minn-Dak Farmers Cooperative.

8. SMBSC does not offer any services in Delaware.

9. SMBSC does not own or lease any real estate or personal property in Delaware.

10. SMBSC does not maintain any bank accounts in Delaware.

11. SMBSC does not pay any Delaware taxes.

12. SMBSC maintains no telephone listing in Delaware.

13. SMBSC has no employees or agents in Delaware.

14. SMBSC has not commenced any lawsuits in Delaware.

15. SMBSC has not been named as a defendant in any other lawsuit in Delaware.

16. SMBSC does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17. SMBSC maintains an informational internet website. This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18. SMBSC has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has SMBSC waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct. Executed on March 23, 2005.

_____

John A. Richmond

# EXHIBIT N

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,        )
                                      )
       **Plaintiff,**              )
                                      )
      v.                       )  **Case No. 1:05-CV-00069-GMS**
                                      )
THE SUGAR ASSOCIATION, *et al.,*   )
                                      )
      **Defendants.**           )

## DECLARATION OF JEFFREY J. WARD

I, Jeffrey J. Ward, declare as follows:

1.    I am over eighteen (18) years of age and am authorized by Sugar Cane Growers Cooperative of Florida ("SCGC"), a Florida corporation, in my capacity as Vice President of Legal Affairs of SCGC, to make this declaration on behalf of SCGC. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.    SCGC's principal place of business is in Florida.

3.    SCGC has no offices in Delaware.

4.    SCGC is not licensed or registered to do business in Delaware.

5.    SCGC does not maintain a registered agent for service of process in Delaware.

6.    SCGC does not now conduct, nor has it ever conducted, any business in Delaware.

7.    SCGC does not sell or ship any products to Delaware customers.

8.    SCGC does not offer any services in Delaware.

9.    SCGC does not own or lease any real estate or personal property in Delaware.

10.    SCGC does not maintain any bank accounts in Delaware.

11.    SCGC does not pay any Delaware taxes.

12.    SCGC maintains no telephone listing in Delaware.

13.    SCGC has no employees or agents in Delaware.

14.    SCGC has not commenced any lawsuits in Delaware.

15.    SCGC has not been named as a defendant in any other lawsuit in Delaware.

16.    SCGC does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.    SCGC maintains an informational internet website. This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18.    SCGC has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has SCGC waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 23d, 2005.

Jeffrey J. Ward

# EXHIBIT O

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,    )
    )
    Plaintiff,    )
    )
    v.    )  **Case No. 1:05-CV-00069-GMS**
    )
THE SUGAR ASSOCIATION, *et al.*,    )
    )
    Defendants.    )

### DECLARATION OF INDER K. MATHUR

I, Inder K. Mathur, declare as follows:

1.    I am over eighteen (18) years of age and am authorized by Western Sugar Cooperative ("Western Sugar"), a Colorado corporation, in my capacity as President and Chief Executive Officer of Western Sugar, to make this declaration on behalf of Western Sugar. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.    Western Sugar's principal place of business is in Colorado.

3.    Western Sugar has no offices in Delaware.

4.    Western Sugar is not licensed or registered to do business in Delaware.

5.    Western Sugar does not maintain a registered agent for service of process in Delaware.

6.    Western Sugar does not now conduct, nor has it ever conducted, any business in Delaware.

7.    Western Sugar does not sell or ship any products to Delaware customers.

8.    Western Sugar does not offer any services in Delaware.

9.     Western Sugar does not own or lease any real estate or personal property in Delaware.

10.    Western Sugar does not maintain any bank accounts in Delaware.

11.    Western Sugar does not pay any Delaware taxes.

12.    Western Sugar maintains no telephone listing in Delaware.

13.    Western Sugar has no employees or agents in Delaware.

14.    Western Sugar has not commenced any lawsuits in Delaware.

15.    Western Sugar has not been named as a defendant in any other lawsuit in Delaware.

16.    Western Sugar does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.    Western Sugar maintains an informational internet website. This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18.    Western Sugar has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has Western Sugar waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 24, 2005.

_____
Inder K. Mathur

# EXHIBIT P

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| McNEIL NUTRITIONALS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-00069-GMS |
| | ) | |
| THE SUGAR ASSOCIATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF RICHARD McKAMEY

I, Richard McKamey, declare as follows:

1.    I am over eighteen (18) years of age and am authorized by Wyoming Sugar Company, LLC ("Wyoming Sugar"), a Wyoming limited liability company, in my capacity as Chairman of Wyoming Sugar, to make this declaration on behalf of Wyoming Sugar.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.    Wyoming Sugar's principal place of business is in Wyoming.

3.    Wyoming Sugar has no offices in Delaware.

4.    Wyoming Sugar is not licensed or registered to do business in Delaware.

5.    Wyoming Sugar does not maintain a registered agent for service of process in Delaware.

6.    Wyoming Sugar does not now conduct, nor has it ever conducted, any business in Delaware.

7.    Wyoming Sugar does not sell or ship any products to Delaware customers.

8.    Wyoming Sugar does not offer any services in Delaware.

9.    Wyoming Sugar does not own or lease any real estate or personal property in Delaware

10.    Wyoming Sugar does not maintain any bank accounts in Delaware.

11.    Wyoming Sugar does not pay any Delaware taxes.

12.    Wyoming Sugar maintains no telephone listing in Delaware.

13.    Wyoming Sugar has no employees or agents in Delaware.

14.    Wyoming Sugar has not commenced any lawsuits in Delaware.

15.    Wyoming Sugar has not been named as a defendant in any other lawsuit in Delaware.

16.    Wyoming Sugar does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.    Wyoming Sugar maintains an informational internet website.    This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18.    Wyoming Sugar has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has Wyoming Sugar waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 22, 2005.

Richard McKamey

# EXHIBIT Q

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,     )
                                )

     Plaintiff,              )
                                )

     v.                     )   **Case No. 1:05-CV-00069-GMS**
                                )

THE SUGAR ASSOCIATION, *et al.*,    )
                                )

     Defendants.          )

## DECLARATION OF LUTHER MARKWART

I, Luther Markwart, declare as follows:

1.    I am over eighteen (18) years of age and am authorized by the American Sugarbeet Growers Association, a trade association incorporated in the District of Columbia, in my capacity as Executive Vice President of the American Sugarbeet Growers Association, to make this declaration on behalf of the American Sugarbeet Growers Association. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.    The American Sugarbeet Growers Association's principal place of business is in Washington, D.C.

3.    The American Sugarbeet Growers Association has no offices in Delaware.

4.    The American Sugarbeet Growers Association is not licensed or registered to do business in Delaware.

5.    The American Sugarbeet Growers Association does not maintain a registered agent for service of process in Delaware.

6.      The American Sugarbeet Growers Association does not now conduct, nor has it ever conducted, any business in Delaware.

7.      The American Sugarbeet Growers Association does not sell or ship any products to Delaware customers.

8.      The American Sugarbeet Growers Association does not offer any services in Delaware.

9.      The American Sugarbeet Growers Association does not own or lease any real estate or personal property in Delaware.

10.     The American Sugarbeet Growers Association does not maintain any bank accounts in Delaware.

11.     The American Sugarbeet Growers Association does not pay any Delaware taxes.

12.     The American Sugarbeet Growers Association maintains no telephone listing in Delaware.

13.     The American Sugarbeet Growers Association has no employees or agents in Delaware.

14.     The American Sugarbeet Growers Association has not commenced any lawsuits in Delaware.

15.     The American Sugarbeet Growers Association has not been named as a defendant in any other lawsuit in Delaware.

16.     The American Sugarbeet Growers Association does not advertise in any Delaware-based publications or direct any marketing efforts at Delaware specifically.

17.    The American Sugarbeet Growers Association maintains an informational internet website. This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18.    The American Sugarbeet Growers Association is not a member of the Sugar Association, Inc. ("Sugar Association"). Although each year the American Sugarbeet Growers Association facilitates the selection of four sugarbeet growers representing different regions of the United States to sit on the Sugar Association's Board of Directors for the purposes of communication and education of the American Sugarbeet Growers Association's Board of Directors, the American Sugarbeet Growers Association has no authority to approve any policy, actions, or financial obligations taken by the Sugar Association.

19.    The American Sugarbeet Growers Association has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has the American Sugarbeet Growers Association waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 23, 2005.

Luther Markwart

# EXHIBIT R

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,                    )
                                             )
            Plaintiff,                       )
                                             )
      v.                                     )   Case No. 1:05-CV-00069-GMS
                                             )
THE SUGAR ASSOCIATION, *et al.*,             )
                                             )
            Defendants.                      )

## DECLARATION OF MICHAEL J. PETRUZZELLO

I, Michael J. Petruzzello, declare as follows:

1.      I am over eighteen (18) years of age and am authorized by Qorvis Communications, LLC ("Qorvis"), a Virginia limited liability company, in my capacity as Managing Partner of Qorvis, to make this declaration on behalf of Qorvis. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.      Qorvis' principal place of business is in Washington, D.C.

3.      Qorvis has no offices in Delaware.

4.      Qorvis is not licensed or registered to do business in Delaware.

5.      Qorvis does not maintain a registered agent for service of process in Delaware.

6.      Qorvis does not generally conduct business in Delaware. On three occasions, one employee of Qorvis has accompanied a client on trips to Delaware to meet with Delaware's Insurance Commissioner regarding a matter completely unrelated to the present litigation.

7.      Qorvis does not sell or ship any products to Delaware customers.

8.      Qorvis does not regularly offer any services in Delaware.

9.      Qorvis does not own or lease any real estate or personal property in Delaware.

10.     Qorvis does not maintain any bank accounts in Delaware.

11.     Qorvis does not pay any Delaware taxes.

12.     Qorvis maintains no telephone listing in Delaware.

13.     Qorvis has no employees or agents in Delaware.

14.     Qorvis has not commenced any lawsuits in Delaware.

15.     Qorvis has not been named as a defendant in any other lawsuit in Delaware.

16.     Qorvis does not advertise on its own behalf in any Delaware-based publications or direct any marketing efforts on its own behalf at Delaware specifically.  As part of the Sugar Association, Inc.'s ("Sugar Association") national mailing of 5,000 to 10,000 postcards, one (1) postcard regarding sucralose was sent by Qorvis to a health reporter in New Castle, Delaware for the Wilmington News Journal.

17.     Qorvis maintains an informational internet website located at www.qorvis.com. This website is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents.

18.     I have reviewed a copy of Plaintiff's Complaint and I am familiar with its contents.

19.     The Complaint alleges facts relating to work that Qorvis performed for the Sugar Association in promoting the Sugar Association's education program about the chemical sucralose.  The work performed by Qorvis for the Sugar Association includes the "Truth About Splenda" website located at www.truthaboutsplenda.com.  This website was designed and is maintained by Qorvis' web designer in Virginia.  The web designer entered the information into the website's database in Virginia.  No data entered into the website's database was researched,

collected, or entered in Delaware. The website, which is not targeted at Delaware or its residents, does not advertise Qorvis' services, allow visitors to contract for Qorvis' services, offer any products or services for sale, solicit donations of any kind, or generate any revenues for Qorvis.

20.    Qorvis has neither consented nor submitted to the jurisdiction of the courts of Delaware, nor has Qorvis waived any defense to jurisdiction.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 24 , 2005.

Michael J. Petruzzello

## CERTIFICATE OF SERVICE

I, Sarah E. Diluzio, hereby certify that on March 25, 2005, I electronically

filed true and correct copies of the foregoing DECLARATION OF SARAH E. DILUZIO

IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court

using CM/ECF which will send notification of such filing to the following counsel of

record:

Steven J. Balick (No.2114)
ASHBY & GEDDES
222 Delaware Avenue
17th floor
Wilmington, DE  19801
Telephone:  (302) 654-1888
sbalick@ashby-geddes.com

Sarah E. DiLuzio (DSB ID No. 4085)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Post Office Box 951
Wilmington, Delaware  19899-0951
Tel:  (302) 984-6000
E-mail:  sdiluzio@potteranderson.com

675453

4