IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| McNEIL NUTRITIONALS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-69-GMS |
| | ) |
| THE SUGAR ASSOCIATION, THE | ) |
| AMALGAMATED SUGAR COMPANY, | ) |
| AMERICAN CRYSTAL SUGAR COMPANY, | ) |
| AMERICAN SUGAR CANE LEAGUE, | ) |
| AMERICAN SUGAR REFINING, INC., | ) |
| ATLANTIC SUGAR ASSOCIATION, | ) |
| HAWAIIAN SUGAR & TRANSPORTATION | ) |
| COOPERATIVE, IMPERIAL SUGAR | ) |
| COMPANY, MICHIGAN SUGAR COMPANY, | ) |
| MINN-DAK FARMERS COOPERATIVE, | ) |
| OKEELANTA CORPORATION, OSCEOLA | ) |
| FARMS COMPANY, RIO GRANDE VALLEY | ) |
| SUGAR GROWERS, INC., SOUTHERN | ) |
| MINNESOTA BEET SUGAR COOPERATIVE, | ) |
| SUGAR CANE GROWERS COOPERATIVE OF | ) |
| FLORIDA, UNITED STATES SUGAR | ) |
| CORPORATION, WESTERN SUGAR | ) |
| COOPERATIVE, WYOMING SUGAR LLC, | ) |
| AMERICAN SUGARBEET GROWERS | ) |
| ASSOCIATION, and QORVIS | ) |
| COMMUNICATIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR ENLARGEMENT OF BRIEFING SCHEDULE IN ORDER
TO PERMIT DISCOVERY NECESSARY TO RESPOND TO MOTION TO DISMISS**

Plaintiff McNeil Nutritionals, Inc. ("McNeil") respectfully submits this reply memorandum in further support of its motion (D.I. 30) to enlarge the briefing schedule on defendants' motion to dismiss in order to permit McNeil an opportunity to conduct discovery necessary for McNeil's response.

**I.     PRELIMINARY STATEMENT**

The sugar industry wishes to have its cake and eat it too.  In moving to dismiss, defendants have submitted declarations that dispute the facts alleged in McNeil's Complaint (D.I. 1), urging this Court to "go outside the pleadings" and consider such "relevant jurisdictional facts."  (D.I. 28 at 3).  Specifically, defendants claim that, contrary to McNeil's allegations, "the members of the Sugar Association had no direct involvement with the conduct about which McNeil complains."  *Id*.  In addition, many of the defendants aver that they have no contacts with the State of Delaware, such that this Court is precluded from exercising personal jurisdiction over them.  *Id*.

Upon receipt of defendants' motion, McNeil informed defendants' counsel that, prior to responding, McNeil would require discovery to evaluate and contest these factual assertions.  Defendants first showed a willingness to negotiate, but recently reversed course and now take the position that McNeil is entitled to no discovery whatsoever.  As defendants would have it, in ruling on their motion to dismiss this Court should *reject* the well-pleaded allegations of McNeil's Complaint, and accept as Gospel the contrary assertions in defendants' declarations – without so much as affording McNeil an opportunity to question the declarants or examine the documents that bear upon their testimony.  Common sense dictates that defendants' approach is improper, and the law of this Circuit confirms that McNeil is entitled to the discovery it seeks.

Notably, defendants do not dispute the reasonableness of McNeil's proposed schedule, under which jurisdictional discovery would be completed and McNeil would file its opposition to defendants' motion within approximately 90 days.  Rather, they oppose discovery

altogether. As shown below, the requested discovery should be permitted and McNeil's proposed scheduling order entered.[1]

## II.     STATEMENT OF FACTS

This is an action for false advertising and deceptive trade practices. The Complaint alleges that defendants are falsely claiming, on an internet website and elsewhere, that McNeil's best-selling no-calorie sweetener Splenda® is unhealthy or unsafe, and that consumers would be better off consuming increased amounts of refined sugar instead of Splenda. Cmplt. (D.I. 1) ¶¶ 1-2. Defendants include The Sugar Association, a trade association that represents the interests of American sugar growers and producers (the "Association"); the Association's 17 members, which comprise the bulk of the sugar industry in the United States (the "Members"); and Qorvis Communications, LLC ("Qorvis"), a public relations agency hired by the industry to design and carry out the challenged ad campaign. *Id.* ¶¶ 4-24.

McNeil is a Delaware limited liability company that markets Splenda products, which are sweetened with the no-calorie sweetener sucralose. Cmplt. (D.I. 1) ¶ 3. The Association is a Delaware corporation, as are several of its Members. *Id*. ¶¶ 4, 5, 8, 19. The interactive website that is the focus of the Complaint is accessible to consumers over the internet in Delaware and elsewhere. Needless to say, the sugar produced by the Association's Members is available for purchase in Delaware, and is incorporated as an ingredient in countless food products sold in the State. *See* Cmplt. (D.I. 1) ¶ 26.

On or about January 10, 2004, defendants launched a new website called "The Truth About Splenda," which can be accessed over internet at www.truthaboutsplenda.com.

---

[1]     In the event that the Court were to disagree and conclude that McNeil should answer defendants' motion without any opportunity to uncover the facts, McNeil respectfully requests that it have until May 9, 2005 to file its answering brief in opposition to defendants' motion to dismiss. Defendants have consented to this request.

2

Cmplt. (D.I. 1) ¶ 47. The website contains numerous false and deceptive statements that are disparaging to Splenda and misleading to consumers. For example, the site rejects as "FICTION" the notions that "Splenda is safe to eat"; that "Splenda has been thoroughly tested"; and that "products made with Splenda do not require warning labels." In fact, as the Complaint alleges:

> (a) sucralose *is* safe for adults and children alike, as demonstrated by significant scientific research and as [the United States Food and Drug Administration ("FDA")] and numerous other independent regulatory agencies have found; (b) sucralose *has* been thoroughly tested; [and] (c) FDA requires *no* warning labels for any Splenda product.

*Id.* ¶ 50 (emphasis in original).

When the "Truth About Splenda" website first was launched, the individual growers and producers of sugar who make up the Association's membership were anxious to take credit for it. A press release announced that a "group of concerned citizens, **led by sugar cane and sugar beet farmers across America**, today launched the website www.truthaboutsplenda.com . . . ." *See* the accompanying Declaration of Steven A. Zalesin ("Zalesin Dec.") Exh. 1 (emphasis added). Nowhere on the website did the Association take responsibility for its content; rather, at that time defendants preferred to position themselves simply as "sugar cane and sugar beet farmers." *See id.* and Exh. A to Complaint (D.I. 1 at Ex. A).[2]

Although it has not yet had an opportunity to conduct any discovery, McNeil's investigation to date indicates that the sugar growers who make up the Association are indeed

---

[2] Perhaps realizing the inconsistency between their statements on the internet and their position here, defendants have since revised the Truth About Splenda website. The site's home page now states that it is "provided by The Sugar Association, which represents sugar beet and sugar cane farmers across America." *See* Zalesin Dec. Exh. 2.

3

responsible for the disputed advertising, in whole or in part. The Sugar Association is not a vast organization (such as the AARP or the NAACP) with thousands of members who have little or no say in its day-to-day activities. It is a small collection of top-ranking executives from the nation's leading sugar companies who dictate the Association's agenda. The Association has only a small permanent staff, *see* Zalesin Dec. Exh. 3, and relies upon its Members to guide its actions. The Association's own website describes its decision-making structure as follows:

> The Sugar Association's member companies are producers and growers of sugar in the United States. The Board of Directors is comprised of decision-making representatives from each of those companies or organizations. There are four Board Committees: the Executive Committee, the Budget Committee, the Audit Committee, and the Nominating Committee. Three advisory committees comprised of ***member company staff help guide the direction of Public Policy, Public Education, and Scientific Affairs for the Association***. . . . The board and committees meet at least two times annually to review and plan the activities and strategies for each year.

*Id*.; *see also* Cmplt. (D.I. 1) ¶¶ 5-21 (identifying the individuals on the Association's Board of Directors as top executives of the Member companies). McNeil's Complaint thus alleges upon information and belief that the Member companies have "contributed, approved, funded or otherwise participated in the advertising campaign" at issue. Cmplt. (D.I. 1) ¶ 24.

This is not surprising, since the Members, though they may be "farmers" in one sense, are in reality major industrial corporations. One Member that disputes this Court's ability to exercise jurisdiction over it boasts in its 2004 Annual Report that it is the largest beet sugar producer in the United States, and that its sugar is marketed "to retail and industrial customers throughout the nation." *See* Zalesin Dec. Exh. 4 at 2. Another Member, United States Sugar Company, touts itself as "the country's largest producer of cane sugar – some 700,000 tons each year." *Id*. Exh. 5. Still another, Imperial Sugar (which also protests personal jurisdiction), is a publicly traded company that describes itself as "one of the largest processors and marketers of

4

refined sugar in the United States," with average annual net sales over the past three years in excess of $1 billion. *Id*. Exh. 6 at 2, 10.

In addition to selling sugar to major industrial and food service customers, the Association's Members market some of the best-known consumer brands, including Domino® and Dixie-Crystals® sugar. Members undertake nationwide consumer marketing and advertising campaigns – in Delaware and elsewhere – on behalf of these and other products.

### III. ARGUMENT

#### A. McNeil Is Entitled To Discovery

In deciding a motion to dismiss, a court ordinarily must confine its analysis to the four corners of the complaint, and must construe the allegations in the light most favorable to the non-moving party. *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 2004 U.S. App. LEXIS 25262, at *4 (3d Cir. Dec. 9, 2004); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). However, where as here a party contests the court's ability to exercise jurisdiction, the court may in its discretion consider facts outside the pleadings. *See Greene v. New Dana Perfumes Corporation*, 287 B.R. 328, 2002 U.S. Dist. LEXIS 21299, at *10 and n.16 (D. Del. Oct. 23, 2002).

In such circumstances, courts routinely permit the party opposing such a motion limited discovery to develop the jurisdictional facts. *See e.g.*, *Toys "R" Us,* 318 F.3d at 457; *Renner v. Lanard Toys, Ltd.*, 33 F.3d 277 (3d Cir. 1994); *Compagnie Des Bauxites de Guinee v. L'Union Atlantiques S.A. D'assurances*, 723 F.2d 357 (3d Cir. 1983); *Fraley v. Chesapeake and Ohio Railway*, 397 F.2d 1 (3d Cir. 1968); *In re Automotive Refinishing Paint Antitrust Litig.*, 2002 WL 31261330 (E.D. Pa. July 21, 2002); *West Africa Trading & Shipping Co. v. London Int'l Group*, 968 F. Supp. 996 (D. N.J. 1997). As with all discovery, jurisdictional discovery should be liberally allowed, *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 473 (D. Del. 1995),

and courts should adopt a "deferential approach" in permitting the party opposing the motion to pursue the discovery it seeks. *Toys "R" Us, Inc.*, 318 F.3d at 456. Only where a party's argument in favor of jurisdiction is "clearly frivolous" may jurisdictional discovery be denied.[3] *See id.*; *see also Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 107 F.3d 1026, 1042 (3d Cir. 1997) (distinguishing between the liberal standards for jurisdictional discovery of corporate defendants from those for individual defendants).

McNeil is plainly entitled to discovery here. McNeil's Complaint alleges that the Association's Member companies participated in the conception, approval and funding of the "Truth About Splenda" website and the other advertising and public relations efforts challenged therein. Cmplt. (D.I. 1) ¶ 24. This allegation was not manufactured out of thin air; it is based upon McNeil's understanding of how the Association operates. McNeil's claims are supported, *inter alia*, by the Association's own statements – outside the context of this litigation – concerning its organizational and operational structure (*see* Zalesin Dec. Exh. 3), and by press statements that accompanied the introduction of the "Truth About Splenda" website (*see* Zalesin Dec. Exh. 1) (noting that website was launched by "sugar cane and sugar beet farmers" – the Association's members).

In support of their motion to dismiss, defendants have submitted a declaration by the Association's president, Andrew C. Briscoe III, attesting that the Association (1) "***acted in its corporate capacity*** in planning, funding, and executing the 'Truth About Splenda' website" and (2) "did not obtain the ***specific approval*** of either the Board of Directors or the Member

---

[3] Defendants are incorrect in their assertion that the Third Circuit in *Renner v. Lanard Toys, Ltd.*, 33 F.3d 277 (3d Cir. 1994), allowed plaintiff to conduct discovery only once it first "submitted affidavits and documents relevant to the jurisdictional facts" (D.I. 31 at 2). *Renner* was a review of motion to dismiss, not a request for the opportunity to take discovery. The district court had granted defendants' motion to dismiss, but the Third Circuit reversed and held that plaintiff – who had made no formal request – was entitled to conduct discovery concerning the jurisdictional facts. 33 F.3d at 283.

Companies *for any statement* made on this website." *See* Zalesin Dec. Exh. 7 ¶ 12 (emphasis added). These carefully worded statements by Mr. Briscoe by no means prove that the Association's Members had nothing to do with the website, or that they cannot be held liable along with the Association for its content. For example, Mr. Briscoe's declaration does not address whether the Members helped conceive of or approved the decision to launch a website for the purpose of disparaging and spreading false rumors about Splenda, or whether they agreed to pay for the design and maintenance of the website through dues or special contributions to the Association.

By tendering Mr. Briscoe's declaration and by relying upon it as grounds for dismissal, defendants have invited the discovery McNeil seeks. McNeil is entitled to probe Mr. Briscoe's statements and to obtain discovery from the Members in order to establish that the Members are at least partially responsible – and therefore potentially liable – for the "Truth About Splenda" website. *See Allen Organ Co. v. Galanti Organ Builders, Inc.*, 798 F. Supp. 1162 (E.D. Pa. 1992) (applying common law joint tortfeasor principles to determine contributory liability for false advertising under Lanham Act); *see also In re Century 21-Re-Max/Real Estate Advertising Claims Litigation*, 882 F. Supp. 915 (C.D. Cal. 1994) (party may be held jointly liable for false advertising if it "knowingly participated in the creation, development and propagation of the . . . false advertising campaign"); *Grant Airmass Corp. v. Gaymar Indus.*, 645 F. Supp. 1507 (S.D.N.Y. 1986) (denying summary judgment to party that was "not technically a member of the chain of distribution of the advertised goods" and noting that liability for false advertising may attach where defendant supplied principal actor with the instruments by which it

violated the Lanham Act and had knowledge or could have reasonably anticipated that the violation would occur).

McNeil is likewise entitled to discovery on the question whether certain Members have sufficient contacts with the State of Delaware to permit this Court to exercise personal jurisdiction over them. In support of this ground for dismissal, defendants have submitted boilerplate declarations from 15 different companies attesting that they "have no offices in Delaware," "maintain no telephone listings in Delaware," have "never commenced any lawsuits in Delaware," and the like. On the basis of these declarations, defendants ask the Court to order dismissal of McNeil's Complaint as to all but five defendants – the Association and four Members incorporated in Delaware.

At its most basic level, defendants' argument fails because, as alleged in the Complaint, the Members are

- acting under the guise of a Delaware corporation (the Association)
- to falsely attack and disparage a product sold by a Delaware limited liability company (McNeil)
- thereby causing economic injury in the State of Delaware.

If this were not enough to establish jurisdiction, the Association's Members are, as noted above, the predominant producers of sugar in the United States. The sugar they grow and distribute is marketed and sold to industrial and food service customers, to retailers, and to consumers nationwide, including in the State of Delaware. McNeil has reason to believe that the Members derive substantial revenue from the sale of sugar in Delaware and otherwise have sufficient

8

contacts with the State to allow for an exercise of *in personam* jurisdiction.[4]  McNeil is entitled to discovery to probe defendants' declarations to the contrary and to uncover the relevant facts concerning personal jurisdiction.  *Toys "R" Us*, 318 F.3d at 457; *Renner*, 33 F.3d at 283-84; *Compagnie Des Bauxites de Guinee*, 723 F.2d at 362.

>    B.   **McNeil's Discovery Requests Are Targeted to the Information Required To Establish Jurisdiction**

McNeil has already served upon defendants its requests for the production of documents related to the factual issues raised in defendants' motion to dismiss.  Generally, McNeil seeks production of documents that bear upon (1) the organizational structure of the Association and the Members' involvement with the "Truth About Splenda" website, and (2) for the 15 defendants who contest *in personam* jurisdiction, the defendants' business contacts with the State of Delaware.  *See* Zalesin Dec. Exhs. 8 and 9 (example requests).  Courts routinely require that a party opposing jurisdiction respond to such relevant and narrowly-tailored discovery requests.  *Toys R Us, Inc.*, 318 F.3d at 457-58; *Compagnie Des Bauxites de Guinee*, 723 F.2d at 363; *see also Hansen v. Neumuerller GmbH*, 163 F.R.D. 471, 477 (D. Del. 1995) (allowing limited depositions of corporate employees for purposes of determining whether corporate defendant manufactured machine in forum state).

---

[4]   In this regard, it is worth noting that the Association has sued McNeil for false advertising in the United States District Court for the Central District of California.  McNeil is a Delaware limited liability company with its principal place of business in Pennsylvania.  Its only connection to California is that it markets and sells Splenda products there.  That is enough to establish personal jurisdiction.

9

**IV.   CONCLUSION**

For the foregoing reasons, McNeil's motion should be granted and its proposed order entered. However, should the Court conclude that McNeil is not entitled to discovery at this time, McNeil respectfully requests that it have until May 9, 2005 in which to file its answering brief in opposition to defendants' motion to dismiss. Defendants have consented to this latter request.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone 302-654-1888
Facsimile 302-654-2067
Sbalick@ashby-geddes.com
Jday@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Steven A. Zalesin
Clay J. Pierce
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000

Donna Malin
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

Dated: April 18, 2005
155991.1

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of April, 2005, the attached **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ENLARGEMENT OF BRIEFING SCHEDULE IN ORDER TO PERMIT DISCOVERY NECESSARY TO RESPOND TO MOTION TO DISMISS** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Richard L. Horwitz, Esq.<br>Potter Anderson & Corroon LLP<br>Hercules Plaza – Sixth Floor<br>1313 North Market Street<br>Wilmington, DE  19801 | **HAND DELIVERY** |
| James P. Murphy, Esq.<br>Squire, Sanders & Dempsey LLP<br>1201 Pennsylvania Avenue, N.W.<br>Suite 500<br>Washington, DC  20004 | **VIA FEDERAL EXPRESS** |
| Adam R. Fox, Esq.<br>Squire, Sanders & Dempsey LLP<br>801 South Figueroa Street<br>Suite 1400<br>Los Angeles, CA  90017 | **VIA FEDERAL EXPRESS** |

/s/ *John G. Day*
_____
John G. Day