The information in the table below presents our natural gas futures positions outstanding as of September 30, 2004.

| | Expected Maturity Fiscal 2005 |
|---|---|
| Futures Contracts (long positions): | |
| Contract Volumes (mmbtu) | 110,000 |
| Weighted Average Contract Price (per mmbtu) | $ 6.39 |
| Contract Amount | $ 703,000 |
| Weighted Average Fair Value (per mmbtu) | $ 7.29 |
| Fair Value | $ 802,000 |

At September 30, 2003, our natural gas futures position was a long position of 2.0 million mmbtu with an average contract price of $5.29 and an average fair value price of $4.87.

Previously, we had debt with interest rates that floated with market rates, exposing us to interest rate risk. In prior years, we have attempted to reduce this risk by entering into interest rate swap agreements for a portion of this floating rate debt. We terminated our last interest rate swap agreements in March 2004.

The tables below provide information about our derivative financial instruments and other financial instruments that are sensitive to changes in interest rates, including interest rate swaps and debt obligations at September 30, 2004 and 2003. For debt obligations, the table presents principal cash flows and related weighted average interest rates by expected maturity dates. For interest rate swaps, the table presents notional amounts and weighted average interest rates by expected (contractual) maturity dates for fiscal 2003. Notional amounts are used to calculate the contractual payments to be exchanged under the contract. Weighted average variable rates are based on implied forward rates in the treasury yield curve at the reporting date.

| | | Expected Maturity Date at September 30, 2004 Fiscal Year Ending September 30, | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 2005 | 2006 | 2007 | 2008 | 2009 | There-after | Total | Fair Value |
| | | | | (In Millions of Dollars) | | | | |
| **Liabilities** | | | | | | | | |
| Long-term debt: | | | | | | | | |
| Fixed rate debt | $ 2.1 | $ 2.3 | $ 2.9 | — | — | $ 1.5 | $ 8.8 | $8.8 |
| Average interest rate | 12.0% | 12.0% | 12.0% | — | — | 6.4% | 11.0% | |
| Variable rate debt | $ 3.3 | — | — | — | — | — | $ 3.3 | $3.3 |
| Average interest rate | 4.8% | — | — | — | — | — | 4.8% | |

| | | Expected Maturity Date at September 30, 2003 Fiscal Year Ending September 30, | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 2004 | 2005 | 2006 | 2007 | 2008 | There-after | Total | Fair Value |
| | | | | (In Millions of Dollars) | | | | |
| **Liabilities** | | | | | | | | |
| Long-term debt: | | | | | | | | |
| Fixed rate debt | $ 1.9 | $ 2.2 | $ 2.4 | $ 2.7 | — | $ 1.5 | $10.7 | $10.7 |
| Average interest rate | 12.0% | 12.0% | 12.0% | 12.0% | | 6.4% | 11.2% | |
| Variable rate debt | $ 3.4 | $ 7.0 | $14.7 | $ 0.2 | $0.2 | $ 1.3 | $26.8 | $26.8 |
| Average interest rate | 4.5% | 4.6% | 4.8% | 6.3% | 6.8% | 7.5% | 4.8% | |
| **Interest Rate Derivatives** | | | | | | | | |
| Interest rate swaps: | | | | | | | | |
| Variable to fixed | $14.5 | $ 7.5 | — | — | — | — | $22.0 | $ (0.3) |
| Average pay rate | 3.5% | 2.5% | — | — | — | — | 2.5% | |
| Average receive rate | 1.1% | 1.3% | — | — | — | — | 1.2% | |

**ITEM 8.    *Financial Statements and Supplementary Data.***

See the index of financial statements and financial statement schedules under "Item 15. Exhibits and Financial Statement Schedules."

Unaudited quarterly financial data for the last eight fiscal quarters is as follows (in thousands of dollars, except per share amounts):

| | Fiscal Year 2004 by Quarter Ended | | | |
| --- | --- | --- | --- | --- |
| | December 31, 2003 | March 31, 2004 | June 30, 2004 | September 30, 2004 |
| Net Sales | $ 255,998 | $ 209,615 | $ 229,574 | $ 268,454 |
| Gross Margins | 21,158 | 16,795 | 21,608 | 19,614 |
| Net Income | 3,513 | 1,637 | 4,324 | 5,490 |
| Earnings Per Share: | | | | |
| Net Income: | | | | |
| Basic | $ 0.35 | $ 0.16 | $ 0.42 | $ 0.53 |
| Diluted | 0.32 | 0.15 | 0.40 | 0.50 |

| | Fiscal Year 2003 by Quarter Ended | | | |
| --- | --- | --- | --- | --- |
| | December 31, 2002 | March 31, 2003 | June 30, 2003 | September 30, 2003 |
| Net Sales | $ 288,994 | $ 251,911 | $ 275,815 | $ 294,091 |
| Gross Margins | 20,758 | 13,581 | 21,059 | 25,369 |
| Income (Loss) from Continuing Operations | (5,548) | (6,007) | 3,552 | 9,970 |
| Income from Discontinued Operations | 69,007 | 5,683 | — | — |
| Net Income (Loss) | 63,459 | (324) | 3,552 | 9,970 |
| Earnings Per Share: | | | | |
| Income (Loss) from Continuing Operations: | | | | |
| Basic | $ (0.55) | $ (0.60) | $ 0.35 | $ 0.99 |
| Diluted | (0.55) | (0.60) | 0.34 | 0.93 |
| Income from Discontinued Operations: | | | | |
| Basic | $ 6.90 | $ 0.57 | — | — |
| Diluted | 6.90 | 0.57 | — | — |
| Net Income (Loss): | | | | |
| Basic | $ 6.35 | $ (0.03) | $ 0.35 | $ 0.99 |
| Diluted | 6.35 | (0.03) | 0.34 | 0.93 |

There were no cash dividends paid or declared during any of the last eight fiscal quarters.

27

**ITEM 9.** *Changes in and Disagreements with Accountants on Accounting and Financial Disclosure*

None.

**ITEM 9A.** *Controls and Procedures*

In accordance with Exchange Act Rules 13a-15 and 15d-15, we carried out an evaluation, under the supervision and with the participation of management, including our President and Chief Executive Officer and our Senior Vice President and Chief Financial Officer, of the effectiveness of our disclosure controls and procedures as of the end of the period covered by this report. Based on that evaluation, our President and Chief Executive Officer and our Senior Vice President and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of September 30, 2004 to provide reasonable assurance that information required to be disclosed in our reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.

There has been no change in our internal controls over financial reporting that occurred during the three months ended September 30, 2004 that has materially affected, or is reasonably likely to materially affect, our internal controls over financial reporting.

**ITEM 9B.** *Other Information*

None.

28

## PART III

**ITEM 10.** *Directors and Executive Officers of the Registrant*

**ITEM 11.** *Executive Compensation*

**ITEM 12.** *Security Ownership of Certain Beneficial Owners and Management and Related Shareholder Matters*

**ITEM 13.** *Certain Relationships and Related Transactions*

**ITEM 14.** *Principal Accountant Fees and Services*

Information regarding Imperial Sugar's executive officers is included in Part I of this report. The other information required by Items 10, 11, 12, 13 and 14 will be included in our definitive proxy statement for the 2005 Annual Meeting of Shareholders, which will be filed with the Securities and Exchange Commission within 120 days after September 30, 2004, and is incorporated in this report by reference.

## PART IV

**ITEM 15.** *Exhibits and Financial Statement Schedules*

*(a)(1) Financial Statements.*

| Item | Page |
|---|---|
| Report of Independent Registered Public Accounting Firm | 33 |
| Consolidated Financial Statements: | |
| Consolidated Balance Sheets at September 30, 2004 and 2003 | 34 |
| Consolidated Statements of Operations for the years ended September 30, 2004, 2003 and 2002 | 35 |
| Consolidated Statements of Changes in Shareholders' Equity for the years ended September 30, 2004, 2003 and 2002 | 36 |
| Consolidated Statements of Cash Flow for the years ended September 30, 2004, 2003 and 2002 | 37 |
| Notes to Consolidated Financial Statements | 38 |

*(a)(2) Financial Statement Schedules.*

All schedules and other statements for which provision is made in the applicable regulations of the SEC have been omitted because they are not required under the relevant instructions or are inapplicable.

*(a)(3) Exhibits.*

An asterisk indicates we have previously filed the exhibit with the SEC as indicted in the document description. We incorporate those previously filed exhibits in this report by reference.

| Exhibit No. | Document |
|---|---|
| *2(a) | Second Amended and Restated Joint Plan of Reorganization (previously filed as an Exhibit to Imperial Sugar's Current Report on Form 8-K dated September 12, 2001 (File No. 001-10307) and incorporated herein by reference). |
| *2(b) | Stipulation with Respect to Confirmation Objection of Wells Fargo Bank (Texas), N.A. and Amendment to Debtors' Second Amended and Restated Joint Plan of Reorganization dated June 5, 2001 (previously filed as an Exhibit to Imperial Sugar's Current Report on Form 8-K dated September 12, 2001 (File No. 001-10307) and incorporated herein by reference). |
| *2(c) | Stipulation Regarding Confirmation Objection of Missouri Department of Revenue and Amendment to Debtors' Second Amended and Restated Joint Plan of Reorganization dated June 5, 2001 (previously filed as an Exhibit to Imperial Sugar's Current Report on Form 8-K dated September 12, 2001 (File No. 001-10307) and incorporated herein by reference). |

| Exhibit No. | Document |
|---|---|
| *3(a)(1) | Amended and Restated Articles of Incorporation of Reorganized Imperial Sugar (previously filed as an Exhibit to Imperial Sugar's Current Report on Form 8-K dated September 12, 2001 (File No. 001-10307) and incorporated herein by reference). |
| *3(a)(2) | Articles of Amendment dated February 28, 2002, to the Amended and Restated Articles of Incorporation (previously filed as Exhibit 3(a)(2) to Imperial Sugar's Annual Report on Form 10-K for the year ended September 30, 2002 ("the 2002 Form 10-K") and incorporated herein by reference). |
| *3(b) | Amended and Restated By-Laws of Reorganized Imperial Sugar (previously filed as an Exhibit to Imperial Sugar's Current Report on Form 8-K dated September 12, 2001 (File No. 001-10307) and incorporated herein by reference). |
| | The Company is a party to several long-term debt instruments under which the total amount of securities authorized does not exceed 10% of the total assets of the Company and its subsidiaries on a consolidated basis. Pursuant to paragraph 4 (iii)(A) of Item 601 (b) of Regulation S-K, the Company agrees to furnish a copy of such instruments to the Securities and Exchange Commission upon request. |
| *4(a) | Rights Agreement dated as of December 31, 2002 between the Company and The Bank of New York (previously filed as Exhibit 4(a) to Imperial Sugar's 2002 Form 10-K and incorporated herein by reference). |
| *4(b) | Amended and Restated Credit Agreement dated as of December 1, 2004 among the financial institutions named therein, as lenders, Bank of America, N.A., as administrative agent, and Imperial Sugar Company (previously filed as an Exhibit to Imperial Sugar's Current Report on Form 8-K dated December 1, 2004 and incorporated by reference herein). |
| *4(c) | Warrant Agreement dated as of August 28, 2001 between Imperial Sugar Company and The Bank of New York, as warrant agent (previously filed as an Exhibit to Imperial Sugar's Current Report on Form 8-K dated September 12, 2001 (File No. 001-10307) and incorporated herein by reference). |
| *4(d) | Registration Rights Agreement dated as of August 28, 2001, by and among Imperial Sugar Company and the parties listed on the signature page thereto (previously filed as Exhibit 4(d) to Imperial Sugar's Annual Report on Form 10-K for the year ended September 30, 2001 ("the 2001 Form 10-K") and incorporated herein by reference). |

Exhibits 10(a) through 10(g) relate to management contracts or compensatory plans.

| | |
|---|---|
| *10(a)(1) | Specimen of Employment Agreement (Form A) for certain of Imperial Sugar's officers (previously filed as Exhibit 10(a)(1) to the 2001 Form 10-K and incorporated herein by reference). |
| *10(a)(2) | Specimen of Employment Agreement (Form B) for certain of Imperial Sugar's officers (previously filed as Exhibit 10(a)(3) to Imperial Sugar's 2002 Form 10-K and incorporated herein by reference). |
| 10(a)(3) | Schedule of Employment Agreements. |
| *10(a)(4) | Specimen of Change in Control and Severance Agreement for certain of Imperial Sugar's officers (previously filed as Exhibit 10(a)(5) to Imperial Sugar's 2002 Form 10-K and incorporated herein by reference). |
| 10(a)(5) | Schedule of Change in Control and Severance Agreements. |

| Exhibit No. | Document |
|---|---|
| *10(a)(6) | Specimen of Change in Control Agreement for certain of Imperial Sugar's officers (previously filed as Exhibit 10(a)(7) to Imperial Sugar's 2002 Form 10-K and incorporated herein by reference). |
| 10(a)(7) | Schedule of Change in Control Agreements. |
| *10(b)(1) | Imperial Holly Corporation Salary Continuation Plan (as amended and restated effective August 1, 1994) (previously filed as Exhibit 10(b)(1) to Imperial Sugar's Quarterly Report on Form 10-Q for the quarter ended June 30, 1994 ("the September 1994 Form 10-Q") and incorporated herein by reference). |
| *10(b)(2) | Specimen of Imperial Sugar's Salary Continuation Agreement entered into with W.F. Schwer (previously filed as Exhibit 10(b)(3) to the September 1994 Form 10-Q and incorporated herein by reference). |
| *10(c)(1) | Imperial Holly Corporation Benefit Restoration Plan (as amended and restated effective August 1, 1994) (previously filed as Exhibit 10(c)(1) to the September 1994 Form 10-Q and incorporated herein by reference). |
| *10(c)(2) | Specimen of Imperial Sugar's Benefit Restoration Agreement entered into with W.F. Schwer (previously filed as Exhibit 10(c)(2) to the September 1994 Form 10-Q and incorporated herein by reference). |
| *10(d) | Imperial Holly Corporation Retirement Plan For Non-employee Directors (previously filed as Exhibit 10(j) to Imperial Sugar's Annual Report on Form 10-K for the year ended September 30, 1994 and incorporated herein by reference). |
| *10(e)(1) | Long-Term Incentive Plan of Reorganized Imperial Sugar Company (previously filed as Exhibit 10(f) to the 2001 Form 10-K and incorporated herein by reference). |
| 10(e)(2) | Specimen of Imperial Sugar Company Long Term Incentive Plan Non Qualified Stock Option Award Agreement. |
| 10(e)(3) | Specimen of Stock Appreciation Rights Agreement. |
| *10(f) | Stock Purchase Agreement, dated as of December 30, 2002, by and between Imperial Sugar Company and Hormel Foods Corporation (previously filed as Exhibit 10(g) to Imperial Sugar's 2002 Form 10-K and incorporated herein by reference). |
| 10(g) | Summary of Imperial Sugar Company Management Incentive Plan for fiscal 2004 and 2005. |
| *14 | Code of ethics (previously filed as Exhibit 14 to Imperial Sugar's Annual Report on Form 10-K for the year ending September 30, 2003 and incorporated herein by reference). |
| 21 | Subsidiaries of Imperial Sugar Company. |
| 23 | Consent of Independent Registered Public Accounting Firm. |
| 31.1 | Certification required by Rule 13a-14(a) or Rule 15d-14(a) under the Securities Exchange Act of 1934. |
| 31.2 | Certification required by Rule 13a-14(a) or Rule 15d-14(a) under the Securities Exchange Act of 1934. |
| 32 | Certification required by Rule 13a-14(b) or Rule 15d-14(b) under the Securities Exchange Act of 1934 and 18 U.S.C. Section 1350. |

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized, on December 8, 2004.

IMPERIAL SUGAR COMPANY

By:      /s/   ROBERT A. PEISER
_____
Robert A. Peiser
*President and Chief Executive Officer*

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities indicated on December 8, 2004.

| Signature | Title |
|---|---|
| /s/   ROBERT A. PEISER <br> Robert A. Peiser | Director, President and Chief Executive Officer <br> (Principal Executive Officer) |
| /s/   DARRELL D. SWANK <br> Darrell D. Swank | Senior Vice President and Chief Financial Officer <br> (Principal Financial Officer) |
| /s/   H.P. MECHLER <br> H. P. Mechler | Vice President-Accounting and Finance <br> (Principal Accounting Officer) |
| /s/   JAMES J. GAFFNEY <br> James J. Gaffney | Chairman of the Board of Directors |
| /s/   CURTIS G. ANDERSON <br> Curtis G. Anderson | Director |
| /s/   GAYLORD O. COAN <br> Gaylord O. Coan | Director |
| /s/   YVES-ANDRE ISTEL <br> Yves-Andre Istel | Director |
| /s/   ROBERT J. MCLAUGHLIN <br> Robert J. McLaughlin | Director |
| /s/   JAMES A. SCHLINDWEIN <br> James A. Schlindwein | Director |
| /s/   JOHN K. SWEENEY <br> John K. Sweeney | Director |

32

## REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To the Board of Directors and Shareholders of
Imperial Sugar Company
Sugar Land, Texas

We have audited the accompanying consolidated balance sheets of Imperial Sugar Company and subsidiaries (the "Company") as of September 30, 2004 and 2003, and the related consolidated statements of operations, shareholders' equity and cash flow for each of the three years in the period ended September 30, 2004. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, such consolidated financial statements present fairly, in all material respects, the financial position of the Company as of September 30, 2004 and 2003, and the results of its operations and its cash flows for each of the three years in the period ended September 30, 2004 in conformity with accounting principles generally accepted in the United States of America.

DELOITTE & TOUCHE LLP

Houston, Texas
December 3, 2004

33

**IMPERIAL SUGAR COMPANY AND SUBSIDIARIES**
**CONSOLIDATED BALANCE SHEETS**

|  | September 30, | |
|---|---|---|
|  | 2004 | 2003 |
|  | (In Thousands of Dollars) | |
| **ASSETS** | | |
| Current Assets: | | |
| Cash and Temporary Investments | $ 2,514 | $ 6,246 |
| Marketable Securities | 1,688 | 2,280 |
| Accounts Receivable, Net | 74,883 | 66,074 |
| Inventories: | | |
| Finished Products | 96,506 | 89,558 |
| Raw and In-process Materials | 55,261 | 70,125 |
| Supplies | 10,155 | 9,398 |
| Total Inventory | 161,922 | 169,081 |
| Deferred Costs and Prepaid Expenses | 5,824 | 9,813 |
| Assets Held for Sale | 372 | 3,783 |
| Total Current Assets | 247,203 | 257,277 |
| Other Investments | 2,002 | 10,455 |
| Property, Plant and Equipment—Net | 138,136 | 134,931 |
| Deferred Income Taxes—Net | 23,887 | — |
| Other Assets | 4,582 | 15,503 |
| Total | $415,810 | $418,166 |
| **LIABILITIES AND SHAREHOLDERS' EQUITY** | | |
| Current Liabilities: | | |
| Accounts Payable—Trade | $ 77,849 | $ 86,671 |
| Short-Term Borrowings | — | 3,097 |
| Current Maturities of Long-Term Debt | 5,334 | 26,525 |
| Other Current Liabilities | 33,647 | 40,516 |
| Total Current Liabilities | 116,830 | 156,809 |
| Long-Term Debt —Net of Current Maturities | 6,707 | 10,975 |
| Deferred Employee Benefits and Other Liabilities | 116,072 | 128,969 |
| Commitments and Contingencies | | |
| Shareholders' Equity: | | |
| Preferred Stock, Without Par Value, Issuable in Series; 5,000,000 Shares Authorized, None Issued | — | — |
| Common Stock, Without Par Value; 50,000,000 Shares Authorized; 10,373,700 and 10,047,500 Shares Issued and Outstanding at September 30, 2004 and 2003 | 109,241 | 96,414 |
| Retained Earnings | 101,574 | 86,610 |
| Accumulated Other Comprehensive (Loss) | (34,614) | (61,611) |
| Total Shareholders' Equity | 176,201 | 121,413 |
| Total | $415,810 | $418,166 |

See notes to consolidated financial statements.

34

**IMPERIAL SUGAR COMPANY AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF OPERATIONS**

| | Year Ended September 30, | | |
|---|---|---|---|
| | 2004 | 2003 | 2002 |
| | (In Thousands of Dollars, Except Share and Per Share Amounts) | | |
| Net Sales | $ 963,641 | $ 1,110,811 | $ 1,104,904 |
| Cost of Sales | 884,466 | 1,030,044 | 1,034,208 |
| Selling, General and Administrative Expense | 41,184 | 52,670 | 53,930 |
| Discount on Receivables Sold | — | 1,930 | 2,717 |
| Depreciation | 14,166 | 16,710 | 14,557 |
| Loss (Gain) on Asset Sales, Impairment and Other Costs | 328 | 1,489 | (23,995) |
| Total Costs and Expenses | 940,144 | 1,102,843 | 1,081,417 |
| Operating Income | 23,497 | 7,968 | 23,487 |
| Interest Expense, Net | (5,119) | (4,239) | (22,288) |
| Change in Fair Value of Interest Rate Swaps | 138 | (621) | 1,236 |
| Costs Associated with Debt Repaid | — | (4,617) | — |
| Other Income—Net | 1,579 | 4,315 | 1,610 |
| Income from Continuing Operations Before Income Taxes | 20,095 | 2,806 | 4,045 |
| Provision for Income Taxes | 5,131 | 839 | 5,316 |
| Income (Loss) from Continuing Operations | 14,964 | 1,967 | (1,271) |
| Income from Discontinued Operations | — | 74,690 | 17,688 |
| Net Income | $ 14,964 | $ 76,657 | $ 16,417 |
| Basic Earnings (Loss) per Share of Common Stock: | | | |
| Income (Loss) from Continuing Operations | $ 1.46 | $ 0.20 | $ (0.13) |
| Income from Discontinued Operations | — | 7.46 | 1.77 |
| Net Income | $ 1.46 | $ 7.66 | $ 1.64 |
| Diluted Earnings (Loss) per Share of Common Stock: | | | |
| Income (Loss) from Continuing Operations | $ 1.38 | $ 0.19 | $ (0.13) |
| Income from Discontinued Operations | — | 7.25 | 1.77 |
| Net Income | $ 1.38 | $ 7.44 | $ 1.64 |
| Weighted Average Shares Outstanding | 10,234,958 | 10,013,400 | 10,000,000 |

See notes to consolidated financial statements.

35

**IMPERIAL SUGAR COMPANY AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF CHANGES IN SHAREHOLDERS' EQUITY**

| | Shares of Common Stock | Common Stock | Retained Earnings | Accumulated Other Comprehensive Income (Loss) | Total |
|---|---|---|---|---|---|
| | | | (In Thousands of Dollars) | | |
| BALANCE September 30, 2001 | 10,000,000 | $ 90,000 | $ (6,464) | $ (3,879) | $ 79,657 |
| Comprehensive Income: | | | | | |
| Net Income | | | 16,417 | | 16,417 |
| Change in Unrealized Securities Gains(1) | | | | 48 | 48 |
| Change in Derivative Fair Value(1) | | | | 13,440 | 13,440 |
| Recognition of Deferred Gains in Net Income(1) | | | | (5,278) | (5,278) |
| Change in Minimum Pension Liability(1) | | | | (11,340) | (11,340) |
| Total Comprehensive Income | | | | | 13,287 |
| Tax Benefit Realized from Pre-fresh Start Net Deferred Tax Asset | | 5,316 | | | 5,316 |
| BALANCE September 30, 2002 | 10,000,000 | 95,316 | 9,953 | (7,009) | 98,260 |
| Comprehensive Income: | | | | | |
| Net Income | | | 76,657 | | 76,657 |
| Change in Unrealized Securities Gains(1) | | | | (28) | (28) |
| Change in Derivative Fair Value(1) | | | | 221 | 221 |
| Recognition of Deferred Gains in Net Income(1) | | | | (5,218) | (5,218) |
| Change in Minimum Pension Liability(1) | | | | (49,577) | (49,577) |
| Total Comprehensive Income | | | | | 22,055 |
| Tax Benefit Realized from Pre-fresh Start Net Deferred Tax Asset | | 839 | | | 839 |
| Stock Options Exercised | 47,500 | 259 | | | 259 |
| BALANCE September 30, 2003 | 10,047,500 | 96,414 | 86,610 | (61,611) | 121,413 |
| Comprehensive Income: | | | | | |
| Net Income | | | 14,964 | | 14,964 |
| Change in Unrealized Securities Gains (Net of Tax of $5) | | | | (10) | (10) |
| Change in Derivative Fair Value (Net of Tax of $826) | | | | (1,534) | (1,534) |
| Recognition of Deferred Gains in Net Income (Net of Tax of $1,020) | | | | 1,897 | 1,897 |
| Change in Minimum Pension Liability (Net of Tax of $2,736) | | | | 5,080 | 5,080 |
| Reversal of Valuation Allowance for Deferred Tax Asset | | | | 21,564 | 21,564 |
| Total Comprehensive Income | | | | | 41,961 |
| Recognition of Pre-fresh Start Deferred Tax Asset | | 10,403 | | | 10,403 |
| Stock Options Exercised | 326,200 | 2,424 | | | 2,424 |
| BALANCE September 30, 2004 | 10,373,700 | $109,241 | $101,574 | $ (34,614) | $176,201 |

(1)  The tax effect of these items was zero.

See notes to consolidated financial statements.

36

**IMPERIAL SUGAR COMPANY AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF CASH FLOW**

| | Year Ended September 30, | | |
|---|---|---|---|
| | **2004** | **2003** | **2002** |
| | (In Thousands of Dollars) | | |
| **Operating Activities:** | | | |
| Net Income | $ 14,964 | $ 76,657 | $ 16,417 |
| Adjustments for Noncash and Nonoperating Items: | | | |
| Depreciation | 14,166 | 16,710 | 14,557 |
| Reclassification Adjustment from Accumulated Comprehensive Income to Net Income | 1,897 | (5,218) | (5,278) |
| Cash Settlement of Derivatives | (1,534) | 221 | 10,878 |
| Change in Fair Value of Interest Rate Swaps | (138) | 621 | (1,236) |
| Loss(Gain) on Sales of Assets | 328 | (2,870) | (23,995) |
| Deferred Income Taxes | 4,855 | 839 | 5,316 |
| Impairment Loss | — | 4,269 | — |
| Write Off Deferred Debt Costs | — | 2,420 | — |
| Gain on Sales of Discontinued Operations | — | (69,824) | (2,528) |
| Income from Discontinued Operations | — | (4,866) | (17,688) |
| Gain on Sale of Securities | — | — | (72) |
| Other | 2,524 | 1,547 | 3,085 |
| Changes in Operating Assets and Liabilities (Excluding Operating Assets and Liabilities Sold in Dispositions): | | | |
| Accounts Receivables | (5,340) | 7,910 | 7,456 |
| Inventories | 7,158 | (29,950) | (6,013) |
| Deferred Costs and Prepaid Expenses | 4,129 | 609 | 607 |
| Accounts Payable—Trade | (8,823) | 23,771 | (11,611) |
| Other Liabilities | (11,127) | (7,527) | (8,601) |
| Net Cash Provided by (Used in) Continuing Operations | 23,059 | 15,319 | (18,706) |
| Net Cash Provided by Discontinued Operations | — | 5,693 | 21,836 |
| Net Cash Provided by Operations | 23,059 | 21,012 | 3,130 |
| **Investing Activities:** | | | |
| Capital Expenditures—Continuing Operations | (18,259) | (15,999) | (11,761) |
| Capital Expenditures—Discontinued Operations | — | (155) | (2,873) |
| Investment in Marketable Securities | (1,649) | (1,943) | (2,468) |
| Proceeds from Sale of Marketable Securities | — | — | 835 |
| Proceeds from Maturity of Marketable Securities | 2,199 | 2,181 | 1,519 |
| Proceeds from Sales of Assets | 3,874 | 13,855 | 67,191 |
| Proceeds from Sales of Discontinued Operations | — | 139,923 | — |
| Proceeds from Collection of Note Receivable | 13,081 | — | — |
| Other | 95 | (3,282) | (1,235) |
| Investing Cash Flow | (659) | 134,580 | 51,208 |
| **Financing Activities:** | | | |
| Short-Term Borrowings: | | | |
| CCC Borrowings—Advances | — | — | 34,268 |
| CCC Borrowings—Repayments | — | — | (34,268) |
| Other Short-Term Borrowings—Net | (3,097) | 348 | 2,913 |
| Borrowings (Repayment) of Revolving Credit—Net | 3,250 | (25,040) | — |
| Borrowings of Long-Term Debt | — | 35,000 | (32,253) |
| Repayment of Long-Term Debt | (28,709) | (128,530) | (26,444) |
| Stock Option Proceeds | 2,424 | 259 | — |
| Repurchase of Accounts Receivable | — | (37,268) | — |
| Financing Cash Flow | (26,132) | (155,231) | (55,784) |

| | | | |
|---|---|---|---|
| Increase (Decrease) in Cash and Temporary Investments | (3,732) | 361 | (1,446) |
| Cash and Temporary Investments, Beginning of Period | 6,246 | 5,885 | 7,331 |
| Cash and Temporary Investments, End of Period | $ 2,514 | $ 6,246 | $ 5,885 |

See notes to consolidated financial statements.

37

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
September 30, 2004, 2003, and 2002

## 1. ACCOUNTING POLICIES

*The Company*

The consolidated financial statements include the accounts of Imperial Sugar Company and its wholly owned subsidiaries (the "Company"). All significant intercompany balances and transactions have been eliminated. The Company operates its business as one domestic segment—the production and sale of refined sugar and related products. The Company sold a significant portion of its foodservice business in December 2002, as discussed in Note 13, and has reported the results of that business as discontinued operations.

*Business Risks*

The Company is significantly affected by market factors, including demand for and price of refined sugar and raw cane sugar. These market factors are influenced by a variety of external forces, including the number of domestic acres contracted to grow sugar cane and sugarbeets, prices of competing crops, domestic health and eating trends, competing sweeteners, weather conditions and United States farm and trade policy. Federal legislation and regulations provide for mechanisms designed to support the price of domestic sugar crops, principally through the limitations on importation of raw cane sugar for domestic consumption and marketing allotments. In addition, agricultural conditions in the Company's growing areas may materially affect the quality and quantity of sugarbeets available for purchase as well as the unit costs of raw materials and processing.

A significant portion of the Company's industrial sales are made under fixed price, forward sales contracts, which extend up to one year. The Company also contracts to purchase raw cane sugar substantially in advance of the time it delivers the refined sugar produced from the purchase. To mitigate its exposure to future price changes, the Company attempts to manage the volume of refined sugar sales contracted for future delivery in relation to the volume of raw cane sugar contracted for future receipt, when feasible. Additionally, the Company utilizes a participatory sugarbeet purchase contract, described below, which relates the cost of sugarbeets to the net selling price realized on refined beet sugar sales.

*Use of Estimates*

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires estimates and assumptions that affect the reported amounts as well as certain disclosures. The Company's financial statements include amounts that are based on management's best estimates and judgments. Actual results could differ from those estimates.

*Fresh Start Accounting*

On August 29, 2001, Imperial Sugar and substantially all of its subsidiaries emerged from protection under the U.S. Bankruptcy Code, under which they filed for relief in January 2001. Under the plan of reorganization, old common stock was canceled, bondholders and some trade creditors received 98% of the stock of the reorganized company and some creditors received reduced cash and deferred payment settlements. The Company applied reorganization and fresh start accounting adjustments to the consolidated balance sheet as of August 29, 2001. Under fresh start accounting, a new reporting entity is considered to be created and the recorded amounts of assets and liabilities are adjusted to reflect their estimated fair values at the date fresh start accounting is applied.

*Cash and Temporary Investments*

Temporary investments consist of short-term, highly liquid investments with maturities of 90 days or less at the time of purchase.

38

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)
September 30, 2004, 2003 and 2002

*Marketable Securities*

All of the Company's marketable securities are classified as "available for sale", and accordingly are reflected in the Consolidated Balance Sheet at fair market value, with the aggregate unrealized gain, net of related deferred tax liability, included as a separate component of comprehensive income within shareholders' equity. Cost for determining gains and losses on sales of marketable securities is determined on the FIFO method.

*Trade Receivables*

The Company accounts for trade receivables balances net of allowances for doubtful accounts. The allowance balance is determined on an overall percentage basis of historical bad debts and a review of individual credit exposures. Trade receivables are held to maturity.

*Advertising and Promotion*

Cost of developing and distributing advertisements are expensed as incurred. Coupon redemptions are estimated based on historical redemption rates and accrued for during the coupon distribution period. Advertising expenses are reported in Selling, General and Administrative Expense. Customer advertising reimbursements and other customer promotional activities are accrued as the related sales are made and recorded as reductions of Net Sales.

*Inventories*

Inventories are stated at the lower of cost or market. Cost of sugar is determined under the last-in, first-out ("LIFO") method. All other costs are determined under the first-in, first-out ("FIFO") or average method. Pursuant to the application of fresh start accounting, the current cost of inventory at August 29, 2001, became the LIFO base layer. LIFO inventories at September 30, 2004 and 2003 approximated current cost. Supplies inventory includes operating and packaging supplies as well as maintenance parts utilized in the Company's manufacturing operations.

*Sugarbeets Purchased*

Payments to growers for sugarbeets are based in part upon the Company's average net selling price for sugar sold (as defined in the participating contracts with the growers) during the grower contract years, ending either February 28 or June 30. The contracts provide for a variable purchase price which effectively results in the sharing of the net selling price (gross sales price less certain marketing costs, including packaging costs, brokerage, freight expense and amortization of costs for certain facilities used in connection with marketing) with growers. Sugarbeet purchases are recorded upon receipt, and a liability is established for estimated additional amounts to be paid to growers based on the average net return realized for sugar sold in each of the contract years through September 30. The final cost of sugarbeets cannot be determined until the end of the contract year for each growing area.

*Revenue Recognition*

The Company recognizes revenues when products are shipped under contract terms or approved purchase orders at stated prices and all significant obligations of the Company have been satisfied. Risk of loss passes at time of shipment. Provisions are made for estimated returns and estimated credit losses.

39

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)
September 30, 2004, 2003 and 2002

*Hedge Accounting*

The Company uses raw sugar futures and options in its raw sugar purchasing programs and uses natural gas futures, options and basis swaps to hedge natural gas purchases used in its manufacturing operations. The Company applies the hedge accounting provisions of Statement of Financial Accounting Standards No. 133, "Accounting for Derivative Instruments and Hedging Activity" for these cash flow hedge instruments. Eligible gains and losses on raw sugar futures and options are deferred and recognized as part of the cost of inventory purchases and charged or credited to cost of sales as such inventory is sold. Eligible gains and losses on natural gas futures, options and basis swaps are deferred and recognized as part of the cost of the natural gas purchases and charged to cost of sales in the period the forecasted purchase occurs.

*Manufacturing Costs Prior to Production*

Certain manufacturing costs incurred between processing periods which are necessary to prepare each factory for the next processing campaign are deferred and allocated ratably during the next campaign to the cost of sugar produced in that campaign. At September 30, 2004 and 2003, such amounts included in deferred costs and prepaid expenses were $0.3 million and $1.2 million.

*Property and Depreciation*

Property is stated at cost and includes expenditures for renewals and improvements and capitalized interest. Maintenance and repairs are charged to current operations. The Company capitalizes certain costs in connection with the development of internal-use computer software. When property is retired or otherwise disposed of, the cost and related accumulated depreciation are removed from the respective accounts, and any gain or loss on disposition is included in income.

Depreciation is provided principally on the straight-line method over the estimated service lives of the assets. In general, buildings are depreciated over 10 to 20 years, machinery, equipment and software over 3 to 10 years.

*Impairment of Long-Lived Assets*

Long-lived assets to be held and used are reviewed for impairment whenever events or changes in circumstances indicate that the carrying amount of such assets may not be recoverable. Determination of recoverability is based on an estimate of undiscounted future cash flows resulting from the use of the asset or its disposition. Measurement of an impairment loss for long-lived assets and certain identifiable intangible assets that management expects to hold and use are based on the fair value of the asset. Long-lived assets and certain identifiable intangible assets to be disposed of are reported at the lower of carrying amount or fair value, less cost to sell.

*Interest Rate Swap Agreements*

Interest rate swap agreements are recorded at market value. The differential paid or received on interest rate swap agreements is recognized as an increase or decrease in interest expense. The Company does not use these instruments for trading purposes, rather it uses them to hedge the impact of interest rate fluctuations on floating rate debt.

*Fair Value of Financial Instruments*

The fair value of financial instruments is estimated based upon market trading information, where available. Absent published market values for an instrument, management estimates the fair value of long-term debt based on quotations from broker/dealers or interest rate information for similar instruments. The carrying amount of cash and temporary investments, accounts receivable, accounts payable, short-term borrowings and other current liabilities approximates fair value because of the short maturity and/or frequent repricing of those instruments.

40

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

September 30, 2004, 2003 and 2002

*Federal Income Taxes*

Federal income tax expense includes the current tax obligation or benefit and the change in deferred income tax liability for the period. Deferred income taxes result from temporary differences between financial and tax bases of certain assets and liabilities. The Company evaluates the realizability of deferred tax assets quarterly.

*Environmental Matters*

The Company provides for environmental remediation costs based on estimates of known environmental remediation exposure when such amounts are probable and estimable. Ongoing environmental compliance costs, including maintenance and monitoring costs, are expensed as incurred. Capital costs incurred to prevent future environmental contamination are capitalized.

*Accounting Pronouncements*

In 2003, the Financial Accounting Standards Board revised Financial Accounting Standard No. 132, "Employers' Disclosures About Pensions and Other Postretirement Benefits" ("SFAS 132"). The revised statement requires additional disclosures to those in the original Statement 132 about the assets, obligations, cash flows, and net periodic benefit cost of defined benefit pension plans and other defined benefit postretirement plans and provides for later effective dates for certain provisions in the statement. The Company has adopted this revised statement effective October 1, 2003, and has provided the additional disclosures required by SFAS 132 in Note 8.

In December 2003, the FASB issued Interpretation No. 46R, a revision to FIN 46, "Consolidation of Variable Interest Entities", which requires the consolidation of variable interest entities, as defined. The updated pronouncement provided clarification of guidance surrounding the application of FIN 46. This statement does not have a material effect on the Company's financial position or results of operations as the Company does not have a variable interest entity.

*Stock Based Compensation*

As permitted by Statement of Financial Accounting Standards No. 123, "Accounting for Stock-Based Compensation" as amended by SFAS 148, the Company measures compensation cost using the intrinsic value method prescribed in by Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to Employees." The Company's reported net income and net income per share would have been different had compensation cost for the Company's stock-based compensation plans been determined using the fair value method of accounting as shown in the pro forma amounts below:

| | Year Ended September 30, | | |
| --- | --- | --- | --- |
| | 2004 | 2003 | 2002 |
| Net Income, as Reported | $14,964 | $76,657 | $16,417 |
| Deduct: Total Stock-based Employee Compensation: | | | |
| Expense Determined Under Fair Value Based Method | (467) | (403) | (489) |
| Pro Forma Net Income | $14,497 | $76,254 | $15,928 |
| Net Income Per Share, Basic: | | | |
| As Reported | $ 1.46 | $ 7.66 | $ 1.64 |
| Pro Forma | $ 1.42 | $ 7.62 | $ 1.59 |
| Net Income Per Share, Diluted: | | | |
| As Reported | $ 1.38 | $ 7.44 | $ 1.64 |
| Pro Forma | $ 1.34 | $ 7.40 | $ 1.59 |

41

**IMPERIAL SUGAR COMPANY AND SUBSIDIARIES**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)**
September 30, 2004, 2003 and 2002

For purpose of estimating the fair value of options on their date of grant, the Black-Scholes option-pricing model was used with the following assumptions:

| | |
|---|---|
| Expected Stock Price Volatility | 3.0-6.5% |
| Risk-free Interest Rate | 2.5-4.2% |
| Expected Life of Options | 5.0 |

## 2. MARKETABLE SECURITIES AND OTHER INVESTMENTS

The Company's marketable securities at September 30, 2004 consisted of U.S. Government securities, maturing in 2005, which are pledged to secure certain insurance obligations.

Other investments at September 30, 2004 consist principally of a limited partnership interest in a company which owns an interest in a fuel oil terminal in the Port of Houston and the Company's royalty interest in a coal seam methane gas project, which is accounted for at amortized cost. The Company sold the royalty interest in November 2004 for approximately $2.0 million.

## 3. ACCOUNTS RECEIVABLE

Accounts receivable are reported net of an allowance for credit losses of $1.4 million at September 30, 2004 and $1.6 million at September 30, 2003. The provision for credit losses charged to selling, general and administrative expenses was $0.1 million in fiscal 2004, $1.1 million in fiscal 2003, and $0.6 million in fiscal 2002.

The Company previously had a receivable securitization facility which provided for the sale of accounts receivable at discounted amounts. The facility was terminated in conjunction with the refinancing of the Company's senior bank debt in December 2002.

## 4. PROPERTY, PLANT AND EQUIPMENT

Property, plant and equipment consisted of the following (in thousands of dollars):

| | September 30, | |
|---|---|---|
| | 2004 | 2003 |
| Land | $ 14,585 | $ 15,029 |
| Buildings, Machinery and Equipment | 158,580 | 136,056 |
| Construction in Progress | 7,094 | 11,890 |
| Total | 180,259 | 162,975 |
| Less Accumulated Depreciation | (42,123) | (28,044) |
| Property, Plant and Equipment—Net | $138,136 | $134,931 |

## 5. SHORT-TERM BORROWINGS

From time to time, the Company may borrow short-term from the Commodity Credit Corporation ("CCC") under the USDA's price support loan program. CCC borrowings, which mature September 30 each year, are secured by refined beet sugar inventory and are nonrecourse to the Company. The Company had no borrowings from the CCC in fiscal year 2004 or 2003.

42

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)
September 30, 2004, 2003 and 2002

## 6. LONG-TERM DEBT

Long-term debt was as follows (in thousands of dollars):

|  | September 30, | |
|---|---|---|
|  | 2004 | 2003 |
| Senior Bank Debt: | | |
| Revolving Credit Loans | $ 3,250 | $ — |
| Term Loans | — | 24,667 |
| Industrial Revenue Bonds | 1,500 | 3,680 |
| Non-interest Bearing Notes | 7,291 | 9,153 |
| Total Long-term Debt | 12,041 | 37,500 |
| Less Current and Deemed Current Maturities | 5,334 | 26,525 |
| Long-term Debt, Net | $ 6,707 | $10,975 |

In December 2002, the Company entered into a $175 million Senior Secured Credit Facility. The facility consisted of a three-year $140 million (subject to borrowing base calculation) senior secured revolving credit facility ("Revolver") and a three-year $35 million term loan ("Term Loan"). The funds from the borrowing along with the proceeds of the sale of the majority of the foodservice business were used to repay existing senior bank debt, repurchase accounts receivable from the Company's accounts receivable securitization facility, and pay related fees and expenses associated with these transactions.

In fiscal 2004, the Company repaid in full the Term Loan and entered into an amendment to the facility which, among other things, eliminated the minimum fixed charge coverage ratio and provided additional capital structure flexibility.

The facility was secured by all of the Company's assets and all subsidiaries of the Company are borrowers or guarantors under the facility. The agreement contained financial covenants which required maintenance of a minimum EBITDA level, as defined in the agreement. The Company was in compliance with these covenants as of September 30, 2004.

Interest rates on the term loan were LIBOR plus a margin of 2.75% to 3.50% or prime plus 0.25% to 1.00%. Interest rates on the revolver were LIBOR plus 2.25% to 3.00% or prime plus zero to 0.50%.

Although the final maturity of the Revolver was December 31, 2005, the Company classified debt under the Senior Secured Credit Facility as current, pursuant to Emerging Issues Task Force Issue 95-22. The agreement contains a subjective acceleration clause which can be exercised, if, in the opinion of the lender, there is a material adverse effect, and provides the lenders direct access to our cash receipts. At September 30, 2004, the carrying amount of the Company's debt approximates fair value.

In December 2004, the Company amended the Revolver to provide for a senior secured revolving credit facility (" New Revolver") providing for loans of up to $125 million (subject to a borrowing base and seasonal borrowing limit adjustments). This facility will be used to finance various ongoing capital needs of the Company as well as for other general corporate purposes. The New Revolver matures on December 31, 2008 and will have no financial covenants so long as average total liquidity (defined as the average of the borrowing base, less average actual borrowings and letters of credit) exceeds $20 million; otherwise a minimum EBITDA test would apply. The New Revolver limits our ability to pay dividends, if our average total liquidity, after adjustment on a pro forma basis for such payment, is less than $20 million.

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

September 30, 2004, 2003 and 2002

The remaining industrial revenue bond has a fixed interest rate of 6.4% with a maturity date of 2017.

Pursuant to the Plan of Reorganization, the non-interest bearing notes were issued to certain former employees and directors who were participants in non-qualified pension and deferred compensation plans. The notes require quarterly payments aggregating $0.7 million through August 2007. The notes have been recorded on a discounted basis at a 12% rate of interest.

Aggregate scheduled maturities of long-term debt at September 30, 2004, is as follows (in thousands of dollars):

|  | Senior Bank Debt | Other | Total |
|---|---|---|---|
| Fiscal 2005 | $ 3,250 | $2,084 | $ 5,334 |
| Fiscal 2006 | — | 2,346 | 2,346 |
| Fiscal 2007 | — | 2,861 | 2,861 |
| Fiscal 2008 | — | — | — |
| Fiscal 2009 | — | — | — |
| Thereafter | — | 1,500 | 1,500 |
|  | $ 3,250 | $8,791 | $12,041 |

Cash paid for interest on short and long-term debt was $3.3 million for the year ended September 30, 2004, $5.0 million for the year ended September 30, 2003, and $22.2 million for the year ended September 30, 2002. Interest capitalized as part of the cost of constructing assets was $0.4 million for the year ended September 30, 2004, $0.2 million for the year ended September 30, 2003, and $0.3 million for the year ended September 30, 2002. In fiscal 2003, the Company received a refund of approximately $2.1 million of previously paid interest related to the repayment of the old bank debt, which was recorded as a reduction of interest expense.

## 7. INCOME TAXES

The components of the consolidated income tax provision (credit), were as follows (in thousands of dollars):

|  | Year Ended September 30, | | |
|---|---|---|---|
|  | 2004 | 2003 | 2002 |
| Federal: |  |  |  |
| Current | $ — | $ — | $ — |
| Deferred | 6,772 | 837 | 4,963 |
| State | 276 | 2 | 353 |
| Total Before Valuation Allowance | 7,048 | 839 | 5,316 |
| Valuation Allowance—Post-Fresh Start | (1,917) | — | — |
| Total | $ 5,131 | $ 839 | $5,316 |

44

**IMPERIAL SUGAR COMPANY AND SUBSIDIARIES**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)**
**September 30, 2004, 2003 and 2002**

The consolidated income tax provision is different from the amount which would be provided by applying the statutory federal income tax rate of 35% to the Company's income before taxes. The reasons for the differences from the statutory rate are as follows (in thousands of dollars):

| | Year Ended September 30, | | |
|---|---|---|---|
| | **2004** | **2003** | **2002** |
| Income Taxes Computed at the Statutory Federal Rate | $ 7,033 | $ 27,124 | $ 7,607 |
| State Income Taxes | 180 | 1 | 229 |
| Basis Difference on Sale of Subsidiaries' Stock | — | (26,673) | (3,114) |
| Other | (165) | 387 | 594 |
| Valuation Allowance—Post-Fresh Start | (1,917) | — | — |
| Total Before Extraordinary Item | $ 5,131 | $ 839 | $ 5,316 |

Income taxes paid were $0.3 million, $1.3 million and $0.4 million in fiscal 2004, 2003 and 2002, respectively.

The tax effects of temporary differences which give rise to the Company's deferred tax assets and liabilities were as follows (in thousands of dollars):

| | September 30, 2004 | | | September 30, 2003 | | |
|---|---|---|---|---|---|---|
| | **Assets** | **Liabilities** | **Total** | **Assets** | **Liabilities** | **Total** |
| Current: | | | | | | |
| Inventory Valuation Differences, Principally Fresh Start Accounting | | $(12,542) | $(12,542) | | $(12,629) | $(12,629) |
| Manufacturing Costs Prior to Production Deducted Currently | | (101) | (101) | | (404) | (404) |
| Accruals Not Currently Deductible | $ 2,854 | — | 2,854 | $ 3,277 | — | 3,277 |
| Other | 1,077 | — | 1,077 | 1,224 | — | 1,224 |
| Total Current | 3,931 | (12,643) | (8,712) | 4,501 | (13,033) | (8,532) |
| Noncurrent: | | | | | | |
| Depreciation Differences, Including Fresh Start Accounting | — | (18,364) | (18,364) | — | (12,140) | (12,140) |
| Pensions | 28,451 | — | 28,451 | 33,763 | | 33,763 |
| Accruals Not Currently Deductible | 12,637 | — | 12,637 | 13,759 | — | 13,759 |
| Operating Loss Carryforwards | 8,361 | — | 8,361 | 5,171 | — | 5,171 |
| Other | 1,514 | — | 1,514 | 1,638 | — | 1,638 |
| Total Noncurrent | 50,964 | (18,364) | 32,599 | 54,331 | (12,140) | 42,191 |
| Total | $54,895 | $(31,008) | 23,887 | $58,832 | $(25,173) | 33,659 |
| Valuation Allowance | | | — | | | (33,659) |
| Net | | | $ 23,887 | | | $ 0 |

The Company has net operating loss ("NOL") carryforwards of $24.2 million which expire in 2020 through 2023.

45

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

September 30, 2004, 2003 and 2002

Previously, the valuation allowance reduced deferred tax assets to the amount that the Company believed was most likely to be realized. Due to the recent history of operating profits, the Company believes a valuation allowance for the net deferred tax asset balance is no longer required and reversed the remaining balance in fiscal 2004. The reversal of the valuation allowance resulted in a reduction of current income tax expense of $1.9 million for the post-fresh start portion and an adjustment of $21.5 million to accumulated other comprehensive income. The remaining $10.4 million of the reversal related to the pre-fresh start period was recorded as a credit to common stock, in accordance with fresh start accounting requirements.

## 8. EMPLOYEE BENEFITS

### Defined Benefit Pension Plans and Postretirement Benefits Other Than Pensions

Substantially all of the Company's nonseasonal employees are covered by retirement plans. In 2003, a number of changes were made which affected retirement plans, including the sale of a portion of our foodservice operation and sale of beet sugar plants, the closing of the Sugar Land refinery and the freezing of benefits under the salaried plan. Certain unionized employees previously employed at the Company's Sugar Land, Texas refinery were covered by a multi-employer plan, and other employees are covered by Company-sponsored defined benefit plans. Under the Company-sponsored defined benefit plans, retirement benefits are primarily a function of years of service and the employee's compensation for a defined period of employment. The Company funds pension costs at an actuarially determined amount based on normal cost and the amortization of prior service costs, gains, and losses over the remaining service periods. Additionally, the Company previously provided a supplemental non-qualified, unfunded pension plan for certain officers whose benefits under the qualified plan are limited by federal tax law as well as a non-qualified retirement plan for non-employee directors, which provided benefits based upon years of service as a director and the retainer in effect at the date of a director's retirement. Certain of the Company's employees are covered by benefit plans that provide postretirement health care and life insurance benefits to employees who meet the applicable eligibility requirements. The Company's actuary prepares a valuation as of June 30 each year.

46

**IMPERIAL SUGAR COMPANY AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)**

**September 30, 2004, 2003 and 2002**

The following tables present the benefit obligation, changes in plan assets, the funded status of the pension plans and the assumptions used (in thousands of dollars):

| | Pension Benefits | | |
|---|---|---|---|
| | Year Ended September 30, | | |
| | **2004** | **2003** | **2002** |
| **Change in Benefit Obligation:** | | | |
| Benefit Obligation at Beginning of Period | $247,116 | $229,077 | $247,987 |
| Service Cost | 1,300 | 3,553 | 5,707 |
| Interest Cost | 14,317 | 15,445 | 16,629 |
| Amendments | 311 | 1,073 | 141 |
| Actuarial (Gain)/Loss | (3,151) | 38,433 | (8,704) |
| Disposition of Business Units | — | (1,628) | (10,557) |
| Expenses Paid | (1,516) | (1,740) | (1,392) |
| Benefits Paid | (17,626) | (16,088) | (17,816) |
| Curtailment and Other | — | (21,009) | (2,918) |
| Benefits Obligation at End of Period | $240,751 | $247,116 | $229,077 |
| **Change in Plan Assets:** | | | |
| Fair Value of Plan Assets at Beginning of Period | $155,165 | $171,858 | $216,703 |
| Actual Return on Plan Assets | 19,159 | 199 | (20,434) |
| Employer Contribution | 3,373 | 1,491 | 3,716 |
| Disposition of Business Units | — | (555) | (8,919) |
| Expenses Paid | (1,516) | (1,740) | (1,392) |
| Benefits Paid | (17,626) | (16,088) | (17,816) |
| Fair Value of Plan Assets at End of Period | $158,555 | $155,165 | $171,858 |
| Funded Status | $(82,196) | $(91,951) | $(57,219) |
| Unrecognized Actuarial Loss | 53,750 | 61,678 | 26,869 |
| Unrecognized Prior Service Cost | 1,411 | 1,203 | 141 |
| Adjustment for Fourth Quarter Contributions | 5,459 | 1,997 | 752 |
| Net Amount Recognized | $(21,576) | $(27,073) | $(29,457) |

47

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

September 30, 2004, 2003 and 2002

| | Postretirement Benefits Other Than Pensions | | |
|---|---|---|---|
| | Year Ended September 30, | | |
| | 2004 | 2003 | 2002 |
| Change in Benefit Obligation: | | | |
| Benefit Obligation at Beginning of Period | $ 17,718 | $ 24,806 | $ 42,076 |
| Service Cost | 21 | 117 | 141 |
| Interest Cost | 1,020 | 1,700 | 1,556 |
| Amendments | (3,305) | (11,218) | — |
| Actuarial Loss | 6,746 | 4,776 | 3,153 |
| Disposition of Business Units | — | — | (19,861) |
| Curtailment | — | (461) | (468) |
| Benefits Paid | (2,027) | (2,002) | (1,791) |
| Benefits Obligation at End of Period | $ 20,173 | $ 17,718 | $ 24,806 |
| Change in Plan Assets: | | | |
| Fair Value of Plan Assets at Beginning of Period | — | — | — |
| Employer Contribution | 2,027 | 2,002 | 1,791 |
| Benefits Paid | (2,027) | (2,002) | (1,791) |
| Fair Value of Plan Assets at End of Period | $ — | $ — | $ — |
| Funded Status | $ (20,173) | $ (17,718) | $ (24,806) |
| Unrecognized Actuarial Loss | 12,900 | 6,475 | 2,210 |
| Unrecognized Prior Service Cost | (13,676) | (11,218) | — |
| Adjustment for Fourth Quarter Contributions | 574 | 560 | 473 |
| Net Amount Recognized | $ (20,375) | $ (21,901) | $ (22,123) |

| | Pension Benefits September 30, | | Postretirement Benefits Other than Pensions September 30, | |
|---|---|---|---|---|
| | 2004 | 2003 | 2004 | 2003 |
| Amounts Recognized in the Statement of Financial Position Consist of: | | | | |
| Accrued Benefit Liability | $(76,086) | $(89,192) | $(20,375) | $(21,901) |
| Intangible Asset | 1,411 | 1,203 | — | — |
| Accumulated Other Comprehensive Income | 53,099 | 60,916 | — | — |
| Net Amount Recognized | $(21,576) | $(27,073) | $(20,375) | $(21,901) |

48

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

September 30, 2004, 2003 and 2002

The assumptions used and the annual cost related to these plans consist of the following:

| | Year Ended September 30, | | |
| --- | --- | --- | --- |
| | 2004 | 2003 | 2002 |
| **Pension Benefits** | | | |
| Weighted-average Assumptions: | | | |
| Discount Rate | 6.25% | 6.0% | 7.25% |
| Expected Return on Plan Assets | 8.0% | 9.0% | 9.0% |
| Rate of Compensation Increase | 4.0-5.0% | 4.0-5.0% | 4.0-5.0% |
| Components of Net Periodic Benefit Cost of Company-sponsored Plans: | | | |
| Service Cost | $ 1,300 | $ 3,553 | $ 5,707 |
| Interest Cost | 14,317 | 15,445 | 16,629 |
| Expected Return on Plan Assets | (14,840) | (17,515) | (18,057) |
| Amortization of Prior Service Cost | 103 | 12 | — |
| Recognized Actuarial Loss | 458 | 3 | — |
| Recognized Curtailment Gain | — | (84) | — |
| Total Net Periodic Benefit Cost—Company-sponsored Plans | 1,338 | 1,414 | 4,279 |
| Multi-employer Plan for Certain Unionized Employees | — | 339 | 596 |
| Total Pension Cost | 1,338 | 1,753 | $ 4,875 |

| | Year Ended September 30, | | |
| --- | --- | --- | --- |
| | 2004 | 2003 | 2002 |
| **Postretirement Benefits Other Than Pensions** | | | |
| Discount Rate Assumptions | 6.25% | 6.0% | 7.25% |
| Components of Net Periodic Benefit Cost: | | | |
| Service Cost | $ 21 | $ 117 | $ 141 |
| Interest Cost | 1,020 | 1,700 | 1,556 |
| Amortization of Prior Service Cost | (848) | — | — |
| Recognized Actuarial Loss | 321 | 50 | — |
| Net Periodic Benefit Cost | $ 514 | $1,867 | $1,697 |

Aggregated accumulated benefit obligations for all plans were $240.1 million and $246.4 million at September 30, 2004 and 2003, respectively. Accumulated benefit obligations were in excess of plan assets for all plans for both periods.

During fiscal 2003 the Company froze benefits under its salaried pension plan which, along with the reduction of participants resulting from the sale of Diamond Crystal Brands, was accounted for as a curtailment pursuant to Statement of Financial Accounting Standards No. 88. As a result of the curtailment, the projected benefit obligation for the salaried plan decreased; this actuarial gain was offset against existing unrecognized actuarial losses and no gain or loss was recognized in the statement of operations.

The Company also recorded a curtailment in the postretirement and pension plans during 2002 in connection with the reduction of active plan participants primarily resulting from the sale of business units.

49

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

September 30, 2004, 2003 and 2002

The assumed health care cost trend rate used in measuring the accumulated benefit obligation for postretirement benefits other than pensions as of September 30, 2004 was 10.0% for 2005. The rate was assumed to decrease gradually to 5.0% for 2013 and remain at that level thereafter. Assumed health care cost trend rates have a significant effect on the amounts reported for the health care plan. A one-percentage-point change in assumed health care cost trend rates would have the following effects:

|  | 1-Percentage Point Increase | 1-Percentage Point Decrease |
|---|---|---|
|  | (In Thousands of Dollars) | |
| Effect on Total Service and Interest Cost Components | $ 69 | $ (60) |
| Effective on Postretirement Benefit Obligation | 1,271 | (1,119) |

Pension plan contributions, which are based on regulatory requirements, totaled $6.8 million (including $3.0 million of required contributions) and $2.7 million during fiscal 2004 and 2003; contributions during fiscal 2005 are expected to be approximately $1.5 million.

Plan assets of the Company sponsored defined benefit pension plans at September 30, 2004 were invested in marketable securities. The Company's plan assets were allocated as follows:

| Asset Category | September 30, 2004 | | September 30, 2003 | |
|---|---|---|---|---|
|  | Actual | Target | Actual | Target |
| Intermediate Fixed Income | 30% | 30% | 20% | 20% |
| Large Cap Equity | 21% | 25% | 40% | 40% |
| Mid Cap Equity | 20% | 17.5% | 20% | 20% |
| Small Cap Equity | 19% | 17.5% | 20% | 20% |
| Hedge Fund | 5% | 5% | — | — |
| Real Estate Fund | — | 5% | — | — |
| Cash and Other | 5% | — | — | — |

**Estimated Future Benefit Payments**

The following benefit payments, which reflect expected future service, as appropriate, are expected to be paid:

| Fiscal Year Ending September 30, | Pension Benefits | Post Retirement Benefits Other Than Pensions |
|---|---|---|
|  | (In Thousands of Dollars) | |
| 2005 | $15,707 | $ 1,699 |
| 2006 | 14,953 | 1,722 |
| 2007 | 15,058 | 1,749 |
| 2008 | 15,346 | 1,759 |
| 2009 | 15,505 | 1,756 |
| Thereafter | $82,381 | $ 8,475 |

The assumed rate of return is based on the results of historical statistical return studies conducted by the Company's advisors. As a result of the re-allocation of assets in September 2003, the Company reduced its assumed long-term rate of return on plan assets from 9% to 8% for fiscal 2004.

50

**IMPERIAL SUGAR COMPANY AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)**

September 30, 2004, 2003 and 2002

*401(k) Plans*

Substantially all of the employees may elect to defer a portion of their annual compensation in the Company-sponsored 401(k) tax deferred savings plans. The Company makes matching contributions in some of these plans. The amount charged to expense for these plans for the period ended September 30, 2004 was $2.2 million, $1.2 million for the period ended September 30, 2003, and $0.5 million for the period ended September 30, 2002. The increase in 2004 and 2003 is primarily due to an increase in the Company matching formula.

## 9. SHAREHOLDERS' EQUITY

*Earnings per Share*

The following table presents information necessary to calculate basic and diluted earnings per share (in thousands of dollars, except per share amounts):

| | Year Ended September 30, | | |
|---|---|---|---|
| | **2004** | **2003** | **2002** |
| Income (Loss) from Continuing Operations: | $  14,964 | $  1,967 | $  (1,271) |
| Average Shares Outstanding | 10,234,958 | 10,013,400 | 10,000,000 |
| Effect of Incremental Shares Issuable from Assumed Exercise of Stock Options Under the Treasury Stock Method(1) | 609,375 | 291,451 | — |
| Adjusted Average Shares | 10,844,333 | 10,304,851 | 10,000,000 |
| Diluted EPS—Continuing Operations | $  1.38 | $  0.19 | $  (0.13) |
| Income from Discontinued Operations | — | 74,690 | 17,688 |
| Average Shares Outstanding | — | 10,013,400 | 10,000,000 |
| Effect of Incremental Shares Issuable from Assumed Exercise of Stock Options Under the Treasury Stock Method(1) | — | 291,451 | — |
| Adjusted Average Shares | — | 10,304,851 | 10,000,000 |
| Diluted EPS—Discontinued Operations | $  — | $  7.25 | $  1.77 |
| Net Income | 14,964 | 76,657 | 16,417 |
| Average Shares Outstanding | 10,234,958 | 10,013,400 | 10,000,000 |
| Effect of Incremental Shares Issuable from Assumed Exercise of Stock Options Under the Treasury Stock Method(1) | 609,375 | 291,451 | — |
| Adjusted Average Shares | 10,844,333 | 10,304,851 | 10,000,000 |
| Diluted EPS—Net Income | $  1.38 | $  7.44 | $  1.64 |

(1)  Securities excluded from the computation of diluted EPS for the year ended September 30, 2004, that could potentially dilute basic EPS in the future, were options to purchase 188,000 shares, to be issued under the Company's long-term incentive plan.

The Company has a long-term incentive plan which provides for the granting to management of options to purchase up to 1,453,456 shares of common stock. The plan provides for the granting of incentive awards in the form of stock options, stock appreciation rights (SARs), restricted stock, cash award performance units and

51

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

September 30, 2004, 2003 and 2002

performance shares at the discretion of the Executive Compensation Committee of the Board of Directors. Stock options granted to date have an exercise price equal to the fair market value of the shares of common stock at date of grant. On the grant date, 25% of the options become exercisable and 25% of the options become exercisable in annual increments on the first three anniversary dates. These options expire not more than ten years from date of grant.

Additionally, in 2003, the Company granted stock appreciation rights (SARs) to certain employees based on 119,000 shares, at a stated price of $1.35 per share. The SARs provide the right to receive, at the date the rights are exercised, cash equal to the market appreciation between the stated price and the current market value to a maximum appreciation value of $5.55 per share. The SARs vest over a three-year period and expire ten years from date of grant. The Company accrues for the value of the SARs over the vesting term. SARs totaling 11,000 and 13,750 were exercised during fiscal 2004 and 2003.

Stock option activity in the plan was as follows:

| | Year Ended | | | |
| | September 30, 2004 | | September 30, 2003 | |
| | Options | Weighted Average Price per Share | Options | Weighted Average Price per Share |
|---|---|---|---|---|
| Beginning Balance | 1,453,456 | $ 4.73 | 1,111,456 | $ 4.97 |
| Granted | 211,000 | 13.57 | 520,000 | 4.72 |
| Expired or Cancelled | (99,500) | 4.54 | (130,500) | 5.55 |
| Exercised | (326,200) | 4.70 | (47,500) | 5.45 |
| Balance, September 30 | 1,238,756 | 6.61 | 1,453,456 | 4.73 |
| Exercisable as of September 30 | 682,642 | $ 5.90 | 603,603 | $ 4.92 |

Options outstanding at September 30, 2004 consisted of the following:

| Range of Exercise Prices per Share | Number of Options | Weighted-Average Exercise Price per Share | Weighted-Average Remaining Contractual Life | Exercisable Options | |
| | | | | Number of Options | Weighted-Average Exercise Price per Share |
|---|---|---|---|---|---|
| $11.63-14.18 | 211,000 | $ 13.57 | 9.7 years | 52,750 | $ 13.57 |
| 7.30-10.58 | 48,000 | 7.71 | 8.8 years | 24,000 | 7.71 |
| 5.55-5.58 | 821,256 | 5.56 | 7.9 years | 522,392 | 5.55 |
| 1.35-4.00 | 158,500 | 2.50 | 8.0 years | 83,500 | 2.66 |

## 10. DERIVATIVE INSTRUMENTS

The Company uses derivative instruments to manage exposures to changes in raw sugar prices, natural gas prices and interest rates. The Company's objective for holding derivatives is to minimize risk using the most efficient methods to eliminate or reduce the impacts of these exposures.

### Raw Sugar

The Company's risk management policy is to manage the forward pricing of purchases of raw sugar in relation to its forward refined sugar sales to reduce price risk. The Company attempts to meet this objective by entering into fixed price supply agreements and futures contracts to reduce its exposure. The Company has

52

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)
September 30, 2004, 2003 and 2002

designated its futures contracts as cash flow hedging instruments. Such financial instruments are used to manage the Company's exposure to variability in future cash flows attributable to the purchase price of raw sugar. The changes in the fair value of the designated futures contracts are included as a component of Other Comprehensive Income ("OCI").

The Company collects or pays cash based upon the change in the market value of open futures positions on a daily basis; accordingly, no asset or liability for the raw sugar futures contracts is reflected in the consolidated balance sheet.

The changes in the fair value of the designated futures contracts are matched to inventory purchases by period, and are recognized in earnings as such inventory is sold. The Company expects to recognize in earnings through September 30, 2005, approximately $0.3 million of existing net losses presently deferred in OCI. The Company has hedged a portion of its exposure to raw sugar price risk movement through November 2005.

The pricing mechanisms of the futures contracts and the respective forecasted raw sugar purchase transactions are the same. As a result, there is no hedge ineffectiveness to be reflected in earnings.

The change in the fair value of certain derivatives not designated as hedging instruments under SFAS 133 is recognized currently in earnings.

*Natural Gas*

The Company uses fixed price physical delivery contracts, futures contracts, options, and basis swaps to help manage its costs of natural gas. The Company has designated as cash flow hedge instruments certain natural gas futures and options contracts matched against variable price forecasted gas purchases. The change in the fair value of such contracts is included as a component of OCI.

Occasionally, the Company has natural gas futures and options contracts that cannot be designated as cash flow hedge instruments because the aggregate notional value of its natural gas futures and options contracts exceeds the Company's forecasted natural gas requirements in the relevant periods. Any change in fair value of such instruments is recorded as gain or loss in the period of the change.

The Company collects or pays cash based upon the change in the market value of all open natural gas futures contracts on a daily basis; accordingly, no asset or liability for the natural gas futures contracts is reflected in the consolidated balance sheet. There were no outstanding natural gas options or basis swaps at September 30, 2004 or 2003.

The changes in the fair value of the designated futures and options are matched to forecasted natural gas purchases and are recognized in earnings in the period the forecasted purchase occurs. The Company expects to recognize in earnings through September 30, 2005, approximately $0.2 million of existing net gains presently deferred in OCI. The Company has hedged a portion of its exposure to natural gas price risk through March 2005.

For the periods ended September 30, 2004, 2003 and 2002, the Company recognized derivative gains of $1.3 million and $0.5 million and derivative losses of $0.5 million respectively recorded in cost of sales which represented the ineffectiveness of cash flow hedging activity.

53

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)
September 30, 2004, 2003 and 2002

*Interest Rates*

In the past, the Company had material amounts of debt with interest rates that floated with market rates, exposing the Company to interest rate risk. The Company's policy is to reduce interest rate risk on its variable rate debt by entering into interest rate swap agreements for a portion of such floating rate debt. The Company had interest rate swap agreements with a major financial institution, the last of which was terminated in March 2004. Since the Company has the ability to change the interest rate index of the debt, the interest rate swap agreements were not designated as hedging instruments under SFAS 133. Therefore, changes in the fair value of the interest rate swaps were recognized in earnings.

## 11. COMMITMENTS AND CONTINGENCIES

The Company is party to litigation and claims which are normal in the course of its operations; while the results of such litigation and claims cannot be predicted with certainty, the Company believes the final outcome of such matters will not have a materially adverse effect on its consolidated results of operations, financial position, or cash flows.

In conjunction with the closure of the Sugar Land, Texas refinery in December 2002, the refinery's union filed three similar grievances alleging the Company owed unspecified severance benefits pursuant to the collective bargaining agreement. The Company contested the grievances, and an arbitrator's decision on the first grievance, announced in December 2003, agreed with the Company's position and denied the grievance. The time for appeal of this decision has expired. The Company believes that the two remaining severance grievances are without merit and that the risk of loss in this matter is remote. The Company is also involved in litigation with two ex-employees who asserted contract and severance claims subsequent to their departure from the Company. The Company believes that the risk of material loss in these matters is remote.

The Company developed a plan to install a clay cap on former settling ponds at its Mendota, California facility to prevent further ground water contamination and has recorded a $1.0 million liability for the present value of the estimated future costs of the plan. Additionally, the Company has recorded a $1.3 million liability for estimated remediation costs of closed production facilities.

The Company was obligated under $23.2 million in outstanding letters of credit at September 30, 2004, principally to secure insurance obligations.

The Company leases certain facilities and equipment under cancelable and noncancelable operating leases. Total rental expenses for all operating leases amounted to $1.0 million in fiscal 2004, $2.0 million in fiscal 2003, and $3.2 million in fiscal 2002.

The aggregate future minimum lease commitments under noncancelable operating leases at September 30, 2003 are summarized as follows (in thousands of dollars):

| Fiscal Year Ending September 30, | Operating Leases |
|---|---|
| 2005 | $ 2,175 |
| 2006 | 1,913 |
| 2007 | 1,419 |
| 2008 | 1,221 |
| 2009 | 1,046 |
| Thereafter | 319 |

54

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)
September 30, 2004, 2003 and 2002

The aggregate future minimum amount to be received under sub-leases was $0.2 million at September 30, 2004 compared to $0.4 million at September 30, 2003.

In February 2002, the Company sold its Michigan Sugar subsidiary for cash and notes. Additionally, the buyer assumed $18.5 million of industrial revenue bonds, with final maturity in 2025, issued by Michigan Sugar. The Company remains contingently liable for repayment of the industrial revenue bonds under a guaranty arrangement and does not believe that a liability is probable. The Company obligation under the guaranty was cross collateralized with a seller note receivable that would have provided the Company with a claim to substantially all Michigan Sugar's production assets should the Company have had to perform under the guaranty. In December 2003, the Company received $13.3 million in principal and interest from Michigan Sugar in full satisfaction of the seller note, reported as other investments, and released the collateral. The Company's obligation pursuant to the guarantee of the industrial revenue bonds is now unsecured. The Company accounted for this release of collateral as a modification of the guarantee and recorded a non-current liability for its fair value in the first quarter of fiscal 2004, pursuant to Financial Interpretation No. 45. The loss on recording the fair value of the guarantee was substantially offset by the gain from the early repayment of the seller note.

## 12. GAIN (LOSS) ON ASSET SALES, IMPAIRMENT AND OTHER COSTS

The Company had gains (losses) on asset sales, impairment and other costs as follows (in thousands of dollars):

| | Year Ended September 30, | | |
| --- | --- | --- | --- |
| | 2004 | 2003 | 2002 |
| Gain(Loss) on Asset Sales: | | | |
| Michigan and Worland Beet Sugar Operations | — | — | $13,938 |
| Emission Reduction Credits | — | $ 690 | 6,319 |
| Surplus Real Estate and Equipment | $(328) | 2,180 | 3,738 |
| Total (Loss) Gain—Asset Sales | (328) | 2,870 | 23,995 |
| Impairment and Other Charges: | | | |
| Impairment of Supplies Inventory—Sugar Land | — | (2,393) | — |
| Sugar Land Severance (for 50 Salaried Employees) | — | (869) | — |
| Impairment of Assets Held for Sale | — | (1,876) | — |
| Lease Obligations and Other | — | 779 | — |
| Total Impairment and Other Charges | — | (4,359) | — |
| Total Gains(Losses) on Asset Sales, Impairment, and Other Costs | $(328) | $(1,489) | $23,995 |

The Company completed the sale of its Michigan Sugar Company subsidiary in February 2002 to a grower-owned cooperative. The sales price consisted of approximately $29 million cash, $16 million in seller notes, and the assumption of $18.5 million in industrial revenue bonds, for which the Company remains contingently liable. The Company entered into a sales and marketing agreement under which it will continue to market the refined sugar for ten years following the sale.

Prior to the sale, the Company leased the four Michigan factories to the cooperative during fiscal 2002 and managed and operated these factories for the cooperative. The lease agreement provided that the cooperative (1)

55

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

September 30, 2004, 2003 and 2002

pay all expenses necessary to operate the four factories and (2) pay the Company a lease, management and marketing fee based on the number of tons of sugarbeets received at these factories for processing. For the twelve months ended September 30, 2002, lease, management and marketing fees totaled $8.2 million.

On June 30, 2002, the Company completed the sale of its Worland, Wyoming factory for $3.0 million. The Company entered into a sales and marketing agreement which was terminated by mutual consent in May 2003.

The Company ceased sugar refining operations at its Sugar Land, Texas facility in the first fiscal quarter and discontinued its remaining packaging and distribution operations in Sugar Land during the third quarter of fiscal 2003. Additionally, the Company settled a lease obligation previously recorded in connection with the closure of two beet factories in fiscal 2001. The Company recorded charges and credits during the twelve months ended September 30, 2003, as shown in the table above. The supplies inventory impairment reduces to net realizable value inventories that are not readily transferable to the Company's other production facilities because of differences in equipment or process technologies.

The Company evaluated the recoverability of the carrying value of assets held for sale, comprised of closed factories and related equipment, and recorded an impairment charge of $1.9 million in fiscal 2003.

Changes in the accrued balance for future cash expenditures in conjunction with closing production facilities are summarized below (in thousands of dollars):

| | Accrued Balance September 30, 2002 | Year Ended September 30, 2003 | | | Accrued Balance September 30, 2003 | Year Ended September 30, 2004 | Accrued Balance at September 30, 2004 |
| | | Amounts Accrued | Amounts Paid | Other Adjustments | | Amounts Paid | |
|---|---|---|---|---|---|---|---|
| Accrual for Cash Charges: | | | | | | | |
| Severance | $ — | $ 869 | $ (779) | $ — | $ 90 | $ (90) | $ — |
| Environmental Costs | 1,444 | 50 | (55) | — | 1,439 | (139) | 1,300 |
| Abandoned Lease Commitments and Other Cash Costs | 842 | 220 | (11) | (1,051) | — | — | — |
| Total | $ 2,286 | $ 1,139 | $ (845) | $ (1,051) | $ 1,529 | $ (229) | $ 1,300 |

Based on the decision to cease packaging and warehousing operations in Sugar Land, the Company evaluated the recoverability of the book values of assets that will not be relocated and shortened the remaining service lives of those assets pursuant to Statement of Financial Accounting Standards No. 144. In March 2003, approximately $4 million of assets were determined to have a remaining service life of two months, resulting in additional depreciation charges of $2 million recorded in each of the second and third fiscal quarters of 2003.

13. DISCONTINUED OPERATIONS

In October 2002, the Company completed the sale of its beet processing facilities in Sidney, Montana and Torrington, Wyoming, and Hereford, Texas. Gross sales price in the transaction was $34 million, approximately $925,000 of which was placed in escrow, resulting in a gain of approximately $2.9 million.

56

IMPERIAL SUGAR COMPANY AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS—(Continued)

September 30, 2004, 2003 and 2002

In December 2002, the Company completed the sale of its Diamond Crystal Brands ("DCB") foodservice business for a gross sales price of approximately $121 million after certain post-closing working capital adjustments. The Company retained a substantial portion of the sugar product sales to the foodservice segment as a result of this disposition. Approximately $9.2 million of proceeds from this transaction were placed in escrow for two years. This escrow was reported in other assets at September 30, 2003, and reclassified to accounts receivable at September 30, 2004. The sale of DCB resulted in a gain of approximately $67.0 million.

In December 2001, the Company completed the sale of DCB's King Packaging subsidiary for approximately $28 million resulting in a gain of $3.6 million.

The financial statements have been reclassified to reflect the Sidney, Torrington, Hereford, and DCB operations (including King Packaging) as discontinued pursuant to SFAS 144. The operating results for discontinued operations have been included through their disposition dates. No provision for income taxes on discontinued operations was recorded because of differences in the book and tax basis of the stock of DCB that was sold in December 2002.

Summary operating results of discontinued operations are as follows (in thousands of dollars):

|  | Year Ended September 30, | |
|---|---|---|
|  | 2003 | 2002 |
| Net Sales | $ 54,342 | $ 265,669 |
| Cost and Expenses | (48,981) | (246,199) |
| Depreciation | (794) | (4,148) |
| Gain(Loss) on Sale of Assets | (4) | 2,528 |
| Operating Income from Discontinued Operations | 4,563 | 17,850 |
| Other Income (Expense) | 303 | (162) |
| Provision for Income Taxes | — | — |
| Income from Discontinued Operations Before Gain | 4,866 | 17,688 |
| Gain on Disposal | 69,824 | — |
| Income from Discontinued Operations | $ 74,690 | $ 17,688 |

In connection with the sales of DCB and the beet factories described above, the Company made customary representations and warranties, and undertook indemnification obligations with regard to certain of these representations and warranties. These indemnification obligations are subject to certain deductibles, caps and expiration dates and in, some cases, may be deducted from the related escrow balance. To date, no significant indemnity claims have been asserted and the Company does not believe any future claim, if asserted, would be material to the Company's consolidated financial position, results of operations or cash flows.

14. SUPPLEMENTARY INFORMATION

Interest income (which is reported net in interest expense) totaled $0.7 million for fiscal 2004, $2.5 million for fiscal 2003, and $1.6 million for the period ended September 30, 2002.

Other current liabilities include payroll and employee benefit accruals totaling $16.4 million at September 30, 2004 and $20.3 million at September 30, 2003, as well as various other items including taxes, interest, and professional fees.

# DIRECTORS AND OFFICERS

## BOARD OF DIRECTORS

Curtis G. Anderson (1)(3)
Chairman
Anderson Capital Corp.

Gaylord O. Coan (1)
Retired Chief Executive Officer
Gold Kist Inc.

James J. Gaffney (2)
Consultant

Yves-Andre Istel (1)(3)
Senior Advisor
Rothschild, Inc

Robert J. McLaughlin
President
The Suiter Group

Robert A. Peiser
President and Chief Executive Officer
Imperial Sugar Company

James A. Schlindwein (2)(3)
Retired Executive Vice President
SYSCO Corporation

John K. Sweeney (2)
Managing Director
Lehman Brothers, Inc

(1) Member Audit Committee
(2) Member Executive Compensation Committee
(3) Member Nominating and
Corporate Governance Committee

## IMPERIAL SUGAR COMPANY OFFICERS

Robert A. Peiser
President and Chief Executive Officer

Paul Durlacher
Executive Vice President
and Chief Operating Officer

T. Kay Hastings
Senior Vice President
Human Resources

Patrick D. Henneberry
Senior Vice President
Commodities Management

William F. Schwer
Senior Vice President
and General Counsel

Darrell D. Swank
Senior Vice President
and Chief Financial Officer

Brian T. Harrison
Vice President
Operations

H. P. Mechler
Vice President
Accounting and Finance

George Muller
Vice President
and Chief Information Officer

John E. Reinert
Vice President
Consumer and Foodservice Sales

Arthur M. Saxby
Vice President
Marketing

J. Eric Story
Vice President and Treasurer

# SHAREHOLDER INFORMATION

Corporate Headquarters
One Imperial Square
8016 Highway 90-A
Sugar Land, Texas 77478

Annual Meeting
The 2005 Annual Meeting of Shareholders will be held on
Tuesday, February 1, 2005 at 9:00 a.m. at the Marriott
Town Square, 16090 City Walk, Sugar Land, Texas 77479.

Stock Exchange Listing
The common stock of Imperial Sugar Company
is traded on the NASDQ National Markets System
(ticker symbol IPSU)

Shareholder Records
Transfer agent is The Bank of New York.
Inquiries relating to change of registered
ownership, change of address and dividend
payments should be addressed to:

The Bank of New York
Shareholder Relations Department — 12E
P. O. Box 11258
Church Street Station
New York, NY 10286-1258
800-524-4458
E-mail: shareowners@bankofny.com
Website: http://www.stockbny.com

Independent Accountant
Deloitte & Touche L.L.P.
Suite 2300, 333 Clay St.
Houston, Texas 77002-4196

Legal Counsel
Baker Botts L.L.P
3000 One Shell Plaza
910 Louisiana
Houston, Texas 77002-4995

Statements regarding future market prices and margins, future operating results, sugarbeet acreage, oper-
ating efficiencies, future government and legislative action, future cost savings, future pension costs, our
liquidity and ability to finance our operations, and other statements that are not historical facts contained
in this report on Form 10-K are forward-looking statements. We identify forward-looking statements in this
report by using the following words and similar expressions: "expect", "believe", "plan", "should", "budg-
et", "project", "anticipate", "intend", "may", "estimate", "likely", "could", "predict".

Forward-looking statements involve risks, uncertainties and assumptions, including, without limitation,
market factors, energy costs, the effect of weather and economic conditions, farm and trade policy, our
ability to realize planned cost savings, the available supply of sugar, available quantity and quality of sug-
arbeets, actual or threatened acts of terrorism or armed hostilities, legislative, administrative and judicial
actions and other factors detailed elsewhere in this report and in our other filings with the SEC. Many of
such factors are beyond our ability to control or predict. Management cautions against placing undue
reliance on forward-looking statements or projecting any future results based on such statements at pres-
ent or future earnings levels. Should one or more of these risks or uncertainties materialize, or should
underlying assumptions prove incorrect, actual outcomes may vary materially from those indicated. All for-
ward-looking statements in this Form 10-K are qualified in their entirety by the cautionary statements con-
tained in this section and elsewhere in this report.