# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| McNEIL NUTRITIONALS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-00069-GMS |
| | ) | |
| THE SUGAR ASSOCIATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF ANDREW C. BRISCOE III**

I, Andrew C. Briscoe III, declare as follows:

1.     I am over eighteen (18) years of age and am authorized by the Sugar Association, Inc. ("Sugar Association"), a discrete non-stock, 501(c)(6) non-profit corporate entity organized under the General Corporation Law of Delaware, in my capacity as President and Chief Executive Officer of the Sugar Association, to make this declaration on behalf of the Sugar Association. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth of those facts.

2.     The Sugar Association's principal place of business is in Washington, D.C.

3.     The Sugar Association has seventeen (17) dues-paying members, all of whom are sugar cane and sugar beet growers and processors of sugar in the United States: The Amalgamated Sugar Company LLC, American Crystal Sugar Company, American Sugar Cane League, American Sugar Refining, Inc., Atlantic Sugar Association, Inc., Hawaiian Sugar & Transportation Cooperative, Imperial Sugar Company, Michigan Sugar Company, Minn-Dak Farmers Cooperative, Okeelanta Corporation, Osceola Farms

Company, Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Cooperative, Sugar Cane Growers Cooperative of Florida, United States Sugar Corporation, Western Sugar Cooperative, and Wyoming Sugar Company, LLC ("Member Companies").

4.      The Sugar Association has a Board of Directors comprised of twenty-two (22) directors.  Each of the Member Companies is entitled to designate a single member of the Board of Directors.  Other than the seats reserved for the Member Companies, there are four (4) advisory director positions reserved for four (4) sugarbeet growers, as further elaborated below, and one (1) reserved for me in my capacity as President and Chief Executive Officer of the Sugar Association.

5.      I have reviewed a copy of Plaintiff's Complaint and I am familiar with its contents.

6.      I am aware that, in addition to the Sugar Association, each of the Member Companies and the American Sugarbeet Growers Association have been named as defendants in this lawsuit.

7.      The American Sugarbeet Growers Association is not a member of the Sugar Association.  Each year the American Sugarbeet Growers Association facilitates the selection of four (4) sugarbeet growers who represent different regions of the United States to sit on the Sugar Association's Board of Directors for the purposes of communication and education of the American Sugarbeet Growers Association's Board of Directors.  The votes of these four (4) sugarbeet growers on the Sugar Association's Board of Directors are only advisory.  Moreover, the growers' votes represent their own

views and positions, and not necessarily those of the American Sugarbeet Growers Association.

8.    The Sugar Association acted in its corporate capacity in issuing the following statement, currently appearing on the home page of the Sugar Association's website, www.sugar.org, regarding the Dietary Guidelines for Americans (the "Guidelines") released by the United States Departments of Agriculture and Health and Human Services in 2005: "We stand firm in our assertion that every major scientific review . . . has concluded that there is not a direct link between added sugars intake and any lifestyle disease, including obesity . . . . For the Guidelines to infer any type of limit on added sugars is not science-based." (Compl. ¶ 41). The Sugar Association did not obtain the approval of either the Board of Directors or the Member Companies in issuing this statement.

9.    The Sugar Association acted in its corporate capacity in issuing the following statement by the Sugar Association's Vice-President of Scientific Affairs regarding the Guidelines: "Embedded within the report is the recommendation to limit added sugars. That's not supported by the [preponderance] of science." (Compl. ¶ 42) (insert supplied). The Sugar Association did not obtain the approval of either the Board of Directors or the Member Companies in issuing this statement.

10.    The Sugar Association acted in its corporate capacity in issuing the following statements in late 2004: "that it would commence a significant advertising campaign 'to promote the benefits of real sugar' following 'nine years of a sabbatical from advertising'"; and "that, from 1986 to 1995, the industry invested $5 million per year in a generic sugar campaign and '[w]e were able to increase sugar consumption by

19 percent over that period of time . . . . [and] . . . [o]ur objective [here] is to do the same.'" (Compl. ¶ 45). The Sugar Association did not obtain the approval of either the Board of Directors or the Member Companies in issuing these statements.

11. Plaintiff's Complaint alleges that I stated in late 2004 that "each Member company of the Association committed $3.5 million per year to this multi-year 'public-education' project." (Compl. ¶ 45). To the contrary, the Sugar Association, acting in its corporate capacity, explained that only five (5) of the Member Companies chose to participate and commit a total of $3.5 million per year for a total of three (3) years to this voluntary sugar-promotion program. The Sugar Association did not obtain the approval of either the Board of Directors or the Member Companies in issuing the foregoing clarified statement.

12. The Sugar Association acted in its corporate capacity in planning, funding, and executing the "Truth About Splenda" website, www.truthaboutsplenda.com. (Compl. ¶¶ 47-53). The Sugar Association did not obtain the specific approval of either the Board of Directors or the Member Companies for any statement made on this website.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 24, 2005.

_____

Andrew C. Briscoe, III

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| McNEIL NUTRITIONALS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-69-GMS |
| | ) | |
| THE SUGAR ASSOCIATION, THE | ) | |
| AMALGAMATED SUGAR COMPANY, | ) | |
| AMERICAN CRYSTAL SUGAR COMPANY, | ) | |
| AMERICAN SUGAR CANE LEAGUE, | ) | |
| AMERICAN SUGAR REFINING, INC., | ) | |
| ATLANTIC SUGAR ASSOCIATION, | ) | |
| HAWAIIAN SUGAR & TRANSPORTATION | ) | |
| COOPERATIVE, IMPERIAL SUGAR | ) | |
| COMPANY, MICHIGAN SUGAR COMPANY, | ) | |
| MINN-DAK FARMERS COOPERATIVE, | ) | |
| OKEELANTA CORPORATION, OSCEOLA | ) | |
| FARMS COMPANY, RIO GRANDE VALLEY | ) | |
| SUGAR GROWERS, INC., SOUTHERN | ) | |
| MINNESOTA BEET SUGAR COOPERATIVE, | ) | |
| SUGAR CANE GROWERS COOPERATIVE OF | ) | |
| FLORIDA, UNITED STATES SUGAR | ) | |
| CORPORATION, WESTERN SUGAR | ) | |
| COOPERATIVE, WYOMING SUGAR LLC, | ) | |
| AMERICAN SUGARBEET GROWERS | ) | |
| ASSOCIATION, and QORVIS | ) | |
| COMMUNICATIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS FIRST SET OF REQUESTS
TO DEFENDANT THE SUGAR ASSOCIATION
FOR THE PRODUCTION OF DOCUMENTS AND THINGS**

Pursuant to Rules 26 and 34 of the Federal Rule of Civil Procedure, Plaintiff

McNeil Nutritionals, LLC ("McNeil"), by its attorneys, direct the following requests for

production of documents and things to Defendant The Sugar Association ("Association") and

request that in no later than 30 days, the Association produce responsive documents for

inspection and copying at the offices of Patterson, Belknap Webb & Tyler LLP, 1133 Avenue of

the Americas, New York, NY 10036, or at an alternative location to which the parties agree.

## DEFINITIONS

   1. "Association" means The Sugar Association, its officers, directors, agents, servants, employees, attorneys, accountants, corporate parents, wholly-owned subsidiaries or other persons acting on their behalf for purposes of these requests.

   2. "Members" means one or more Members of The Sugar Association, their representatives on the Association Board, officers, directors, agents, servants, employees, attorneys, accountants, corporate parents, wholly-owned subsidiaries or other persons acting on their behalf for purposes of these requests.

   3. "McNeil" means McNeil Nutritionals, LLC and/or McNeil-PPC, Inc., their officers, directors, agents, servants, employees, attorneys, accountants, corporate parents, wholly-owned subsidiaries or other persons acting on their behalf for purposes of these requests.

   4. The term "Splenda" refers to Splenda® NO CALORIE SWEETENER, and any and all products sold by McNeil using the Splenda® trademark or brand name.

   5. The term "document" is used in the broadest sense consistent with Rule 34(a) of the Federal rules of Civil Procedure. The term includes, without limitation, any written, recorded, transcribed, taped, photographic or graphic matter, any electronically, magnetically or digitally stored information, including, without limitation, voice mail, electronic mail, software, source code, object code or hard or floppy disc files, any other tangible things, and all copies of any of the foregoing that are different in any way from the original.

   6. "Concerning" means referring to, relating to, describing, evidencing or constituting.

   7. "Communications" refer to all documents reflecting any verbal or written communication.

   8. "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the discovery requests inclusive rather than exclusive; use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun; the use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of the discovery request documents or information that might otherwise be construed to be outside its scope.

## INSTRUCTIONS

1.    Responses to these document requests shall be supplemented and/or amended to the extent required by the Federal Rules of Civil Procedure and the Local Rules of this Court. These document requests shall be deemed to impose a continuing duty upon the Association to properly serve supplemental and/or amended responses as the Association acquires additional knowledge and/or information relating to these document requests.

2.    These document requests are intended to cover any and all documents and things in the Association's global charge and/or possession as well as those subject to their custody and/or control, whether in their possession, at the office of their attorneys, and/or at any other place and/or in the possession of any other person and/or entity subject to the Association's control.

3.    In responding to these requests, the Association is requested pursuant to the Federal Rules of Civil Procedure to state which documents and things they will produce for inspection and copying. If the Association objects to a particular request, the Association is requested to state the precise grounds upon which their objections rests.

4.    With respect to each document and/or communication withheld from production, on any basis whatsoever, including, without limitation, any document withheld on the basis of the attorney-client privilege and/or the work product doctrine, a separate list of all such documents and/or communications shall be served with the responses to the document requests herein that states and identifies the following:

a.    the date the document bears, if any, and, if different, the date on which the document was created;

b.    the nature of the document (i.e., draft or final letter, memoranda, report etc.); the author(s) or originator(s) of the document, the title, if any, and the subject matter of the document;

c.    the name, business address, and business affiliation of each and every person who drafted, wrote, produced, executed, signed, edited, reviewed, revised and/or otherwise participated in creating and/or altering the document;

d.    the name, business address and business affiliation of each and every person who received the document, and/or any copy thereof, and/or was permitted to learn of its contents;

e.    the number of pages of the documents;

f.    the name, business address and business affiliation of each and every person who personally has possession, custody and/or control of the document and/or any copy thereof;

g.    the precise basis in detail for the privilege claim by the objection made with respect to the document.

3

5.     All documents are to be produced in or with their original file folders, file jackets, envelopes and/or covers.

6.     If the Association is aware that a document and/or thing (and/or a group of documents and/or things) once existed, but has been destroyed, the Association is requested to specifically identify such document and/or thing, when the document and/or thing was destroyed, the reason for such destruction, and the circumstances under which such destruction occurred.

7.     In the event the Association is able to produce only some of the documents and/or things responsive to these requests within the allowed time, the Association is requested to produce the documents and/or things, which can be produced, and to state the reason for their asserted inability to provide the remaining documents and/or things. Once the remaining responsive documents and/or things are obtained and/or available, those documents and/or things should be produced promptly at a mutually agreeable time.

8.     If any document and/or thing responsive to these requests were, but no longer are, in the Association's possession, custody and/or control, please identify that document and/or thing and state whether any such document and/or thing: (a) is missing and/or lost; (b) has been destroyed; (c) has been transferred voluntarily and/or involuntarily; and/or (d) has been otherwise disposed of, and, in each instance, please explain in detail the circumstances surrounding any such disposition thereof.

## REQUESTS

1.     Documents sufficient to identify all Members of the Association and their business addresses, including each Members principal place of business and any satellite offices, factories, plants or other operational facilities.

2.     Documents sufficient to identify the name, company affiliation, and business address of each officer and each member of the Association's board of directors.

3.     Organizational charts, staff lists or other documents sufficient to show the organizational structure of the Association.

4.     All documents concerning the internal structure and decision-making apparatus of the Association, including but not limited to articles of incorporation, by-laws, articles of association, membership agreements, operating agreements, regulations, and voting procedures.

5.     All documents reflecting involvement of any Member in any decision to undertake an advertising or public relations campaign concerning Splenda, including, but not limited to, the decision to launch the website currently located at the web address www.truthaboutsplenda.com ("the Website").

6.     All documents reflecting the involvement of any Member in the conception, development, creation, and maintenance of the Website.

4

7.    All documents concerning the funding, payment or reimbursement for the creation, development, and maintenance of the Website by any Member, whether individually or through the Association.

8.    All documents concerning formal or informal meetings, conference calls, or other events involving any Member at which the Website was discussed, including but not limited to minutes of or notes from such meetings, documents identifying all invitees and attendees at such meetings, and schedules or agendas for such meetings.

9.    All documents concerning communications with any Member concerning the Website.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone 302-654-1888
Facsimile 302-654-2067
Sbalick@ashby-geddes.com
Jday@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Steven A. Zalesin
Clay J. Pierce
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000

Donna Malin
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

Dated: April 15, 2005
155944.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2005, the attached **PLAINTIFFS FIRST SET OF REQUESTS TO DEFENDANT THE SUGAR ASSOCIATION FOR THE PRODUCTION OF DOCUMENTS AND THINGS** was served upon the below-named counsel of record at the address and in the manner indicated:

Richard L. Horwitz, Esq.                          HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801

James P. Murphy, Esq.                             VIA ELECTRONIC MAIL
Squire, Sanders & Dempsey LLP
1201 Pennsylvania Avenue, N.W.
Suite 500
Washington, DC  20004

Adam R. Fox, Esq.                                 VIA ELECTRONIC MAIL
Squire, Sanders & Dempsey LLP
801 South Figueroa Street
Suite 1400
Los Angeles, CA  90017

_____
John G. Day

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| McNEIL NUTRITIONALS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-69-GMS |
| | ) | |
| THE SUGAR ASSOCIATION, THE | ) | |
| AMALGAMATED SUGAR COMPANY, | ) | |
| AMERICAN CRYSTAL SUGAR COMPANY, | ) | |
| AMERICAN SUGAR CANE LEAGUE, | ) | |
| AMERICAN SUGAR REFINING, INC., | ) | |
| ATLANTIC SUGAR ASSOCIATION, | ) | |
| HAWAIIAN SUGAR & TRANSPORTATION | ) | |
| COOPERATIVE, IMPERIAL SUGAR | ) | |
| COMPANY, MICHIGAN SUGAR COMPANY, | ) | |
| MINN-DAK FARMERS COOPERATIVE, | ) | |
| OKEELANTA CORPORATION, OSCEOLA | ) | |
| FARMS COMPANY, RIO GRANDE VALLEY | ) | |
| SUGAR GROWERS, INC., SOUTHERN | ) | |
| MINNESOTA BEET SUGAR COOPERATIVE, | ) | |
| SUGAR CANE GROWERS COOPERATIVE OF | ) | |
| FLORIDA, UNITED STATES SUGAR | ) | |
| CORPORATION, WESTERN SUGAR | ) | |
| COOPERATIVE, WYOMING SUGAR LLC, | ) | |
| AMERICAN SUGARBEET GROWERS | ) | |
| ASSOCIATION, and QORVIS | ) | |
| COMMUNICATIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S FIRST SET OF REQUESTS
TO DEFENDANT AMERICAN CRYSTAL SUGAR COMPANY
<u>FOR THE PRODUCTION OF DOCUMENTS AND THINGS</u>**

Pursuant to Rules 26 and 34 of the Federal Rule of Civil Procedure, Plaintiff

McNeil Nutritionals, LLC ( "McNeil"), by its attorneys, direct the following requests for

production of documents and things to Defendant American Crystal Sugar Company ("American

Crystal") and request that in no later than 30 days, American Crystal produce responsive

documents for inspection and copying at the offices of Patterson, Belknap Webb & Tyler LLP,

1133 Avenue of the Americas, New York, NY 10036, or at an alternative location to which the

parties agree.

## DEFINITIONS

1.  "American Crystal" means the American Crystal Sugar Company, its officers, directors, agents, servants, employees, attorneys, accountants, corporate parents, wholly-owned subsidiaries or other persons acting on their behalf for purposes of these requests.

2.  "McNeil" means McNeil Nutritionals, LLC and/or McNeil-PPC, Inc., their officers, directors, agents, servants, employees, attorneys, accountants, corporate parents, wholly-owned subsidiaries or other persons acting on their behalf for purposes of these requests.

3.  The term "Qorvis" means Qorvis Communications, LLC, and its officers, directors, employees, agents, servants, accountants, attorneys, parents, subsidiaries, siblings, divisions, joint venture companies and affiliates, and other persons acting on its behalf.

4.  The term "Splenda" refers to Splenda® NO CALORIE SWEETENER, and any and all products sold by McNeil using the Splenda® trademark or brand name.

5.  The term "document" is used in the broadest sense consistent with Rule 34(a) of the Federal rules of Civil Procedure.  The term includes, without limitation, any written, recorded, transcribed, taped, photographic or graphic matter, any electronically, magnetically or digitally stored information, including, without limitation, voice mail, electronic mail, software, source code, object code or hard or floppy disc files, any other tangible things, and all copies of any of the foregoing that are different in any way from the original.

6.  "Concerning" means referring to, relating to, describing, evidencing or constituting.

7.  "Communications" refer to all documents reflecting any verbal or written communication.

8.  "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the discovery requests inclusive rather than exclusive; use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun; the use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of the discovery request documents or information that might otherwise be construed to be outside its scope.

## INSTRUCTIONS

1.    Responses to these document requests shall be supplemented and/or amended to the extent required by the Federal Rules of Civil Procedure and the Local Rules of this Court. These document requests shall be deemed to impose a continuing duty upon American Crystal to properly serve supplemental and/or amended responses as American Crystal acquires additional knowledge and/or information relating to these document requests.

2.    These document requests are intended to cover any and all documents and things in American Crystal's global charge and/or possession as well as those subject to their custody and/or control, whether in their possession, at the office of their attorneys, and/or at any other place and/or in the possession of any other person and/or entity subject to American Crystal's control.

3.    In responding to these requests, American Crystal is requested pursuant to the Federal Rules of Civil Procedure to state which documents and things they will produce for inspection and copying. If the American Crystal objects to a particular request, American Crystal is requested to state the precise grounds upon which their objections rests.

4.    With respect to each document and/or communication withheld from production, on any basis whatsoever, including, without limitation, any document withheld on the basis of the attorney-client privilege and/or the work product doctrine, a separate list of all such documents and/or communications shall be served with the responses to the document requests herein that states and identifies the following:

a.    the date the document bears, if any, and, if different, the date on which the document was created;

b.    the nature of the document (i.e., draft or final letter, memoranda, report etc.); the author(s) or originator(s) of the document, the title, if any, and the subject matter of the document;

c.    the name, business address, and business affiliation of each and every person who drafted, wrote, produced, executed, signed, edited, reviewed, revised and/or otherwise participated in creating and/or altering the document;

d.    the name, business address and business affiliation of each and every person who received the document, and/or any copy thereof, and/or was permitted to learn of its contents;

e.    the number of pages of the documents;

f.    the name, business address and business affiliation of each and every person who personally has possession, custody and/or control of the document and/or any copy thereof;

g.    the precise basis in detail for the privilege claim by the objection made with respect to the document.

3

5.     All documents are to be produced in or with their original file folders, file jackets, envelopes and/or covers.

6.     If American Crystal is aware that a document and/or thing (and/or a group of documents and/or things) once existed, but has been destroyed, American Crystal is requested to specifically identify such document and/or thing, when the document and/or thing was destroyed, the reason for such destruction, and the circumstances under which such destruction occurred.

7.     In the event American Crystal is able to produce only some of the documents and/or things responsive to these requests within the allowed time, American Crystal is requested to produce the documents and/or things, which can be produced, and to state the reason for their asserted inability to provide the remaining documents and/or things. Once the remaining responsive documents and/or things are obtained and/or available, those documents and/or things should be produced promptly at a mutually agreeable time.

8.     If any document and/or thing responsive to these requests were, but no longer are, in American Crystal's possession, custody and/or control, please identify that document and/or thing and state whether any such document and/or thing: (a) is missing and/or lost; (b) has been destroyed; (c) has been transferred voluntarily and/or involuntarily; and/or (d) has been otherwise disposed of, and, in each instance, please explain in detail the circumstances surrounding any such disposition thereof.

## REQUESTS

1.     All documents reflecting involvement of American Crystal in any decision to undertake any advertising or public relations campaign by or through the Sugar Association concerning Splenda, including, but not limited to, the decision to launch the website currently located at the web address www.truthaboutsplenda.com ("the Website").

2.     All documents reflecting the involvement of American Crystal in the conception, development, creation, and maintenance of the Website.

3.     All documents concerning any involvement or participation by American Crystal in the funding, payment or reimbursement for the creation, development, and maintenance of the Website, whether  individually or through the Sugar Association.

4.     All communications to or from American Crystal concerning the Website.

5.     All communications to or from American Crystal concerning Qorvis.

6.     All documents concerning formal or informal meetings, conference calls, or other events in which American Crystal participated at which the Website was discussed, including but not limited to minutes of or notes from such meetings, documents identifying all invitees and attendees at such meetings, and schedules or agendas for such meetings.

7.     All documents concerning meetings, trade shows, or any other event attended by American Crystal in Delaware, including but not limited to meetings with the Association over the last ten years.

8.     All documents relating to sales in Delaware of sugar grown, processed, refined, or distributed by American Crystal, including, but not limited to sales to wholesalers, retailers or consumers, whether directly or through joint venture partners or other intermediaries, over the last ten years.

9.     All documents relating to any services provided by American Crystal in Delaware over the last ten years.

10.    All documents relating to nationwide marketing or advertising conducted by or on behalf of American Crystal, including but not limited to copies of all such advertisements and insertion orders for such advertisements identifying the specific media and publications in which they appeared over the last ten years.

11.    All documents relating to marketing or advertising conducted by or on behalf of American Crystal in Delaware, including but not limited to copies of all such advertisements and insertion orders for such advertisements identifying the specific media and publications in which they appeared over the last ten years.

12.    Documents sufficient to any identify any officers, directors, agents, servants, employees, attorneys, accountants, corporate parents, wholly-owned subsidiaries or other persons acting on American Crystal's behalf in Delaware over the last ten years.

13.    Documents sufficient to identify all property owned, leased, rented, or used by American Crystal in Delaware.

14.    All documents concerning activities conducted in Delaware on any website owned or operated by American Crystal, including but not limited to the website located at www.crystalsugar.com, including but not limited to documents concerning sales, solicitation of business, responses to requests for information, or collection of data from or on such website.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone 302-654-1888
Sbalick@ashby-geddes.com
Jday@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel:*

Steven A. Zalesin
Clay J. Pierce
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
(212) 336-2000

Donna Malin
JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

Dated: April 15, 2005
155940.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2005, the attached **PLAINTIFF'S FIRST SET OF REQUESTS TO DEFENDANT AMERICAN CRYSTAL SUGAR COMPANY FOR THE PRODUCTION OF DOCUMENTS AND THINGS** was served upon the below-named counsel of record at the address and in the manner indicated:

Richard L. Horwitz, Esq.                                    <u>HAND DELIVERY</u>
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801

James P. Murphy, Esq.                                       <u>VIA ELECTRONIC MAIL</u>
Squire, Sanders & Dempsey LLP
1201 Pennsylvania Avenue, N.W.
Suite 500
Washington, DC  20004

Adam R. Fox, Esq.                                           <u>VIA ELECTRONIC MAIL</u>
Squire, Sanders & Dempsey LLP
801 South Figueroa Street
Suite 1400
Los Angeles, CA  90017


_____
John G. Day