# EXHIBIT 14

 # MICHIGAN SUGAR COMPANY 

# Mission Statement

## As a grower-owned cooperative, our mission is to maximize shareholder value by efficiently producing quality Pioneer and Big Chief Sugar while enhancing our employees' future.

# About Us


Locally Grown.
Locally Owned.

Michigan Sugar Company is the largest beet sugar processor east of the Mississippi River and third largest in the United States. The Company is a cooperative owned by approximately 1,300 sugarbeet growers, employing 500 year-round employees and 1,850 seasonal. It generates nearly $300 million in direct economic activity annually in the local communities in which it operates.

Michigan Sugar Company became a cooperative in 2002 and the Monitor Sugar Beet Growers and Monitor's Bay City factory joined the Cooperative on October 1, 2004. Beginning with the 2004 crop, a single, grower-owned cooperative processed all sugar produced in the State of Michigan. Michigan Sugar Company annually produces nearly one billion pounds of sugar under the Pioneer and Big Chief brand names – "Locally Grown. Locally Owned."





Michigan Sugar Company

 **PRODUCTS** 

Michigan Sugar Company produces sugar from beets under the brand name Pioneer Sugar for both industrial and consumer markets. Our industrial sales reach as far west as Wisconsin, as far east as New York and south into Kentucky. Look for Pioneer Sugar on your grocer's shelf. Locally Grown. Locally Owned.

 

*When you want to use the very best in your recipes*

Michigan Sugar Company also produces a number of by-products:

Pressed Pulp          Beet Pulp and Molasses                    Lime



# EXHIBIT 15

United Sugars



| Meet United Sugars |
| Food Manufacturers |
| Retailers |
| Contact Us |



If you need high quality, reliable supply of sugar you are in the right place. We listen to your unique needs and provide sugar solutions that work for you.

**United Sugars Corporation** is the largest marketer of industrial and consumer sugar in the U.S.—supplying over 5 billion pounds of refined sugar per year. That's more than 30 percent of the country's total demand.

United Sugars offers **products** for just about any use of sugar. And we have invested in an extensive **distribution system** so that your sugar is delivered on time and meets your specifications.

We continually innovate within every process to drive costs out of the supply chain. Innovation led to our **eCommerce** solutions that serve you by exchanging common business information in standardized document formats. And our Evaluated Receipt Settlement process simplifies the payment process.

But while we're large enough to serve world leaders in the candy, baking, cereal, dairy and beverage industries, we're personal enough to know that solving problems for you—our customer—is the only way to build a long-lasting and trusting relationship.

**Employee Login**

**Distributor Login**

**iConnect - Bulk and Liquid Login**

© 2004 United Sugars Corporation All Rights Reserved Terms of Use Link



| |
| --- |
| **Meet United Sugars** |
| **Food Manufacturers** |
| **Retailers** |
| **Contact Us** |

**United Sugars Corporation** was formed in January of 1994 to market sugar for American Crystal Sugar and Minn-Dak Farmers Cooperative. United States Sugar Corporation joined United Sugars in 1999. Today we are the leading sugar marketing organization in the U.S.

Day-in and day-out we provide you with superior service. You can rely on us for the best value of product, service and distribution as we continually work to drive costs out of the supply chain.



**American Crystal Sugar Company** has its corporate headquarters and research center in Moorhead, Minnesota. The co-op operates factories at Moorhead, Crookston and East Grand Forks, Minnesota; Sidney, Montana; and Drayton and Hillsboro, North Dakota with a combined slice capacity of over 34,000 tons per day. American Crystal is owned by approximately 2,950 growers and employs 1,000 people full-time and another 1,000 during the harvest processing campaign.



**Minn-Dak Farmers Cooperative** has its office and beet processing factory in Wahpeton, North Dakota, where it operates a factory with a daily slice capacity of 500 tons. Minn-Dak is owned by approximately 480 shareholders and employs 245 people full-time plus 330 people for harvest and campaign.



**United States Sugar Corporation** based in Clewiston, Florida, is the most recent addition to the family of producers, making United Sugars the first truly nationwide producer and distributor of refined sugars. Founded in 1931, United States Sugar Corporation is Florida's largest grower of sugar cane, farming approximately 170,000 acres in South-Central Florida, and producing over 800,000 tons of raw sugar per year.

© 2004 United Sugars Corporation All Rights Reserved Terms of Use Link

# EXHIBIT 16

opensecrets.org

The Basics | Big Picture | Who Gives | Who Gets | News | Get Local!    HOME    SEARCH



THE POLITICS OF SUGAR

# SUGAR'S
# FIRST FAMILY

With 600,000 acres of sugar cane fields and sugar mills producing 1.8 million tons of raw sugar every year, the state of Florida provides a quarter of the sugar produced in the United States. Louisiana, Hawaii, and Texas are also sugar cane states, but none of them surpasses Florida.

Florida is also home to the Everglades, the wetlands that once stretched for hundreds of miles in a "river of grass," Florida environmentalist Marjory Stoneman Douglas's poetic phrase. Florida loses five acres of wetlands a day, according to the Department of Interior, and at least part of the reason is pollution from sugar cane fields.

It is not a huge stretch to argue that the same federal price-support program that bolsters Florida sugar cane growers contributes to the degradation of the Everglades. And it should come as no great surprise that these same sugar magnates have used all the clout their political money brings, both at the national and local levels, first to resist a cleanup and second to avoid paying for it.

So far, they have, in large part, succeeded. Federal and state tax money is paying most of the price tag for what Florida environmentalists call a weak cleanup plan. From Tallahassee to Washington, sugar cane knows how to work its connections to get what it wants.

## MEET THE FANJUL FAMILY

To understand the power of Florida sugar, it is illustrative to look at the very wealthy, very private members of the Fanjul family of Florida. With an enormous sugar empire that dwarfs even the U.S. Sugar Corporation, the Fanjul family's sugar holdings in Florida and the Dominican Republic total more than 400,000 acres, operated by a family of companies under the corporate umbrella of Flo-Sun, Inc.

Four brothers — Alfonso "Alfie," José "Pepe," Alexander, and Andres — are the principal owners and managers of Flo-Sun. The Fanjuls are Cuban-American descendants of the wealthy Gomez-Mena family of Cuba, which controlled much of the American-dominated sugar industry in Cuba until Fidel Castro seized power, and the New York-based Fanjul family. Matriarch Lillian de Fanjul and her four sons make their home in exclusive Palm Beach, Florida, an hour's drive and a world away from the gritty sugar plantations of western Palm Beach County.

Unlike U.S. Sugar Corporation, its Florida rival, whose offices are smack in the middle of Clewiston's sugar fields, Flo-Sun is headquartered in a posh complex in Palm Beach. The Fanjuls themselves live in multimillion-dollar mansions set among the palm-tree-lined streets of the town.

With their wealth conservatively estimated at several hundred million dollars (*Forbes* magazine puts the figure at $500 million), the Fanjuls can afford to spread around lots of political money. And they do. Family members, corporate executives, the corporations themselves, and the Florida Sugar Cane League PAC have contributed $2.6 million to political candidates and committees since 1979. (Until mid-1994, the Fanjuls and executives for Fanjul companies accounted for an increasing share of the Florida Sugar Cane League PAC's funds, from 20 percent in 1980 to 62 percent in 1992. While the PAC is still filing reports with the FEC, there has been little actual activity, with only $38 listed as receipts since October 1994.) Fanjul family members alone gave direct contributions of $359,505 to more than 172 congressional candidates of both parties.

That is just the "hard" money. The Fanjuls also give substantial "soft money" contributions to political parties. In fact, the Fanjul family and its companies account for 59 percent of all the soft money given by the sugar industry to the national party committees since 1991.

The Democratic and Republican parties alike are beneficiaries of Fanjul largesse. Alfie Fanjul, one of the four Fanjul brothers who controls Flo-Sun, is a lifelong Democrat. He served as co-chairman of Bill Clinton's

Florida campaign, and co-sponsored a Cuban-American fund-raiser at Victor's Cafe in Miami that reportedly raised more than $100,000 for Clinton's 1992 presidential campaign, according to *The Wall Street Journal*.[1] In addition, Fanjul-controlled companies have contributed $131,000 to the Democratic National Committee and the Democratic Congressional Campaign Committee since 1991. After Clinton won, Fanjul was invited to attend the president-elect's "economic summit" in Little Rock, where he occupied a place three seats away from Clinton and Vice President-elect Al Gore and next to future Treasury Secretary Lloyd Bentsen. Alfie Fanjul later appeared with Interior Secretary Bruce Babbitt at a ceremony announcing an Everglades cleanup plan.

His brother, José "Pepe" Fanjul, is a Republican activist who served as a vice chairman of the Bush-Quayle finance committee during the 1988 presidential campaign. In 1988, Pepe Fanjul was also a member of "Team 100," the group of people giving $100,000 or more to the Republican Party. In 1990, he was a guest in the Bush White House. Since 1991, Fanjul-controlled companies have contributed more than $186,500 in soft money to Republican national committees. More recently, Pepe Fanjul joined the finance committee of Sen. Bob Dole's (R-Kan.) presidential campaign.

There's nothing unusual about the Fanjul family's extensive political contributions, according to Jorge Dominicis, a vice president of Flo-Sun, Inc. Dominicis was interviewed by a researcher for the Center for Responsive Politics in August 1994. "People who are powerful contribute and have access to political leaders," Dominicis said. "You contribute to people with whom you've had a relationship in the past. It's not hard to figure out who to give money to. Tom Lewis [R-Fla.] has been very helpful. And it doesn't take much to realize that Charlie Rose [D-N] is chairman of the subcommittee that handles your issues. It's all part of the process. It keeps you from being forgotten or not having access to that office. If you're a large company and you don't contribute, you have a tough time. Members conclude that you don't support them."

Over the years, the Fanjuls have enjoyed high-level contacts with the Reagan, Bush and Clinton Administrations, key members of Congress, and most of Florida's political establishment. Former Commerce Secretary Robert Mosbacher is a family friend, and during the Bush Administration, the Fanjuls and Mosbacher spent a lot of time together, including vacations at a Fanjul-owned resort in the Dominican Republic. In February 1994, according to the *Palm Beach Post*, Alfie Fanjul paid $5,000 to attend a fund-raising dinner organized by the Democratic Senatorial Campaign Committee for Sen. Bob Graham (D-Fla.), and even offered the use of his yacht *Crili* to attendees.

The Fanjul sugar operation is spread out over a number of large farms in the Everglades Agricultural Area around the southern edge of Lake Okeechobee. It includes Okeelanta Corporation, Osceola Farms, the Atlantic Sugar Association, King Sugar Corporation, New Hope Sugar Company, Closter Farms, and more. The company also grows rice and corn, and this year Flo-Sun began building a $200 million cogeneration power plant that will burn waste products of sugar cane and sell electricity to Florida Power & Light Company.

Flo-Sun operates both sugar mills and a sugar refinery that turns out ready-to-eat sugar that's sold directly to consumers. At the company's Okeelanta facility, tens of thousands of 100-pound bags of sugar are stacked to the ceiling, awaiting shipment to supermarkets. Still more of the refined sugar is packed into sacks bearing the label of Flo-Sun's own brand, Florida Crystals.

Profitable though Flo-Sun is, it is impossible to say exactly how profitable. Like U.S. Sugar Corporation, Flo-Sun is a privately held company, and its spokesmen won't comment on its balance sheet. Thanks to the work of the General Accounting Office, however, it is possible to estimate the value to Flo-Sun's bottom line of the federal price-support program for sugar.

The GAO estimates that the sugar program translates into about five cents for each pound of sugar produced in the United States. Taking Flo-Sun's output of 650,000 tons of sugar, that means that about $65 million per year goes directly to the Fanjuls' bottom line as a result of the price-support system. A more complicated calculation, taking into account the acreage, its milling operations, and apportioned benefits, was performed by the staff of Rep. Dick Armey (R-Texas). It also arrived at benefits of $65 million.

Florida environmentalists have produced an estimate that is even higher -- some $85 million in benefits to the Fanjul family, or as much as $125 million if the profits they earn from their Dominican Republic business are included. (The Armey estimate does not include any calculation of what the Fanjuls earn from their Dominican Republic holdings. According to George Barley, a Florida real estate businessman and chair of Save Our Everglades and several related Everglades preservation organizations, the import part of the U.S. sugar program allows the Fanjuls to import sugar into the United States from the Dominican Republic and sell it at a higher price than they would get on the world market.)

The Politics of Sugar                                                                                  Page 3 of 4

Even sticking to the GAO's conservative figures, however, Flo-Sun's $65 million in yearly benefits represent about 12 percent of all of the benefits to sugar cane and sugar beet growers nationwide as a result of the U.S. sugar program. Considering that Fanjul family members and officers of their companies have contributed about $1.2 million in campaign contributions over the past decade, that is not at all a bad return on their investment.

The Fanjuls are the largest, richest beneficiaries of the federal sugar program. But they are far from the only beneficiaries in Florida, and are hardly the only campaign contributors. A series on the sugar industry in the *St. Petersburg Times* in 1994 estimated the benefits received by Florida sugar cane concerns. Many of these companies are also campaign contributors.

For example, A Duda & Sons, which received an estimated $20 million in benefits from the sugar program, has contributed $155,425 to federal candidates, political committees, and presidential campaigns since 1979, $6,000 in soft money to national parties, and $33,140 in soft money to Florida state political parties. Hilliard Brothers of Florida, which received $1.6 million in federal benefits, contributed $90,773 to federal candidates, political committees, and presidential campaigns; $1,000 in soft money to national parties, and $1,200 to Florida state political parties.

The Florida sugar cane industry's campaign contributions may have helped to preserve the federal price-support system for sugar. This political capital, both at the national and state levels, has also been helpful for another fight: the battle over the Everglades.



The Politics of Sugar



¹ Jeffrey Birnbaum, "Cuban-American Contributors Open Checkbooks After Torricelli Exhibits an Anti-Castro Fervor," *The Wall Street Journal*, August 3, 1992, p. a20.

# EXHIBIT 17

# REDACTED

# EXHIBIT 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| McNEIL NUTRITIONALS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE SUGAR ASSOCIATION, THE | ) |
| AMALGAMATED SUGAR COMPANY, | ) |
| AMERICAN CRYSTAL SUGAR COMPANY, | ) |
| AMERICAN SUGAR CANE LEAGUE, | ) |
| AMERICAN SUGAR REFINING, INC., | ) C.A. No. 05-69-GMS |
| ATLANTIC SUGAR ASSOCIATION, | ) |
| HAWAIIAN SUGAR & TRANSPORTATION | ) |
| COOPERATIVE, IMPERIAL SUGAR | ) |
| COMPANY, MICHIGAN SUGAR COMPANY, | ) |
| MINN-DAK FARMERS COOPERATIVE, | ) |
| OKEELANTA CORPORATION, OSCEOLA | ) |
| FARMS COMPANY, RIO GRANDE VALLEY | ) |
| SUGAR GROWERS, INC., SOUTHERN | ) |
| MINNESOTA BEET SUGAR COOPERATIVE, | ) |
| SUGAR CANE GROWERS COOPERATIVE | ) |
| OF FLORIDA, UNITED STATES SUGAR | ) |
| CORPORATION, WESTERN SUGAR | ) |
| COOPERATIVE, WYOMING SUGAR LLC, | ) |
| AMERICAN SUGARBEET GROWERS | ) |
| ASSOCIATION, AND QORVIS | ) |
| COMMUNICATIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

DEFENDANT AMERICAN SUGAR CANE LEAGUE'S
OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET
OF REQUESTS FOR ADMISSION AND FIRST SET OF INTERROGATORIES

Defendant American Sugar Cane League ("Defendant"), by and through its attorneys,

pursuant to Local Rule 26.1, provides the following objections to Plaintiff McNeil Nutritionals,

LLC's ("McNeil") First Set of Requests for Admission and First Set of Interrogatories.  All of

the following responses are made without waiving, but expressly preserving and subject to each of the following Preliminary Statements and General Objections.

## PRELIMINARY STATEMENTS

1.    The Defendant reserves all questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose in any subsequent proceeding, or the trial of this or any other action.

2.    The Defendant reserves the right to object to the use of these responses or the subject matter thereof, in any subsequent proceeding, or in the trial of this or any other action on any grounds.

3.    The Defendant reserves the right to object on any grounds at any time to a demand for further responses to these or any other requests or other discovery procedures involving or relating to the subject matter of the requests to which the Defendant herein responds.

4.    The Defendant reserves the right at any time to revise, correct, add to, or clarify any of the responses contained herein.

## GENERAL OBJECTIONS

1.    The Defendant objects to each Request as premature under Rule 26(d) of the Federal Rules of Civil Procedure and in excess of the discovery contemplated by the Memorandum and Order of the Court dated April 29, 2005.

2.    The Defendant objects to each Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine.  To the extent supplying the information requested would result in waiving any privilege or objection based on the attorney-client privilege, work-product doctrine, or other applicable privilege, the Defendant objects to providing such information and will not do so.

3.    The Defendant objects generally to each Request to the extent that it purports to impose obligations exceeding the scope of Rules 26, 33 and 36 of the Federal Rules of Civil Procedure, and undertakes no duties beyond those specified in the Rules or applicable law.  The Defendant further objects to each Request to the extent that it seeks information that is irrelevant, would impose an unnecessary burden on the Defendant, and/or asks for documents generated outside of a specified, relevant time period.

4.    The Defendant objects to each Request to the extent that it seeks trade secrets, proprietary information, confidential business information or other similar information that is protected from disclosure by applicable federal or state law.  To the extent any Request seeks such private or confidential information, the Defendant will provide that information only subject to the provisions of District of Delaware Local Rule 26.2 and a protective order acceptable to the Defendant.

5.    The Defendant objects to each Request to the extent that it seeks information beyond that which is limited and appropriate to the question of the Court's personal jurisdiction over the Defendant.

6.    The Defendant generally objects to McNeil's purported "Definitions" to the extent that the use of any such definition imposes obligations beyond those required under the Federal Rules of Civil Procedure and the Court's local rules.  Further, the Defendant objects generally to McNeil's purported "Definitions" to the extent that the use of a given definition in a Request expands the scope of the inquiry beyond the limited and appropriate jurisdictional discovery ordered by the Court on April 29, 2005.

7.    The Defendant objects to McNeil's definition of "YOU or YOUR" because it is overly broad, vague and ambiguous, including but not limited to the nature, capacity and

3

authority of the persons acting on the Defendant's behalf, and vague and ambiguous as to the time of such persons' representation of the Defendant.   Unless otherwise noted, responses are limited to and on behalf of the named Defendant only.

      8.    The Defendant objects that the phrase "sugar or other products" used in the request is vague and ambiguous.

      Subject to and without waiving these objections, Defendant responds specifically to each Request as follows:

## RESPONSES TO REQUESTS FOR ADMISSION

      1.    Admit that you sell sugar or other products to companies that in turn distribute that sugar or those other products throughout the United States.

      **RESPONSE:**

      Denied.

      2.    Admit that you derive substantial revenues from the sale of sugar or other products to companies that in turn distribute that sugar or those other products throughout the United States.

      **RESPONSE:**

      Denied.

      3.    Admit that sugar you produce is incorporated into food products that are advertised, marketed and sold throughout the United States.

      **RESPONSE:**

      Denied.

      4.    Admit that sugar you produce is incorporated into food products that are advertised, marketed and sold in the State of Delaware.

**RESPONSE:**

Denied.

5.      Admit that you sell sugar or other products to cooperatives for resale in the United States.

**RESPONSE:**

Denied.

6.      Admit that the cooperatives market, sell or distribute sugar or other products on your behalf in the United States.

**RESPONSE:**

Denied.

7.      Admit that the sugar and other products you produce are offered for sale in Delaware.

**RESPONSE:**

Denied.

## INTERROGATORIES

1.      Identify the dollar amount of sugar you sold in the United States in each of the last five years on an annual basis.

**RESPONSE:**

Subject to and without waiving the general objections stated above, Defendant responds

that it does not sell sugar.

2.      Identify the volume of sugar, measured in pounds, you sold in the United States in each of the last five years on an annual basis.

**RESPONSE:**

Subject to and without waiving the general objections stated above, Defendant responds that it does not sell sugar.

3.    For each Request for Admission that you do not admit without qualification, state the basis for your response.

**RESPONSE:**

Subject to and without waiving the general objections stated above, Defendant responds that it is a trade association and sells no products.

6

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_

    Richard L. Horwitz (No. 2264)
    Sarah E. DiLuzio (No. 4085)
    Hercules Plaza – Sixth Floor
    1313 North Market Street
    Wilmington, DE  19801
    Telephone:  (302) 984-6000
    Facsimile:  (302) 658-1192
    E-mail:  rhorwitz@potteranderson.com
            sdiluzio@potteranderson.com

OF COUNSEL:

James P. Murphy
Squire, Sanders & Dempsey LLP
1201 Pennsylvania Avenue, N.W., Suite 500
Washington, DC  20004
Telephone:  (202) 626-6600
Facsimile:  (202) 626-6780

Adam R. Fox
Squire, Sanders & Dempsey LLP
801 So. Figueroa Street, Suite 1400
Los Angeles, CA  90017
Telephone:  (213)624.2500
Facsimile:  (213) 623-4581

*Attorneys for Defendant*

Dated: July 8, 2005

## VERIFICATION

I, James K Simon, a duly authorized representative of the American Sugar

Cane League, certify under penalty of perjury that the foregoing Responses to Plaintiff's First Set

of Interrogatories are true and correct to the best of my knowledge, information, and belief.

7-7-05
Date

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify that on July 8, 2005, I served via hand delivery

true and correct copies of DEFENDANT AMERICAN SUGAR CANE LEAGUE'S

OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR

ADMISSION AND FIRST SET OF INTERROGATORIES, to the following counsel of record:

> Steven J. Balick (No. 2114)
> ASHBY & GEDDES
> 222 Delaware Avenue
> 17th Floor
> Wilmington, DE 19801
> Telephone: (302) 654-1888
> sbalick@ashby-geddes.com

Additionally, copies of the foregoing document have been sent to the following counsel

in the manner indicated:

> BY FEDERAL EXPRESS
>
> Steven A. Zalesin, Esquire
> Patterson, Belknap, Webb & Tyler LLP
> 1133 Avenue of the Americas
> New York, NY 10036-6710
>
> Donna Malin, Esquire
> Johnson & Johnson
> One Johnson & Johnson Plaza
> New Brunswick, NJ 08543

> Sarah E. DiLuzio (No. 4085)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza – Sixth Floor
> 1313 North Market Street
> Post Office Box 951
> Wilmington, DE 19801
> Telephone: (302) 984-6000
> Facsimile: (302) 658-1192
> E-mail: sdiluzio@potteranderson.com

# EXHIBIT 19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

McNEIL NUTRITIONALS, LLC,     )
           )
       Plaintiff,     )
           )
   v.     )
           )
THE SUGAR ASSOCIATION, THE     )
AMALGAMATED SUGAR COMPANY,     )
AMERICAN CRYSTAL SUGAR COMPANY, )
AMERICAN SUGAR CANE LEAGUE,     )
AMERICAN SUGAR REFINING, INC.,     )  C.A. No. 05-69-GMS
ATLANTIC SUGAR ASSOCIATION,     )
HAWAIIAN SUGAR & TRANSPORTATION  )
COOPERATIVE, IMPERIAL SUGAR     )
COMPANY, MICHIGAN SUGAR COMPANY, )
MINN-DAK FARMERS COOPERATIVE,     )
OKEELANTA CORPORATION, OSCEOLA     )
FARMS COMPANY, RIO GRANDE VALLEY )
SUGAR GROWERS, INC., SOUTHERN     )
MINNESOTA BEET SUGAR COOPERATIVE, )
SUGAR CANE GROWERS COOPERATIVE     )
OF FLORIDA, UNITED STATES SUGAR     )
CORPORATION, WESTERN SUGAR     )
COOPERATIVE, WYOMING SUGAR LLC,     )
AMERICAN SUGARBEET GROWERS     )
ASSOCIATION, AND QORVIS     )
COMMUNICATIONS, LLC,     )
           )
       Defendants.     )

## DEFENDANT AMERICAN SUGARBEET GROWERS ASSOCIATION'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION AND FIRST SET OF INTERROGATORIES

Defendant American Sugarbeet Growers Association ("Defendant"), by and through its

attorneys, pursuant to Local Rule 26.1, provides the following objections to Plaintiff McNeil

Nutritionals, LLC's ("McNeil") First Set of Requests for Admission and First Set of

Interrogatories.  All of the following responses are made without waiving, but expressly

preserving and subject to each of the following Preliminary Statements and General Objections.

## PRELIMINARY STATEMENTS

1.      The Defendant reserves all questions as to competency, relevancy, materiality,

privilege, and admissibility as evidence for any purpose in any subsequent proceeding, or the

trial of this or any other action.

2.      The Defendant reserves the right to object to the use of these responses or the

subject matter thereof, in any subsequent proceeding, or in the trial of this or any other action on

any grounds.

3.      The Defendant reserves the right to object on any grounds at any time to a

demand for further responses to these or any other requests or other discovery procedures

involving or relating to the subject matter of the requests to which the Defendant herein responds.

4.      The Defendant reserves the right at any time to revise, correct, add to, or clarify

any of the responses contained herein.

## GENERAL OBJECTIONS

1.      The Defendant objects to each Request as premature under Rule 26(d) of the

Federal Rules of Civil Procedure and in excess of the discovery contemplated by the

Memorandum and Order of the Court dated April 29, 2005.

2.      The Defendant objects to each Request to the extent that it seeks information

protected by the attorney-client privilege and/or work-product doctrine.  To the extent supplying

the information requested would result in waiving any privilege or objection based on the

attorney-client privilege, work-product doctrine, or other applicable privilege, the Defendant

objects to providing such information and will not do so.

3.     The Defendant objects generally to each Request to the extent that it purports to impose obligations exceeding the scope of Rules 26, 33 and 36 of the Federal Rules of Civil Procedure, and undertakes no duties beyond those specified in the Rules or applicable law. The Defendant further objects to each Request to the extent that it seeks information that is irrelevant, would impose an unnecessary burden on the Defendant, and/or asks for documents generated outside of a specified, relevant time period.

4.     The Defendant objects to each Request to the extent that it seeks trade secrets, proprietary information, confidential business information or other similar information that is protected from disclosure by applicable federal or state law. To the extent any Request seeks such private or confidential information, the Defendant will provide that information only subject to the provisions of District of Delaware Local Rule 26.2 and a protective order acceptable to the Defendant.

5.     The Defendant objects to each Request to the extent that it seeks information beyond that which is limited and appropriate to the question of the Court's personal jurisdiction over the Defendant.

6.     The Defendant generally objects to McNeil's purported "Definitions" to the extent that the use of any such definition imposes obligations beyond those required under the Federal Rules of Civil Procedure and the Court's local rules. Further, the Defendant objects generally to McNeil's purported "Definitions" to the extent that the use of a given definition in a Request expands the scope of the inquiry beyond the limited and appropriate jurisdictional discovery ordered by the Court on April 29, 2005.

7.     The Defendant objects to McNeil's definition of "YOU or YOUR" because it is overly broad, vague and ambiguous, including but not limited to the nature, capacity and

3

authority of the persons acting on the Defendant's behalf, and vague and ambiguous as to the time of such persons' representation of the Defendant.    Unless otherwise noted, responses are limited to and on behalf of the named Defendant only.

      8.    The Defendant objects that the phrase "sugar or other products" used in the request is vague and ambiguous.

      Subject to and without waiving these objections, Defendant responds specifically to each Request as follows:

## RESPONSES TO REQUESTS FOR ADMISSION

      1.    Admit that you sell sugar or other products to companies that in turn distribute that sugar or those other products throughout the United States.

**RESPONSE:**

Denied.

      2.    Admit that you derive substantial revenues from the sale of sugar or other products to companies that in turn distribute that sugar or those other products throughout the United States.

**RESPONSE:**

Denied.

      3.    Admit that sugar you produce is incorporated into food products that are advertised, marketed and sold throughout the United States.

**RESPONSE:**

Denied.

      4.    Admit that sugar you produce is incorporated into food products that are advertised, marketed and sold in the State of Delaware.

**RESPONSE:**

Denied.


5.     Admit that you sell sugar or other products to cooperatives for resale in the United States.

**RESPONSE:**

Denied.


6.     Admit that the cooperatives market, sell or distribute sugar or other products on your behalf in the United States.

**RESPONSE:**

Denied.


7.     Admit that the sugar and other products you produce are offered for sale in Delaware.

**RESPONSE:**

Denied.

## INTERROGATORIES

1.     Identify the dollar amount of sugar you sold in the United States in each of the last five years on an annual basis.

**RESPONSE:**

Subject to and without waiving the general objections stated above, Defendant responds

that it does not sell sugar.


2.     Identify the volume of sugar, measured in pounds, you sold in the United States in each of the last five years on an annual basis.

**RESPONSE:**

Subject to and without waiving the general objections stated above, Defendant responds that it does not sell sugar.


3.      For each Request for Admission that you do not admit without qualification, state the basis for your response.

**RESPONSE:**

Subject to and without waiving the general objections stated above, Defendant responds that it is a trade association and sells no products.

6

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_

Richard L. Horwitz (No. 2264)
Sarah E. DiLuzio (No. 4085)
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
E-mail: rhorwitz@potteranderson.com
          sdiluzio@potteranderson.com


OF COUNSEL:

James P. Murphy
Squire, Sanders & Dempsey LLP
1201 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20004
Telephone: (202) 626-6600
Facsimile: (202) 626-6780

Adam R. Fox
Squire, Sanders & Dempsey LLP
801 So. Figueroa Street, Suite 1400
Los Angeles, CA 90017
Telephone: (213)624.2500
Facsimile: (213) 623-4581

*Attorneys for Defendant*


Dated: July 8, 2005

## VERIFICATION

I, _Luther Markwart_, a duly authorized representative of American Sugarbeet

Growers Association, certify under penalty of perjury that the foregoing Responses to Plaintiff's

First Set of Interrogatories are true and correct to the best of my knowledge, information, and belief.


_July 5, 2005_
Date

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify that on July 8, 2005, I served via hand delivery

true and correct copies of DEFENDANT AMERICAN SUGARBEET GROWERS

ASSOCIATION'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF

REQUESTS FOR ADMISSION AND FIRST SET OF INTERROGATORIES, to the following

counsel of record:

> Steven J. Balick (No. 2114)
> ASHBY & GEDDES
> 222 Delaware Avenue
> 17th Floor
> Wilmington, DE 19801
> Telephone: (302) 654-1888
> sbalick@ashby-geddes.com

Additionally, copies of the foregoing document have been sent to the following counsel

in the manner indicated:

> BY FEDERAL EXPRESS
>
> Steven A. Zalesin, Esquire
> Patterson, Belknap, Webb & Tyler LLP
> 1133 Avenue of the Americas
> New York, NY 10036-6710
>
> Donna Malin, Esquire
> Johnson & Johnson
> One Johnson & Johnson Plaza
> New Brunswick, NJ 08543

> *Sarah E. DiLuzio*
>
> Sarah E. DiLuzio (No. 4085)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza – Sixth Floor
> 1313 North Market Street
> Post Office Box 951
> Wilmington, DE 19801
> Telephone: (302) 984-6000
> Facsimile: (302) 658-1192
> E-mail: sdiluzio@potteranderson.com

.

# EXHIBIT 20

# REDACTED

# EXHIBIT 21

# REDACTED

# EXHIBIT 22

# REDACTED

# EXHIBIT 23

# REDACTED

# EXHIBIT 24

# REDACTED

# EXHIBIT 25

# REDACTED