# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| McNEIL NUTRITIONALS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:05-CV-00069-GMS |
| THE SUGAR ASSOCIATION, THE | ) |
| AMALGAMATED SUGAR COMPANY, et al. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Richard L. Horwitz (No. 2264)

James P. Murphy
SQUIRE, SANDERS & DEMPSEY LLP
1201 Pennsylvania Avenue, N.W.
Suite 500
Washington, DC  20004
Tel: (202) 626-6600
Fax: (202) 626-6780

Adam R. Fox
SQUIRE, SANDERS & DEMPSEY LLP
801 So. Figueroa Street, Suite 1400
Los Angeles, CA  90017
Tel: (213)624.2500
Fax: (213) 623-4581

Sarah E. DiLuzio (No. 4085)
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
Tel: (302) 984-6000
Fax: (302) 658-1192
E-mail: rhorwitz@potteranderson.com
         sdiluzio@potteranderson.com
*Attorneys for Defendants*

August 12, 2005

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.  McNEIL'S CLAIMS SHOULD BE DISMISSED FOR IMPROPER
    VENUE BECAUSE THEY WERE REQUIRED TO HAVE BEEN
    ASSERTED IN THE CALIFORNIA COMPLAINT .................................................... 2

    A.  The Two Actions Are Offshoots of the Same Basic Controversy ................... 2

    B.  McNeil's Jurisdictional Argument Rests on Conjecture ................................. 4

II.  THE CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS
     ARE ENTITLED TO THE IMMUNITY OF THE *NOERR-*
     *PENNINGTON* DOCTRINE ...................................................................................... 5

    A.  *Noerr-Pennington* Immunity Applies Both to Petitions to the
        Government and to Public Statements Attendant to Such
        Petitioning Activity ......................................................................................... 5

    B.  McNeil's "Sham" Allegations Are Misguided Under *Noerr-*
        *Pennington* Precedent and Factually Incorrect ............................................. 6

    C.  Dismissal on the Basis of *Noerr-Pennington* Immunity Is
        Appropriate at the Pleadings Stage ................................................................. 8

III.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
      McNEIL'S LANHAM ACT CLAIM AGAINST PARTIES WITH
      WHICH McNEIL DOES NOT COMPETE ................................................................. 9

IV.  SEVERAL DEFENDANTS LACK SUFFICIENT CONTACTS WITH
     DELAWARE TO ALLOW FOR PERSONAL JURISDICTION HERE ...................... 12

    A.  There Is No Specific Jurisdiction Over the PJ Moving Defendants ............. 12

        1.  McNeil Identifies No Act in Delaware That Satisfies
            Section 3104(c)(3) of the Delaware Long-Arm Statute ...................... 12

2.      McNeil Identifies No Commercial, Active Website That
Can Subject the PJ Moving Defendants to Jurisdiction
Pursuant to Section 3104(c)(1) of the Delaware Long-Arm
Statute ...........................................................................................................14

B.      There Is No General Jurisdiction Over the PJ Moving Defendants............................16

C.      McNeil Makes No Special Showing as to Qorvis and Accordingly
Cannot Establish Personal Jurisdiction Over It ...........................................................19

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

**PAGE**

*Alpine View Co. v. Atlas Copco AB,*
    205 F.3d 208 (5th Cir. 2000) ......................................................................17

*Aircapital Cablevision, Inc. v. Starlink Comms. Group, Inc.,*
    634 F. Supp. 316 (D. Kan. 1986) .................................................................7

*Amberson Holdings, LLC v. Westside Story Newspaper,*
    110 F. Supp. 2d 332 (D.N.J. 2000) ........................................................15, 20

*Amoco Egypt Oil Co. v. Leonis Navigation Co.,*
    1 F.3d 848 (9th Cir. 1993) .........................................................................17

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
    772 F. Supp. 1458 (D. Del. 1991)...............................................................12

*Armstrong Surgical Ctr., Inc. v. Armstrong Cty. Mem'l Hosp.,*
    185 F.3d 154 (3d Cir. 1999)........................................................................8

*Asahi Metal Indus. Co. v. Superior Court of Cal.,*
    480 U.S. 102 (1987)..................................................................................17

*Barone v. Rich Bros. Interstate Display Fireworks Co.,*
    25 F.3d 610 (8th Cir. 1994) ......................................................................17

*Boone v. Oy Partek Ab,*
    724 A.2d 1150 (Del Super. Ct. 1997) ....................................................17, 18

*Brownsville Golden Age Nursing Home, Inc. v. Wells,*
    839 F.2d 155 (3d Cir. 1988)....................................................................5, 9

*Calder v. Jones,*
    465 U.S. 783 (1984).................................................................................13

*C.R. Bard Inc. v. Guidant Corp.,*
    997 F. Supp. 556 (D. Del. 1998) ...............................................................13

*Cardtoons L.C. v. Major League Baseball Players Ass'n,*
    208 F.3d 885 (10th Cir. 2000) ...................................................................5

*Compagnie des Bauxites de Guinee v. L'Union Atlantiques S.A. D'Assurances,*
    723 F.2d 357 (3d Cir. 1983).......................................................................12

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
  948 F. Supp. 338 (D. Del. 1996) ................................................................................13

*Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*,
  165 F.3d 221 (3d Cir. 1998) ....................................................................................10

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962) ..................................................................................................5

*Dehne v. Avanino*,
  219 F. Supp. 2d 1096 (D. Nev. 2001) .......................................................................6

*In re Elonex Phase II Power Mgmt Litig.*,
  2003 U.S. Dist. LEXIS 7715 (D. Del. May 6, 2003) ...............................................17

*eSpeed, Inc. v.BrokerTec USA, LLC*,
  2004 U.S. Dist. LEXIS 19760 (D. Del. Sept. 13, 2004) ..........................................14

*FilmTec Corp. v. Hydranautics*,
  67 F.3d 931 (Fed. Cir. 1995) .....................................................................................8

*Ford v. Nylcare Health Plans of the Gulf Coast, Inc.*,
  301 F.3d 329 (5th Cir. 2002) ................................................................................11

*Gallant v. Trustees of Columbia Univ.*,
  111 F. Supp. 2d 638 (E.D. Pa. 2000) ......................................................................19

*Great Lakes Rubber Corp. v. Herbert Cooper Co.*,
  286 F.2d 631 (3d Cir. 1961) ..................................................................................2, 3

*Helicopteros Nacionales de Colombia v. Hall*,
  466 U.S. 408 (1984) ................................................................................................18

*IMO Indus., Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998) ....................................................................................13

*McDonald v. Smith*,
  472 U.S. 479 (1985) ..................................................................................................6

*Merck & Co., Inc. v. Barr Labs., Inc.*,
  179 F. Supp. 2d 368 (D. Del. 2002) ........................................................................17

*M&M Techs., Inc. v. Gurtler Chems., Inc.*,
  2005 U.S. Dist. LEXIS 1726 (D. Del. Feb. 8, 2005) ...............................................20

iv

*Motorola Inc. v. PC-Tel, Inc.*,
  58 F. Supp. 2d 349 (D. Del. 1999)......................................................................................18

*Osteotech, Inc. v. Gensci Regeneration Scis., Inc.*,
  6 F. Supp. 2d 349 (D.N.J. 1998).........................................................................................15

*Perkins v. Benguet Consol. Mining Co.*,
  342 U.S. 437 (1952)............................................................................................................17

*Procter & Gamble Co. v. Amway Corp.*,
  242 F.3d 539 (5th Cir. 2001)..............................................................................................11

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993)........................................................................................................5, 6, 7

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001)...............................................................................................13

*Serbin v. Ziebart Int'l Corp., Inc.*,
  11 F.3d 1163 (3d Cir. 1993).................................................................................................9

*Siemens A.G. v. LG Semicon Co., Ltd.*,
  69 F. Supp. 2d 622 (D. Del. 1999)................................................................................14, 18

*In re Texas Prisoner Litig.*,
  41 F. Supp. 2d 960 (W.D. Mo. 1999).................................................................................16

*Thorn v. Reliance Van Co., Inc.*,
  736 F.2d 929 (3d Cir. 1984)...............................................................................................10

*Toys 'R' Us v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2002)...............................................................................................14

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
  735 F.2d 61 (3d Cir. 1984).................................................................................................12

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*,
  292 F.3d 384 (3d Cir. 2002).................................................................................................2

*Xerox Corp. v. SCM Corp.*,
  576 F.2d 1057 (3d Cir. 1978)...............................................................................................2

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997)...................................................................................14

## **RULES AND STATUTES**

10 Del. C. § 3104(c).................................................................................................................. passim

Federal Rule of Civil Procedure 13(a) ...................................................................................2

## INTRODUCTION

McNeil's Opposition contradicts itself again and again.  It criticizes Defendants for seeking to "avoid" the merits of the Delaware Action, (Opp'n at 1), but admits McNeil has the same objective, *i.e.*, to avoid the earlier-filed California Action, (*id.* at 7-8).  The Opposition also accuses Defendants of forum-shopping in their "strategic" filing of the California Action, (*id.* at 5), but never denies that McNeil could have filed the claims it now asserts in this Delaware Action as counterclaims in California.  McNeil chastises Defendants for characterizing the *Noerr-Pennington* doctrine as a brand of "immunity," but quotes governing Supreme Court precedent that uses the identical term to describe that doctrine's scope and purpose.  (*Id.* at 19-20).  McNeil likewise concedes that the California Action raises issues about Splenda's health characteristics and then— one sentence later—implies this subject will not require the California court to "hear testimony from medical experts." (*id.* at 12).  McNeil even admits that "roughly 15 percent" of the sucralose in Splenda is "absorbed by the gastrointestinal tract" but complains it is "knowingly false" for the Defendants to identify as "FICTION" the McNeil statement that "[o]nce eaten, Splenda simply passes through the body," (*id.* at 6).

When these and other contradictions are untangled, it becomes clear this case should be dismissed.  The claims asserted in the Delaware Action bear a logical relationship to the claims being litigated in the earlier-filed California Action, and governing law requires the dismissal of this later-filed suit.  Likewise, Defendants are immune from this lawsuit because the claims arise from communications attendant to legitimate petitioning activities.  McNeil is not a competitor of the Sugar Association, the American Sugarbeet Growers Association or Qorvis Communications, LLC ("Qorvis").

And despite being afforded the opportunity to conduct jurisdictional discovery, McNeil has failed to produce evidence justifying the exercise of personal jurisdiction over a number of the Defendants consistent with Delaware law and constitutional due process.

## ARGUMENT

**I.** **McNEIL'S CLAIMS SHOULD BE DISMISSED FOR IMPROPER VENUE BECAUSE THEY WERE REQUIRED TO HAVE BEEN ASSERTED IN THE CALIFORNIA COMPLAINT**

The earlier-filed California Action and the present dispute stem from the same basic controversy. McNeil charges that "[t]he core message" of the Defendants that provides a basis for the Delaware Action involves representations about the "health threat to consumers" of Splenda. (Opp'n at 5). McNeil also admits that the California Action alleges, among other things, that McNeil's advertising of Splenda as "healthy" is misleading. (Opp'n at 12). Because both cases assert Lanham Act false advertising claims, the legal issues bearing on this factual question are likely to be identical. Accordingly, under Federal Rule of Civil Procedure 13(a) and Third Circuit law, the two cases "involve many of the same . . . factual and legal issues" and are "offshoots of the same basic controversy." *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961). Because the claims asserted in this case were "asserted separately, subsequently," they are "barred." *Id.*

### A. The Two Actions Are Offshoots of the Same Basic Controversy

Compulsory counterclaims need only "bear[] a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978). The concept of a "logical relationship" is construed liberally in this Circuit to promote judicial economy and avoid a multiplicity of suits. *Transamerica Occidental Life Ins. Co. v.*

2

*Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002). McNeil does not challenge these principles. Indeed, McNeil even admits that its action is "not *un*related" to the California Action. (Opp'n at 12).

McNeil suggests instead that combining the actions would "not necessarily" prevent substantial duplication of time and effort, distinguishing its claims in this action as being "primarily about Defendants' . . . assertions that Splenda contains dangerous chemicals and is *unsafe*," from the charges in the California Action that McNeil has falsely advertised that Splenda "is healthy." (*Id.*). McNeil reaches even further to suggest that only one of these issues "will require the Court to examine FDA submissions and hear testimony from medical experts." (*Id.*). That is plainly incorrect. Both issues will be informed by, and will demand presentation of, much of the same evidence. Allowing separate trials will therefore result in substantial duplication of time and effort.

McNeil also asserts that "questions of whether and how various Defendants contributed to the truthaboutsplenda website, and whether the website has caused harm to McNeil, will be central to this action, and will not come before the court in the California Action." (*Id.*). But this is true only because of *McNeil's voluntary and strategic choice* not to assert its claims in the California action, despite its obligation to do so. *See* Fed. R. Civ. P. 13(a). McNeil cannot avoid the effects of Rule 13 by refusing to comply with its obligations. *See Great Lakes*, 286 F.2d at 634 (holding that a defendant and putative counterclaimant must "assert his claim in the same suit for it would be barred if asserted separately, subsequently").

**B.     McNeil's Jurisdictional Argument Rests on Conjecture**

Without staking out a definitive position as to any party, McNeil speculates that "some of the parties in this action may not be subject to jurisdiction in California," which would make Rule 13 inapplicable.  (Opp'n at 13).  In an effort to bolster this conjecture, McNeil asserts that "the record here does not establish that all parties named in this action would be subject to jurisdiction in the California court."  (*Id.*).  Of course it does not do so.  For if that issue were genuinely relevant to McNeil's Opposition, McNeil would have sought discovery on that point.[1]  Moreover, even had McNeil been greeted by a motion to dismiss such a counterclaim for lack of personal jurisdiction in the California Action, the fact that it has had to contest an identical motion here—in a separate proceeding—demonstrates yet again that McNeil's strategic decision to come to this Court has only frustrated, rather than fostered, judicial economy.[2]

---

[1] The letter from the Sugar Association's counsel in the California Action, which is attached to McNeil's Opposition, memorializes a discussion between counsel, in which he asserted merely that prior to filing the Delaware Complaint, he "did not know" and "had not asked" whether the members of the Sugar Association "would be joining the complaint as *additional plaintiffs*."  (Exh. 7 to Zalesin Decl.) (emphasis added).  Of course, whether the members of the Sugar Association had considered (or not considered) becoming "additional plaintiffs" to the California Action served as no bar to McNeil taking steps to file a counterclaim naming them as counter-defendants in that action.

[2] Ultimately, it is up to McNeil to bring its claim in a court with jurisdiction over the parties it decides to sue. Even if McNeil could not acquire jurisdiction in the Central District of California—a charge for which McNeil offers no proof—that fact would not permit it to sue defendants wherever it wants without reference to the principles of personal jurisdiction, discussed at length below.

4

II.   **THE CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS ARE ENTITLED TO THE IMMUNITY OF THE *NOERR-PENNINGTON* DOCTRINE**

A.   ***Noerr-Pennington* Immunity Applies Both to Petitions to the Government and to Public Statements Attendant to Such Petitioning Activity**

The law in the Third Circuit holds that one who elicits public opinion and interest about another's violations of law, and simultaneously calls these violations to the attention of governmental authorities (even without formally petitioning them) cannot be held liable in tort. *See Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155 (3d Cir. 1988).[3]  McNeil nevertheless tries to avoid this binding precedent by citing a case from the Tenth Circuit, *Cardtoons L.C. v. Major League Baseball Players Ass'n,* 208 F.3d 885 (10th Cir. 2000), which articulates a much narrower proposition. (Opp'n at 16).  McNeil tries to bolster that inapposite authority by citing the Supreme Court in *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690 (1962).  But the language from that case quoted in McNeil's parenthetical discussion of it discloses that it involved purely "private commercial activity, no element of which involved seeking to procure the passage or enforcement of laws." (Opp'n at 16 (quoting *Continental Ore Co.,* 370 U.S. at 707)).  It is therefore irrelevant to the issue McNeil has called into question.

McNeil next contends that the *Noerr-Pennington* doctrine does not immunize alleged trade libel, and once again resorts to citing cases outside the Third Circuit,

---

[3]  Although McNeil does not dispute the authority of *Brownsville*, it attempts to distinguish it from this case by asserting that the rule justifiably applied there because—unlike here—the "defendants had nothing to gain and no financial interest in the outcome" of their petitioning activity. (Opp'n at 19).  But this proposed distinction has been rejected by the United States Supreme Court. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 69 (1993) (extending *Noerr-Pennington* immunity to and finding "no unethical or other improper use of the judicial system" by one who seeks judicial relief against a competitor that "if granted, would have . . . the anticompetitive consequences authorized by federal . . . law").

namely an Eighth Circuit case and an unpublished opinion from a district court in New York. (Opp'n at 17). And again, McNeil tries to bootstrap these isolated and inapplicable authorities by citing another distinguishable case from the Supreme Court, *McDonald v. Smith*, 472 U.S. 479 (1985). (Opp'n at 17). *McDonald* held only that the Petition Clause does not require the State of North Carolina to expand the scope of immunity embraced in its common law for libel so that such immunity is *absolute* rather than qualified. *See McDonald*, 472 U.S. at 485.[4] In rejecting the notion of absolute immunity, the Court relied on other cases applying *Noerr-Pennington* to reaffirm only the uncontroversial notion that "baseless litigation is not immunized by the First Amendment right to petition." *McDonald*, 472 U.S. at 484. This exception is discussed below.

**B.      McNeil's "Sham" Allegations Are Misguided Under *Noerr-Pennington* Precedent and Factually Incorrect**

Although McNeil invokes the term "sham," it does not address, or even mention, the two-part test for determining whether petitioning activity such as litigation is a "sham" for *Noerr-Pennington* purposes, as set forth by the Supreme Court in *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993). The first prong of the test requires a determination identical to that under Federal Rule of Civil Procedure 11, and thus examines whether the defendant's initial lawsuit was "warranted by existing law or at the very least was based on an objectively good faith argument for the extension, modification, or reversal of existing law." *Id.* at 65. An "objectively reasonable effort to litigate cannot be a sham regardless of subjective intent"

---

[4] *See also Dehne v. Avanino*, 219 F. Supp. 2d 1096, 1108-1109 (D. Nev. 2001) ("The issue in *McDonald v. Smith* was whether the Petition Clause provides *absolute* immunity to a defendant charged with expressing libelous and damaging falsehoods in petitions to government officials.") (emphasis added).

and, therefore, if the defendant's suit is warranted by existing law, the analysis is complete and the defendant is entitled to the absolute immunity provided by *Noerr-Pennington. Id.* at 57. Only if the first prong is not met may the analysis proceed to the second prong, which requires an evaluation of whether the initial lawsuit was filed for an improper purpose. *Id.* at 60.

Rather than address this standard, McNeil simply argues that the communications in the truthaboutsplenda website are a "sham" and therefore the Defendants are not entitled to *Noerr-Pennington* immunity. (Opp'n at 18). For example, McNeil asserts that the links to government agencies that appear on the truthaboutsplenda website are insufficient to constitute "*bona fide* 'petitioning' activities," and therefore disclose "an obvious sham." (*Id.*). But this argument ignores the fact that the truthaboutsplenda website provides "attendant publicity" to the California Action—litigation that McNeil nowhere accuses of being a sham.[5] *Aircapital Cablevision, Inc. v. Starlink Comms. Group, Inc.*, 634 F. Supp. 316, 324 (D. Kan. 1986); *see also Professional Real Estate Investors, Inc.*, 508 U.S. at 60 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.").

McNeil compounds its errors by charging that "facts" outside of the complaint demonstrate that Defendants had an improper motive and did not act in good faith in filing the California Action. In this regard, McNeil asserts that Defendants must lack a

---

[5] The Sugar Association's California Action and the attendant publicity represent an objectively reasonable effort to litigate and address the misleading advertising McNeil is employing to sell Splenda. Indeed, at least one adjudication has *already* determined that Splenda advertisements are misleading. *See* 6/20/05 Decision, Advertising Standards Complaints Board, Complaint 05/147 AWAP 05/05 (New Zealand Advertising Standards Authority) (finding Splenda advertising "gave rise to a likelihood of a consumer being confused and mislead as a result of the comparison in the advertisement") (attached as Exhibit A).

proper motive because they did not file a Citizen's Petition with the FDA before filing a federal lawsuit. (Opp'n at 18). But McNeil cites no authority that requires petitioning activity to be pursued in particular venues or in a particular sequence for *Noerr-Pennington* immunity to apply. McNeil also asserts that "Sugar Association president Andrew Briscoe acknowledged in a recent speech to industry colleagues, Splenda is not 'unhealthy.' *See* Exh. 2 to Gavin Decl. at 22-23." (Opp'n at 18). This claim is *false*, as reference to the cited transcript pages reveal. The purportedly quoted word, "unhealthy," appears nowhere on the cited pages of the referenced exhibit. Moreover, Mr. Briscoe has never said that Splenda is "not unhealthy," he has stated only that, at this point, there is insufficient evidence to make claims about Splenda's effects on human health—good or bad.[6]

### C.   Dismissal on the Basis of *Noerr-Pennington* Immunity Is Appropriate at the Pleadings Stage

Although McNeil would have this Court embrace a different rule, the Third Circuit clearly permits dismissals on the pleadings based on *Noerr-Pennington* immunity. *See, e.g., Armstrong Surgical Ctr., Inc. v. Armstrong Cty. Mem'l Hosp.*, 185 F.3d 154, 155 (3d Cir. 1999) (affirming Rule 12(b)(6) dismissal of complaint after concluding that "the alleged conduct was immune" under *Noerr-Pennington*); *cf. FilmTec Corp. v. Hydranautics*, 67 F.3d 931 (Fed. Cir. 1995) (noting that if there is no dispute over facts

---

[6] Moreover, even had the statement been made by Mr. Briscoe, it is not evidence of a "sham" because the statement that "Splenda is not unhealthy" does not contradict the characterization of certain falsehoods in McNeil's advertising, for instance, the fiction the statements that "Splenda has been thoroughly tested" and that "[o]nce eaten, Splenda simply passes through the body."

relating to the petitioning activity that provides the basis for the *Noerr-Pennington* defense, its application may be determined as a matter of law).[7]

Moreover, it should be noted that an adoption of McNeil's position that the application of *Noerr-Pennington* immunity can never be decided as a matter of law would absurdly curtail the efficacy of the doctrine. If individuals who engage in petitioning activity are always required to fight ensuing counterclaims—or separate claims—based on the supposed "sham" nature of their petitioning activity, and are barred from terminating such litigation early, without first enduring needless and expensive discovery, the forced legal costs would severely chill the valuable petitioning activity that *Noerr-Pennington* immunity is designed to protect. *Cf. Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 160 (3d Cir. 1988) ("The problem is not too much citizen involvement but too little").

### III.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER McNEIL'S LANHAM ACT CLAIM AGAINST PARTIES WITH WHICH McNEIL DOES NOT COMPETE

Defendants' Opening Brief observed that under Third Circuit law, a commercial plaintiff may bring a false advertising claim under the Lanham Act only if "its commercial interests have been harmed by a *competitor's* false advertising." *Serbin v. Ziebart Int'l Corp., Inc.,* 11 F.3d 1163, 1175 (3d Cir. 1993) (emphasis added). Consequently, because the Sugar Association and the American Sugarbeet Growers

---

[7] Once again, McNeil resorts to citing authorities outside the Third Circuit, this time relying on a Ninth Circuit case, and adopting the familiar refrain of trying to bootstrap that authority with inapposite Supreme Court authority, in this instance, one that found "*Noerr* immunity . . . depends . . . on the context and nature of the activity" in which the defendants have anchored their claim for that immunity. (Opp'n at 20). Although McNeil argues that on the basis of this authority it is "entitled to develop facts," (*id.*), McNeil fails to identify any facts relevant to this issue which are presently in dispute, which need development, or which could have been the subject of discovery prior to filing the Opposition.

Association are trade associations that sell no products, they are not competitors of McNeil and the Court lacks subject matter jurisdiction over the Lanham Act claim as to these defendants. The Opening Brief similarly observed that because Qorvis is a public relations firm that does not compete with McNeil, the Court similarly lacks subject matter jurisdiction over the purported Lanham Act claim against Qorvis.

McNeil contends that Defendants have "misstate[d] the applicable law," citing *Thorn v. Reliance Van Co., Inc.*, 736 F.2d 929 (3d Cir. 1984) and *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998), for the proposition that non-competitors enjoy standing to assert Lanham Act false advertising claims. (Opp'n at 20-21). But these cases do not grant standing so broadly. The court in *Thorn* held merely that because the plaintiff in that case was "the major shareholder in a firm allegedly driven into bankruptcy by a principal competitor's false advertising," he "was a particularly appropriate standard bearer for the 'commercial interests' of the bankrupt firm." *Serbin*, 11 F.3d at 1177 (discussing *Thorn*). The Third Circuit in *Thorn* thus recognized only a narrow exception to the direct-competitor requirement for plaintiffs, thereby permitting certain "surrogates" to stand in their place, *Conte Bros.*, 165 F.3d at 231, on the basis that they possess a "reasonable interest" in vindicating such claims and may be said to have suffered "sufficient direct injury." *Thorn*, 736 F.2d at 933.

In elaborating upon the "reasonable interest" concept first mentioned in *Thorn*, the Third Circuit in *Conte Bros.* went on to identify two aims of the Lanham Act: (1) vindicating "commercial interests [that] have been harmed by a *competitor*'s false advertising," and (2) "securing to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those

who have not." 165 F.3d at 234 (emphasis added). The court instructed that to demonstrate a reasonable interest in the first objective, it is ***not*** enough to "have alleged a commercial interest." *Id.* One must also allege "competitive harm." *Id.* Thus, the Court in *Conte Bros.* rejected the standing to assert a Lanham Act claim advanced by a group of sellers of motor oils that purportedly competed with a Teflon-based engine lubricant manufactured by the defendants. *Id.* at 236. Although the plaintiffs clearly had a commercial interest, the court found that "plaintiffs do not allege that defendants ran advertisements that said 'don't buy engine additive at Conte Brothers or Hi/Tor—instead, buy Slick 50 directly from the manufacturer,'" and accordingly the plaintiffs' loss of sales did "not impact [their] ability to compete." *Id.* at 234.

Also instructive is *Ford v. Nylcare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329 (5th Cir. 2002). Just one year before *Ford*, the Fifth Circuit expressly adopted the test set forth in *Conte Bros.* by the Third Circuit. *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 562 (5th Cir. 2001). Applying that test in *Ford*, the court of appeals affirmed the dismissal of physicians' claims against an HMO because competition between the parties was "so tenuous that it borders on the hypothetical." *Ford*, 301 F.3d at 338.

In this case, neither the Sugar Association nor the American Sugarbeet Growers Association produce products in competition with McNeil, or indeed any products whatsoever. Qorvis is a public relations and advertising firm that sells services. McNeil sells physical products such as artificial sweeteners. McNeil, therefore, does not have standing to bring Lanham Act false advertising claims against these entities because it does not compete with them and is not even alleged to be a "surrogate" for those that do.

11

## IV.   SEVERAL DEFENDANTS LACK SUFFICIENT CONTACTS WITH DELAWARE TO ALLOW FOR PERSONAL JURISDICTION HERE

McNeil concedes that it bears the burden to make out a *prima facie* case that the contacts between the PJ Moving Defendants[8] and this forum are such that the Court is endowed with authority to exercise personal jurisdiction over them. (Opp'n at 22); *see also Compagnie des Bauxites de Guinee v. L'Union Atlantiques S.A. D'Assurances*, 723 F.2d 357 (3d Cir. 1983).   Although McNeil attempts to characterize the nature of that burden as minimal, the law requires that McNeil produce "actual proofs, not mere allegations." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).  Despite conducting discovery, McNeil has failed to meet this burden.

### A.   There Is No Specific Jurisdiction Over The PJ Moving Defendants

"[T]o determine whether [a court] may exercise personal jurisdiction over a defendant, a court must first examine whether jurisdiction is authorized by the relevant state's long-arm statute, and must then assess whether the exercise of jurisdiction would satisfy the Due Process Clause." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1462 (D. Del. 1991).

#### 1.   McNeil Identifies No Act in Delaware That Satisfies Section 3104(c)(3) of the Delaware Long-Arm Statute

To exercise personal jurisdiction over a defendant pursuant to Section 3104(c)(3) of the Delaware long-arm statute, a plaintiff must produce evidence that the defendant

---

[8] The objecting Defendants are American Crystal Sugar Company, American Sugar Cane League, Atlantic Sugar Association, Inc., Hawaiian Sugar & Transportation Cooperative, Imperial Sugar Company, Michigan Sugar Company, Minn-Dak Farmers Cooperative, Osceola Farms Company, Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Cooperative, Sugar Cane Growers Cooperative of Florida, Western Sugar Cooperative, Wyoming Sugar Company, LLC, American Sugarbeet Growers Association, and Qorvis.  For consistency, Defendants adopt McNeil's characterization of these Defendants as the "PJ Moving Defendants."

has committed a tort "by an act or omission *in* this State." 10 Del. C. § 3104(c)(3) (emphasis added); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 948 F. Supp. 338, 343 (D. Del. 1996). It is not sufficient to show merely that a defendant allegedly "ratified" or "authorized" the publication in Delaware of libelous remarks. *Compaq Computer Corp.*, 948 F. Supp. at 342. If the objecting defendant "was not present in Delaware when he allegedly ratified and authorized the . . . allegedly defamatory statements," then he cannot be deemed "in Delaware" for purposes of a court's jurisdictional authority pursuant to Section 3104(c)(3). *Id.* at 343. In the present case, McNeil does not prove or even allege that the PJ Moving Defendants were actually present in Delaware when they committed *any* acts, tortious or otherwise. Therefore, jurisdiction under Section 3104(c)(3) is not available.

Although McNeil urges the Court to disregard the statute's requirement that an act be committed in Delaware, on the basis that this condition is purportedly "antiquated in the age of electronic torts," (Opp'n at 25), McNeil cites no authority for this proposition. Indeed, McNeil ignores the large body of case law in this Circuit that specifically addresses jurisdictional issues raised in relation to the Internet, without departing from established rules or usurping the role of the legislature. *See, e.g., Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (addressing established rules of personal jurisdiction in the context of modern Internet technology); *C. R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 561 (D. Del. 1998) (same).[9]

---

[9] McNeil attempts to gloss over this defect in its position by arguing that jurisdiction is nevertheless proper under the due process "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984), which the Third Circuit refined in *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998). This analysis hardly makes up for the failure to fit the facts into the operative long-arm statute. Moreover, McNeil's assertion that it suffered the "brunt of the harm" of the alleged

13

2.      **McNeil Identifies No Commercial, Active Website That Can Subject the PJ Moving Defendants to Jurisdiction Pursuant to Section 3104(c)(1) of the Delaware Long-Arm Statute**

Both this Court and the Third Circuit have addressed how websites should be treated for purposes of evaluating contacts that may be relevant to personal jurisdiction. Pursuant to Section 3104(c)(1) of the long-arm statute, the activities of a defendant—whether they manifest on the Internet or otherwise—must be sufficiently directed at residents of Delaware to constitute "transacting business" in the state. *Siemens A.G. v. LG Semicon Co., Ltd.*, 69 F. Supp. 2d 622, 625 (D. Del. 1999). Merely owning or maintaining a website that provides persons across the country access to information does not satisfy the requirements of this statute. *E.g., eSpeed, Inc. v. BrokerTec USA, LLC*, 2004 U.S. Dist. LEXIS 19760 at *11 (D. Del. 2004) (Ex. B). Despite this authority, McNeil suggests that the nature of the truthaboutsplenda website warrants the exercise of jurisdiction over the PJ Moving Defendants because, purportedly, "the website is not passive." (Opp'n at 29).

The propriety of finding jurisdiction based on the operation of a website is based on a "sliding scale of commercial interactivity of the web site." *Toys 'R' Us v. Step Two, S.A.*, 318 F.3d 446, 452 (3rd Cir. 2002); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). Thus, in *Zippo*, the court exercised personal jurisdiction over a defendant because it engaged in a commercial business venture over the Internet, selling passwords to approximately 3,000 subscribers in the state and

---

tort in Delaware is not supported by "actual proof." Indeed, McNeil does not even show that PJ Moving Defendants "expressly aimed" their allegedly tortious conduct at Delaware or that it was the "focal point" of their activity.

entering into seven contracts with Internet access providers to offer services to customers in the state. *See Zippo*, 952 F. Supp at 1126.

In contrast, the court in *Amberson Holdings, LLC v. Westside Story Newspaper*, 110 F. Supp. 2d 332 (D.N.J. 2000), declined to exercise personal jurisdiction over defendants which—unlike the PJ Moving Defendants—had a contract with a forum resident that hosted the defendant's website on one of its servers, and which—unlike the PJ Moving Defendants—enabled forum residents to "click-through" the website, resulting in income generation for the defendants. *Id.* at 335-337. Despite these modest ties to the forum state—which, again, do *not* characterize the PJ Moving Defendants— the court resolved that the because the defendants "have never advertised, solicited, or otherwise conducted any sort of business" within the forum state, "subjecting defendants to personal jurisdiction would offend traditional notions of fair play and substantial justice." *Id.* at 337; *see also Osteotech, Inc. v. Gensci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 356 (D.N.J. 1998) (inclusion of email or phone contact information for interested persons insufficient to confer jurisdiction).

The truthaboutsplenda website is similarly passive. It has *no* commercial attributes.[10] It does not sell sugar or any product, and provide no links or information of commercial nature. In contrast with websites like the one in *Zippo*, no financial transaction is solicited or can be made and no passwords are assigned that would allow users to download messages or other information. The website provides users only

---

[10] The PJ Moving Defendants do not conduct business over the website. Indeed, their names do not even appear on the website. Visitors to the website cannot access it to establish a commercial relationship with the PJ Moving Defendants.

general information about the Splenda product and the California Action.  The website does not confer jurisdiction.

McNeil ignores these important distinctions and asserts that the website is "interactive" because it "invites visitors to 'join the cause'" and to "submit their names and e-mail addresses" as well as "questions, comments, or testimonials."  (Opp'n at 29).  Tellingly, however, McNeil cites no authority that would convert a non-commercial website that merely shares and collects information into a jurisdictional contact sufficient, standing alone, to authorize the exercise of personal jurisdiction.  "[I]nter-computer transfers of information . . . are analogous to forwarding calls to a desired phone number through a switch-board," and accordingly cannot "establish sufficient contracts that would subject a defendant to personal jurisdiction."  *Amberson Holdings LLC*, 110 F. Supp. 2d at 336.  Such contacts "are *de minimis*, and to uphold jurisdiction on this basis would defy common reason."  *Id.*

### B.    There is no General Jurisdiction Over the PJ Moving Defendants

The Delaware long-arm statute includes a provision that largely echoes the constitutional notion of general jurisdiction by endowing courts with authority to exercise their judicial power over any person who "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State."  10 Del. C. § 3104(c)(4).  In other words, general jurisdiction exists only if the defendant's contact with the forum state is "so pervasive and continuing that the defendant is effectively deemed to be a resident for purposes of personal jurisdiction."  *In re Texas Prisoner Litig.*, 41 F. Supp. 2d 960, 962 (W.D. Mo. 1999).  This is so rare that the Supreme Court has only upheld a finding of

16

general jurisdiction over a non-resident defendant in one case.  *See, e.g., Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952); *see also Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 (9th Cir. 1993) (noting *Perkins* is the only case in which the Supreme Court has ever found general jurisdiction).

McNeil nevertheless contends that whatever its deficiencies may be in demonstrating that specific jurisdiction may exist over the PJ Moving Defendants, this Court may exercise the more unusual power of general jurisdiction pursuant to Section 3104(c)(4).  In advancing this argument, McNeil speculates that "it must be the case that at least some of Defendants' sugar ends up in Delaware," and that those sugar producing PJ Moving Defendants are subject to general jurisdiction in Delaware because their products enter the "stream of commerce." (Opp'n at 30).  But the "stream of commerce" theory is a doctrine of ***specific***, not general jurisdiction.   Indeed, this Court has specifically held that "the general jurisdiction provision of the long-arm statute, does not anticipate that placing a product into the stream of commerce would give rise to jurisdiction." *Merck & Co., Inc. v. Barr Labs., Inc.,* 179 F. Supp. 2d 368, 374 (D. Del. 2002); *see also Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156 (Del Super. Ct. 1997) (stream of commerce theory "rests on a specific rather than general jurisdiction rationale"), *aff'd,* 707 A.2d 765 (1998).[11]

_____

[11] This understanding is consistent with that of courts nationwide.  *See also Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 117 (1987) (explaining that the stream of commerce refers to the flow of products from manufacture to distribution to retail sale, and will permit the exercise of specific jurisdiction over foreign manufacturers in certain instances); *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 216 (5th Cir. 2000) (stream of commerce doctrine applies only to specific jurisdiction analysis); *Barone v. Rich Bros. Interstate Display Fireworks Co.,* 25 F.3d 610, 612 (8th Cir. 1994) (stream of commerce theory is a "type of specific jurisdiction").   Moreover, it is consistent with the cases cited by McNeil, which both discuss the application of specific jurisdiction, not general jurisdiction.  *See In re Elonex Phase II*

Because McNeil's Lanham Act and state law claims neither relate to nor arise from the sugar produced by the PJ Moving Defendants—and about which McNeil speculates reaching Delaware in the stream of commerce—that sugar cannot serve as a basis for jurisdiction.[12] As established in the moving papers, none of the PJ Moving Defendants regularly does enough business in Delaware or derives substantial revenues from such business to support the exercise of general jurisdiction. Moreover, the PJ Moving Defendants have no employees, local telephone listings, bank accounts, or real estate in Delaware.

This undisputed lack of constitutionally cognizable contacts of the PJ Moving Defendants in this case contrasts sharply with the defendants' significant contacts in the seminal case of *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984), which—although numerous—were determined by the United States Supreme Court to be insufficient to meet the exacting standards of the Constitution. In *Helicopteros Nacionales*, the non-resident defendant had negotiated a contract in the forum state. It also purchased eighty percent of its helicopter fleet, spare parts, and accessories from a company residing there. The defendant had sent pilots to the forum state for training and to pick up merchandise. It sent management and maintenance personnel to the forum

---

*Power Mgmt Litig.*, 2003 U.S. Dist. LEXIS 7715 (D. Del. 2003) (the same sales of the computer monitors that entered the stream of commerce and gave rise to jurisdiction also gave rise to the patent infringement claim) (Ex. C); *Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349 (D. Del. 1999) (the software modem product that gave rise to the claim was injected into the stream of commerce and thereby formed the basis of jurisdiction).

[12] Moreover, Delaware courts have explained that before "stream of commerce" jurisdiction can be found, a defendant must have an *intent* or *purpose* to serve the Delaware market with their product. *Siemens A.G. v. LG Semicon Co., Ltd.*, 69 F. Supp. 2d 622 (D. Del. 1999); *Boone*, 724 A.2d at 1158. McNeil has failed to produce "proofs" that the PJ Moving Defendants had such an "intent or purpose" to serve the Delaware market.

state for "plant familiarization" and technical consultation.  The nonresident defendant even received over five million dollars in payments drawn upon a bank in the forum state. All of these contacts taken together proved insufficient to persuade the Supreme Court to exercise general jurisdiction.  *See id.* at 411.

### C.   McNeil Makes No Special Showing as to Qorvis and Accordingly Cannot Establish Personal Jurisdiction Over It

Tacitly acknowledging that the contacts it has identified for all of the PJ Moving Defendants are not enough to support the exercise of personal jurisdiction over them, McNeil includes in its Opposition a special section purporting to identify "[a]dditional facts [that] support this Court's jurisdiction over Qorvis" alone.  (Opp'n at 34).  McNeil thus seizes upon the maintenance by Qorvis of two websites—its own, and the truthaboutsplenda website—which are both "accessible in Delaware," the fact that some employees have traveled to Delaware on a small number of occasions and incurred minor, travel-related expenses for which they have sought reimbursement from Qorvis, a few instances of communication touching the state, such as sending some information to a Delaware reporter, and meeting with the Delaware Insurance Commissioner.  (*Id.*).

These "[a]dditional facts" make no legal difference.  A handful of business trips that are not even alleged to have given rise to McNeil's claims are insufficient to confer jurisdiction over Qorvis.  *See Gallant v. Trustees of Columbia Univ.*, 111 F. Supp. 2d 638, 642 (E.D. Pa. 2000) (extensive travel of employees of defendant to forum state not enough to warrant finding of general jurisdiction over it because the travel was not, on the whole, directed there as opposed to nationwide).  Likewise, enabling forum residents to "click-through" or to provide contact information to others, is not sufficient to support

19

personal jurisdiction.  *Amberson Holdings*, 110 F. Supp. 2d at 335-337; *see also, e.g.,* *Osteotech*, 6 F. Supp. 2d at 356 (inclusion of contact information for interested persons insufficient to confer jurisdiction).  Indeed, the passive and non-commercial websites maintained by Qorvis and identified by McNeil add nothing to justify the exercise of jurisdiction.  *M&M Techs., Inc. v. Gurtler Chems., Inc.,* 2005 U.S. Dist. LEXIS 1726 at *10-14 (D. Del. Feb. 8, 2005) (Sleet, J.) at *10-14 (holding that although defendant's website could be used to solicit business in Delaware, "the mere existence of its website does not rise to a level of regularly soliciting business in Delaware" sufficient to support the exercise of personal jurisdiction) (Ex. D); *Amberson Holdings,* 110 F. Supp. 2d at 336. To find general jurisdiction on these ephemeral contacts is inconsistent with Delaware law and due process, and does not comport with the fair play and substantial justice required by the Constitution.

## CONCLUSION

For the foregoing reasons, as well as those articulated in Defendants' Opening Brief and supporting papers, the Court should dismiss the Delaware Complaint with prejudice.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

*Sarah E. DiLuzio*

Richard L. Horwitz (No. 2264)
Sarah E. DiLuzio (No. 4085)
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
E-mail: rhorwitz@potteranderson.com
         sdiluzio@potteranderson.com
Attorneys for Defendants

OF COUNSEL:
James P. Murphy (*pro hac vice*)
SQUIRE, SANDERS & DEMPSEY LLP
1201 Pennsylvania Avenue, N.W., Suite 500
Washington, DC  20004
Telephone:  (202) 626-6600
Facsimile:  (202) 626-6780

Adam R. Fox (*pro hac vice*)
SQUIRE, SANDERS & DEMPSEY LLP
801 So. Figueroa Street, Suite 1400
Los Angeles, CA  90017
Telephone:  (213)624.2500
Facsimile:  (213) 623-4581

Attorneys for Defendants

Charles D. Tobin (*pro hac vice* pending)
Leo G. Rydzewski (*pro hac vice* pending)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: 202-955-3000
Facsimile: 202-955-5564

Attorneys for Defendant Qorvis
Communications, LLC

Dated: August 12, 2005

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify that on August 12, 2005, I served via hand delivery and electronically filed true and correct copies of the attached document with the Clerk of the Court using CM/ECF which will send notification of such filing, which is available for viewing and downloading from CM/ECF, to the following counsel of record:

> Steven J. Balick (No. 2114)
> ASHBY & GEDDES
> 222 Delaware Avenue
> 17th Floor
> Wilmington, DE  19801
> Telephone:  (302) 654-1888
> sbalick@ashby-geddes.com

Additionally, copies of the foregoing document have been sent to the following counsel in the manner indicated:

> BY FEDERAL EXPRESS
>
> Steven A. Zalesin, Esquire
> Patterson, Belknap, Webb & Tyler LLP
> 1133 Avenue of the Americas
> New York, NY  10036-6710
>
> Donna Malin, Esquire
> Johnson & Johnson
> One Johnson & Johnson Plaza
> New Brunswick, NJ  08543

> Sarah E. DiLuzio (DSB ID No. 4085)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Post Office Box 951
> Wilmington, Delaware  19899-0951
> Tel:  (302) 984-6000
> E-mail:  sdiluzio@potteranderson.com